E-FILED
Tuesday, 14 July, 2020  03:08:56 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

|  |  |  |
|---|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | ) ) ) ) ) ) ) | |
| *Plaintiff,* | ) ) | No. 1:20-cv-01177 |
| v. | ) ) | |
| ARGENT TRUST COMPANY, JAN ROUSE, and EDWARD C. MILLER, | ) ) ) ) | |
| *Defendants.* | ) ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 2

    A.    The Morton ESOP. .................................................................................. 2

    B.    Allegations In The Complaint................................................................. 4

    C.    Prior Litigation Determines That Creation Of The ESOP Was "Substantively And Procedurally Fair." ................................................. 6

PLEADING STANDARDS UNDER RULE 12(b)(6) ............................................ 8

ARGUMENT .......................................................................................................... 9

    I.    The Court Should Dismiss Counts I, II, and IV Because The Complaint Alleges No Facts Supporting A Violation Of ERISA. ........... 9

        A.    Most Of The "Facts" In The Complaint Are Unsupported Conclusions That The Court Need Not (And Should Not) Accept As True. ........................................................................... 10

        B.    These Cursory Allegations Do Not Support Liability For Any Process-Based Breach Of Fiduciary Duty. ................................. 13

        C.    The Few "Facts" The Complaint Pleads Do Not Support An Inference Of Liability. ...................................................... 15

            1.    The Alleged Fluctuations In Stock Price Do Not Support Liability. ................................................................. 15

            2.    The Fact That Argent Was Paid A Fee Does Not Support Liability. ................................................................. 19

    II.    Count III Must Be Dismissed Because The Indemnification Provision Is Valid As A Matter Of Law.................................................. 20

CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. GreatBanc Tr. Co.*,
  835 F.3d 670 (7th Cir. 2016) ................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................... 8, 10, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................... 8, 10

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ................................................................ 10

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ................................................................ 18

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ................................................................. 3

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ................................................................. 8

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
  474 F.3d 463 (7th Cir. 2007) ................................................................ 21

*Fish v. GreatBanc Tr. Co.*,
  749 F.3d 671 (7th Cir. 2014) ................................................................ 18

*Gavin v. AT&T Corp.*,
  No. 01 C, 2721, 2004 WL 2260632 (N.D. Ill. Sept. 30, 2004) ................................... 5

*Ham v. Ocwen Loan Servicing, LLC*,
  No. 14-1046, 2014 WL 3610745 (C.D. Ill. July 22, 2014) ....................................... 8

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
  530 U.S. 238 (2000) ....................................................................... 24

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ................................................................. 5

*In re RCN Litig.*,
  No. 04-5068 (SRC), 2006 WL 1273834 (D.N.J. Mar. 22, 2006) ................................... 20

ii

*Keach v. U.S. Tr. Co., N.A.,*
   244 F. Supp. 2d 968 (C.D. Ill. 2003)................................................................ 19

*Meiners v. Wells Fargo & Co.,*
   898 F.3d 820 (8th Cir. 2018) .............................................................. 13, 18

*NewSpin Sports, LLC v. Arrow Elecs., Inc.,*
   910 F.3d 293 (7th Cir. 2018) ............................................................. 18

*Packer Eng'g, Inc. v. Kratville,*
   965 F.2d 174 (7th Cir. 1992) ............................................................. 23

*Parker v. Lyons,*
   No. 11-cv-1441, 2013 WL 12303944 (C.D. Ill. Jan. 10, 2013) ................................... 6

*Pension Benefit Guar. Corp. ex. rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
   *Morgan Stanley Inv. Mgmt. Inc.,*
   712 F.3d 705 (2d Cir. 2013) ............................................................ 11, 13

*Peoples Gas Light & Coke Co. v. Beazer East, Inc.,*
   802 F.3d 876 (7th Cir. 2015) ............................................................. 21

*Perez v. PBI Bank, Inc.,*
   69 F. Supp. 3d 906 (N.D. Ind. 2014) ..................................................... 22

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,*
   631 F.3d 436 (7th Cir. 2011) ............................................................. 11

*Pudela v. Swanson,*
   No. 1:91-cv-03559, 1995 WL 77137 (N.D. Ill. Feb. 21, 1995)................................ 22

## STATUTES

26 U.S.C. § 401(a)(28)(C) .................................................................... 2

29 U.S.C. § 1103(a) .......................................................................... 2

29 U.S.C. § 1104(a)(1)(B) ................................................................... 13

29 U.S.C. § 1106........................................................................... 24

29 U.S.C. § 1107(d)(6) ....................................................................... 2

29 U.S.C. § 1108(e)(1) ....................................................................... 2

# RULES

Fed. R. Civ. P. 12(b)(6)................................................................................8, 9

# REGULATIONS

29 C.F.R. § 2509.75-4....................................................................................22

29 C.F.R. § 2550.404a-1(b)(1)(i)...................................................................13

29 C.F.R. § 2550.407d-6..................................................................................2

Proposed Regulation Relating to the Definition of Adequate Consideration,
   53 Fed. Reg. 17632 (May 17, 1988).............................................................2

# OTHER AUTHORITIES

21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure:
   Evidence § 5106 (1st ed. 1977 & Supp. 1997)............................................6

# INTRODUCTION

Without bothering to offer proof, this Complaint alleges wrongdoing where there has only been success.  For more than one hundred years, Morton Buildings, Inc. ("Morton") operated as a Morton, Illinois-based, family-owned company and industry leader in post-frame manufacturing and construction.  *See* Compl. ¶ ¶ 21, 22.  Morton grew in many ways, including financially:  Since its founding in 1903, the company has expanded into 43 states, where it operates 103 construction centers and 8 manufacturing plants and employs more than 1,700 people.  *Id.*  In 2017, Morton gave back to the employees who worked to support its success by implementing an employee stock ownership plan ("Morton ESOP") to provide employees equity ownership in the company.

The Complaint alleges that this transaction—the creation of the Morton ESOP—injured Plaintiff and other participants in the ESOP because the defendants violated various provisions of ERISA.   But the Complaint pleads liability largely on the basis of innuendo and bare legal conclusions, neither of which the Court should take as true.  Worse still, the Complaint supplies sparse "facts" that are demonstrably wrong and leaves the identification of any other facts for a time "after investigation and discovery."  This invitation to put the cart before the horse is completely unwarranted given the extensive public record regarding this specific transaction, including a full adjudication of the fairness of the transaction in Illinois state court.  The record demonstrates prudent conduct by the fiduciary, Argent, and allows no reasonable inference of liability against any of the

1

Defendants.  Plaintiff's allegations are doomed at inception and provide no grounds for further proceedings.  The Court should dismiss the Complaint.

## FACTUAL BACKGROUND

A. <u>The Morton ESOP</u>.

An ESOP (which stands for "Employee Stock Ownership Plan"), is a defined-contribution plan governed by ERISA that allows participating employees to acquire a beneficial interest in their employer's stock.  *See* 29 U.S.C. § 1107(d)(6); 29 C.F.R. § 2550.407d-6.  Companies often hire an outside entity to serve as the trustee of the ESOP.  By statute, *see* 29 U.S.C. § 1103(a), and subject to exceptions not relevant here, a plan trustee "shall have exclusive authority and discretion to manage and control the assets of the plan."

Morton company stock is not publicly-traded, and ERISA and the Internal Revenue Code thus require that an independent appraisal be performed in order to value stock for purposes of a purchase transaction.  26 U.S.C. § 401(a)(28)(C); *see* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17632 (May 17, 1988) (to be codified at 29 C.F.R. § 2510.3-18(b)) (proposed regulation governing "adequate consideration," the regulators' term for fair market value).  Defendant Argent Trust Company ("Argent") was hired to serve as independent trustee of the ESOP, oversee this independent valuation, negotiate for the purchase of company stock by the ESOP, and ultimately determine that the ESOP paid no more than fair market value for the stock.  *See* Compl. ¶ ¶ 6, 41, 42; *see also* 29 U.S.C. § 1108(e)(1).  Argent's engagement to serve as independent

2

trustee is governed by two contracts between Argent and Morton: (1) an engagement letter and (2) a trust agreement. *See* Exs. A, B.[1]

The Complaint also names as defendants Jan Rouse and Edward Miller (the "Individual Defendants"). The Complaint alleges that both were "parties in interest who sold shares in the ESOP transaction" and are thus subject to a claim for equitable relief as knowing participants in a transaction prohibited by ERISA. Compl. ¶ ¶ 8, 19, 20.

The Morton ESOP was adopted effective January 1, 2017. Compl. ¶ 5. The structure of the deal that created the ESOP, a leveraged transaction in which the purchase of Morton stock was funded with loan proceeds, is described in the Complaint: "On May 9, 2017, the Plan purchased 2,005,662 shares of Morton's common stock" for total of "$147,786,877." *Id.*[2] The ESOP financed the purchase of these shares with "three term loan agreements," namely, with "(1) Morton, for $132,277,461 at an interest rate of 2.75%, (2) Morton, for $523,229 at an interest rate of 2.75%, and (3) a former shareholder . . . for $14,986,187 at an interest rate of

---

[1] Because some of the allegations hinge on the indemnification provisions in these documents, *see* Compl. ¶ ¶ 59-61, 63-65, 92-95, the documents may be relied upon by the Court. "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (alteration and internal quotation marks omitted).

[2] As the Complaint notes, there were actually two transactions: The ESOP purchased approximately 1.95 million shares at a price of $75.25 per share, and then approximately 50,000 shares for a price of $10.75 per share. Compl. ¶ ¶ 5, 43. The reason for the reduction in price is that the second purchase took into account the debt incurred to facilitate the ESOP's purchase of stock in the first transaction.

5.00%."   Compl. ¶ 5.   As a result of the deal, "Morton became 100% employee owned," Compl. ¶ 44, but—as this structure makes clear—employees put none of their own money into funding the ESOP's purchase of Morton stock.

B. <u>Allegations In The Complaint</u>.

Plaintiff was a participant in the ESOP.   *See* Compl. ¶ ¶ 14, 46.   The Complaint alleges that the defendants violated various provisions under ERISA, namely:   Argent caused the ESOP to engage in a prohibited transaction when the ESOP "acquire[d] Morton stock from the Selling Shareholders above fair market value and with the proceeds of three loans that were used to pay the Selling Shareholders" (Count I, ¶ ¶ 67-79); Argent breached its fiduciary duty of loyalty to ESOP participants by failing to conduct "an appropriate and independent investigation of the fair market value of Morton stock" before the transaction, thus causing the ESOP to overpay (Count II, ¶ ¶ 80-87); the Court should declare the indemnification agreement between Argent and Morton invalid and disgorge the fees Argent received for its work as Trustee (Count III, ¶ ¶ 88-95); and the Individual Defendants engaged in a prohibited transaction and are subject to a claim for equitable relief to remedy the alleged ERISA violation (Count IV, ¶ ¶ 96-104).

Three of the counts turn on the ESOP's purported overpayment for Morton stock.   According to the Complaint, valuations for Morton stock "strangely rose for the May 8, 2017 sale to the Plan, and then plummeted after the ESOP Transaction." Compl. ¶ 52.   Specifically, the Complaint alleges that the per share purchase price

4

at the time of the transaction was $75.25.  *See id.*  On December 31, 2016—five months before the transaction—the Complaint states that "Morton stock was valued at $58.04 per share," while on December 31, 2017—seven months after the transaction—the stock was valued at $33.78 per share.  *Id.*[3]

The motive for this supposed conspiracy to overpay for Morton stock was the consideration Argent received "for its services in the ESOP Transaction in the form of fees."  Compl. ¶ 57.  The gravamen of the Complaint is, in essence, that stock prices moved in ways that show an overpayment and that Argent was motivated to overpay because it was paid for its work as an independent trustee.

The Complaint admits it has no other factual support for the overpayment allegations.  In a single conclusory paragraph, the Complaint alleges that "after a reasonable opportunity for further investigation or discovery," Plaintiff will be able to support various allegations about the process by which Argent reviewed the valuation and approved the transaction.  Compl.  ¶ 53.  Surrounding paragraphs in the Complaint likewise allege that she "will likely have evidentiary support" if the

---

[3] The pre-transaction figure—$58.04—is derived from a publicly available Form 5500 filing (an ERISA-required annual filing) for a long-standing employee stock ownership plan that predated the ESOP, and that document is attached for the Court's convenience, *see* Ex. C at 17, and may be relied upon as a matter of public record.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (approving consideration of publicly available prospectuses in an ERISA case); *Gavin v. AT&T Corp.*, No. 01 C 2721, 2004 WL 2260632, at *1 (N.D. Ill. Sept. 30, 2004) (considering publicly available SEC filings on a motion to dismiss).  That document provides the number of shares of Morton stock held by that plan (422,121) and the shares' aggregate value ($24,499,901).  *See* Ex. C at 17.  The per share stock price is a matter of dividing one number by the other.  As discussed below, *infra* Section I(C)(1), Morton recognized an error that affected the $58.04 value, received IRS approval to correct the error, and filed an amended Form 5500 that reflects a higher stock value.

Complaint survives this motion to dismiss.  *See, e.g.*, Compl. ¶ ¶ 48, 50.  In other words, based on facts Plaintiff does not allege, she suspects that the ESOP overpaid for Morton stock in ways about which she can only speculate.

C.  Prior Litigation Determines That Creation Of The ESOP Was "Substantively And Procedurally Fair."

This is not the first time that the creation of the Morton ESOP has been subject to legal challenge.   In 2015, family members who were minority shareholders in Morton filed a lawsuit in Illinois state court seeking to enjoin creation of the ESOP and alleging, among other things, that defendants to that suit (and this one) breached various fiduciary duties.  After extensive discovery and a nine-day bench trial, on November 14, 2016, the Illinois court (Judge Thomas Keith) entered judgment in  favor of the defendants.  A copy of that Order is attached.  *See* Ex. D (the "Order").[4]  The Order describes Argent's role in the ESOP's creation at length, including that "Argent acted solely on its own and in the best interest of the proposed and/or potential ESOP participants.   Argent ensured that the ESOP participants would not pay more than adequate consideration for [Morton Building] shares."  *See* Ex. D at 23.   The Order recounts that "Argent's fiduciary duties

---

[4] Federal courts often take judicial notice of the contents of court records from other cases. *See, e.g., Gilbert v. Illinois State Bd. of Educ.*, No. 05-C-4699, 2008 WL 4390150, at *3 n.3 (N.D. Ill. Sept. 24, 2008) (affirming dismissal and noting "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records"), *aff'd*, 591 F.3d 896 (7th Cir. 2010); 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5106, at 505 (1st ed. 1977 & Supp. 1997). This includes state-court records. *See, e.g., Parker v. Lyons*, No. 11-cv-1441, 2013 WL 12303944, at *7 (C.D. Ill. Jan. 10, 2013) (dismissing case and taking judicial notice of state-court orders and other documents because they are "matters of public record and submitted by Defendants").

included, among other things, determining whether the proposed ESOP transaction is fair to the ESOP and its participants from a financial viewpoint. The standard employed was the fair market value standard as defined by ERISA and the Department of Labor . . . i.e., what a willing buyer would pay to a willing seller[.]" *Id.*

With respect to the procedural prudence of the deal (that is, whether it was fairly negotiated) and its substantive fairness (that is, whether the price paid was no more than fair market value), the Court held that the proposed ESOP is fair in both price and process. *Id.* at 27, 33. The Court specifically determined that "[t]he proposed ESOP transaction is procedurally fair." *Id.* at 33. The deal was fair because, *e.g.*, it "was negotiated in an arm's length process," and because it was "reached following at least five offers and counteroffers." *Id.* at 27-28. As to substance, the Court specifically held that, "[b]ased on the evidence, the negotiated $73 majority/control share price is a fair price." *Id.* at 28.

The Order also describes the effect of this leveraged transaction: "[A]ny reduction in price following the transaction would be short-term and avoidable. Following the close of this Transaction, the financial advisors all predict the share price will drop from the $73 majority share price to $28 per share. But that fact does not render the proposed transaction substantively unfair[,]" because the transaction was financed by debt. *Id.* at 30.

7

## PLEADING STANDARDS UNDER RULE 12(b)(6)

Where a complaint fails to state a claim upon which relief can be granted, it must be dismissed.  Fed. R. Civ. P. 12(b)(6); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).  To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Factual allegations "must be enough to raise a right to relief above the speculative level," or "contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (alterations and internal quotation marks omitted).  A complaint is insufficient when "it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration and internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In other words, "[a] plaintiff's claim must 'give enough details about the subject matter of the case to present a story that holds together' to be plausible." *Ham v. Ocwen Loan Servicing, LLC*, No. 14-1046, 2014 WL 3610745, at *2 (C.D. Ill. July 22, 2014) (Mihm, J.) (citation omitted).

8

## ARGUMENT

### I.   The Court Should Dismiss Counts I, II, and IV Because The Complaint Alleges No Facts Supporting A Violation Of ERISA.

Each of the substantive claims for violating ERISA (Counts I, II, and IV) turn on the theory that the Morton ESOP overpaid for Morton stock.  But the Complaint contains no facts to support this theory of liability.  Every paragraph in the Complaint can be disregarded by the Court for one of two reasons.

First, most of the "facts" alleged in the Complaint amount to no more than innuendo and legal conclusion couched as fact.  In crucial places, the Complaint leaves description of these "facts" for a time "after investigation and discovery."  A plaintiff may not plead liability without factual support and then lean on discovery to meet the requirements of Rule 12.  This pleading deficiency is especially stark given that many facts of this transaction are publicly available from the Illinois state court case adjudicating the deal's fairness.  As explained below, the allegations that Argent engaged in an unfair process when it evaluated the transaction is a prime example of this pleading deficiency.

Second, the few factual allegations in the Complaint—namely, those that describe the creation of the ESOP and assert that Argent was paid for its work—do not lead to a reasonable inference of liability.  The Complaint alleges that the value of Morton stock "strangely rose" before the transaction and then "plummeted" after the deal closed.  *See* Compl. ¶ 52.  But there was no "strange[] r[i]se"—as shown by the public record of government filings by Morton.  Likewise, the alleged drop in stock price after the transaction is a direct result of the debt-financing of the

ESOP's stock purchase, a natural and inevitable result recognized and explained by Judge Keith.

A. Most Of The "Facts" In The Complaint Are Unsupported Conclusions That The Court Need Not (And Should Not) Accept As True.

While courts "must take all of the factual allegations in the complaint as true," they need not accept as true "naked assertions devoid of further factual enhancement" or "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010).

The Complaint here is ripe with improper *ipse dixit* assertions of liability.  It alleges, for example, that "[t]he financial projections [underlying the valuation] were unreasonably optimistic," Compl. ¶ 48, and "[t]he Plan paid more than fair market value for Morton due to this payoff as well as a faulty valuation," Compl. ¶ 50.  Perhaps the most egregious example of conclusory pleading in the Complaint appears at ¶ 53, which is a scattershot recitation of various wrongdoing, none of which are supported by even a hint of a single fact.  A telling concession prefaces these conclusory allegations—Plaintiff baldly demands "further investigation or discovery" to substantiate her allegations.  *See* Compl. ¶ ¶ 40, 50, 53, 60.  When these unsupported and conclusory allegations are disregarded, the Complaint is emptied of anything on which allegations of liability could turn.

The lowest rung of the pleading ladder is an allegation "on information and belief," in which a plaintiff "represent[s] that he has a good-faith reason for believing what he is saying," while "acknowledging that his allegations are based on

10

secondhand information that he believes to be true." *Pirelli Armstrong Tire Corp.*

*Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011)

(alteration and internal quotation marks omitted).   But the allegations in this

Complaint do not reach even that high.   It's one thing for a complaint to plead facts

a litigant cannot yet prove, but it is quite another, as here, to allege no more than

legal conclusions and then ask the Court to permit discovery to backfill the factual

allegations entirely.   This gets pleading standards exactly backwards:   To state a

claim and open the doors to discovery, a plaintiff must allege some non-conclusory,

non-legal fact to support an inference of liability.   This Complaint fails to clear that

low hurdle. *See Pension Benefit Guar. Corp. ex. rel. St. Vincent Catholic Med. Ctrs.*

*Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013)

("*PBGC*") (Cautioning that the "ominous" "prospect of discovery" in an ERISA suit

raises "the possibility that a plaintiff with a largely groundless claim [will] simply

take up the time of a number of other people" in order to increase "settlement value"

instead of furthering "a reasonably founded hope that the discovery process will

reveal relevant evidence") (internal quotation marks omitted).

The Complaint's failure to include actual facts about the transaction is

especially troubling given that the process and substance of the transaction were

previously litigated, and details of the transaction are publicly available.   The state

court adjudicated some of the very questions posed by the Complaint, including that

"the share price is fair," Ex. D at 27, and "was negotiated in an arm's length

process," *id.* at 28.   That the Complaint could not muster substantive facts to

11

support its allegations in light of the state court record speaks volumes.

ERISA plaintiffs routinely complain at the pleading stage that they lack access to the information that would substantiate their allegations because that information is accessible only to a trustee or company defendant. *See, e.g., Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). But that is not the case here, where the details of the transaction were litigated previously and remain publicly available. That these details were available and yet the Complaint here is still so sparse confirms there's neither smoke nor fire from this transaction.

The existence of that separate lawsuit and the publicly available facts about the transaction makes this case very different from cases like *Allen*. There, the Court of Appeals noted that "the plaintiffs could not describe in detail the process [the Trustee] used" to approve the transaction, and that the plaintiff "lack[ed] the inside information necessary to make out their claims in detail unless and until discovery commences." *Id.* at 678 (internal quotation marks omitted). But here, the transaction was litigated at length—more than one detailed complaint was filed, numerous motions were adjudicated, and a nine day evidentiary trial was held, culminating in a 39-page written decision on the transaction's process and substance. Whatever details other ERISA plaintiffs may lack before filing complaints in other cases, no such gripe should be heard here given the extensive detail about the transaction that exists in the public domain. Plaintiff should not be permitted to ignore those facts (which negate her claim), and file a complaint that on its face demands discovery in spite of the readily available information that

12

shows the claims are doomed from the start.

B. These Cursory Allegations Do Not Support Liability For Any Process-Based Breach Of Fiduciary Duty.

Axiomatic of its barebones pleading style is Paragraph 53 of the Complaint, which is a laundry-list of unsupported allegations regarding the process by which Argent approved the ESOP transaction. The Court need not accept these allegations masquerading as facts and, assuming it does not, the Complaint fails to state a claim for breach of fiduciary duty based on the process by which Argent approved the transaction.

A fiduciary must act "with the care, skill, prudence, and diligence under the circumstances." 29 U.S.C. § 1104(a)(1)(B); *see also* 29 C.F.R. § 2550.404a-1(b)(1)(i). To allege injury resulting from a breach of fiduciary duty, a plaintiff must "show that a prudent fiduciary in like circumstances" would have acted differently, and the "plaintiff must provide a sound basis for comparison—a meaningful benchmark" from which a district court can measure the alleged wrongdoing. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (internal quotation marks omitted). This requires "*nonconclusory* factual content raising a *plausible* inference of misconduct." *PBGC*, 712 F.3d at 718 (emphasis in original). The Complaint contains only conclusory allegations addressing Argent's decision-making process and therefore does not support a plausible inference "that the process was flawed." *Id.* (internal quotation marks omitted); *see Meiners*, 898 F.3d at 822-24.

The only paragraph that mentions Argent's purported process is one of the many instances in which "further investigation or discovery" apparently is required.

13

*See* Compl. ¶ 53.  Rather than identify any particular error Argent is alleged to have made, the Complaint simply speculates that a series of errors were committed: The ESOP overpaid "due to Argent's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of Morton stock in the ESOP Transaction faulty."  *Id.*  Such speculation and kitchen-sink style pleading are no substitute for actual facts, which the Complaint concedes it lacks.  These conclusory allegations are just the sort that the Supreme Court's controlling precedent rejects.  *See Iqbal*, 556 U.S. at 678.

In fact, as the Order noted, the opposite is true:  Argent has "an expertise with ESOP transactions," and Argent "acted solely on its own and in the best interest of the proposed and/or potential ESOP participants" in order to "ensure[] that the ESOP participants would not pay more than adequate consideration for [Morton] shares."  Ex. D at 34, 23.  For its part, Morton "neither led the process nor controlled, manipulated, or changed the [Morton] information being provided to [Argent]."  *Id.* at 25.  Argent "conducted [its] own independent analys[is] of whether [Morton] had the ability to finance the transaction," *id.* at 28, ensured that the transaction "was negotiated in an arm's length process," and the deal was "reached following at least five offers and counteroffers."  *Id.* at 34, 27-28, 35.  The Complaint itself also acknowledges that Argent engaged its own independent professional valuation firm to assist it.  *See* Compl. ¶ 51; Ex. A at ¶ 4; *see also* Ex. D at 24.  All of

14

this is evidence of a *prudent* process.

C. The Few "Facts" The Complaint Pleads Do Not Support An Inference Of
   <u>Liability</u>.

The Complaint's remaining allegations assert that Defendants violated
ERISA because (1) the value of Morton stock fluctuated before and after the
transaction, *see* Compl. ¶ 52, and (2) Argent was paid to serve as trustee. Neither of
these supports an inference of liability.

1. <u>The Alleged Fluctuations In Stock Price Do Not Support Liability</u>.

The Complaint states that the value of Morton stock at the end of 2016 was
$58.04; the value of Morton stock "strangely rose" to $75.25 at the time of the ESOP
transaction in May 2017; and the value of Morton stock seven months after the
transaction "plummeted" to $33.78. *See id.* These allegations fail to provide the
Court with critical information, available to Plaintiff, showing that the initial figure
of $58.04 is publicly acknowledged to be incorrect—and therefore the stock price did
not "strangely rise"—and that the subsequent "drop" in value to $33.78 is simply
the expected consequence of the debt incurred in connection with the ESOP
transaction, a matter recognized by the Order. Neither of these purported facts,
therefore, support any reasonable inference that the ESOP overpaid for Morton
stock.

The Complaint refers to a stock value at December 31, 2016 of $58.04 and, on
that basis, asserts that the ESOP must have overpaid when it purchased stock for
$75.25 five months later. What Plaintiff does not tell the Court is that the $58.04
figure is derived from financial filings that Morton corrected—meaning the initial

$58.04 figure was incorrect (due to a mistaken past valuation of Morton stock).  As the Order explains, certain line items on Morton's balance sheet (known as billings in excess of costs) had previously been treated as liabilities in the valuation of Morton's stock, when they should have been (and were corrected to be) treated as equity. *See* Ex. D at 13 & n.2, 14, 30.  The correction resulted in an increase in the value of Morton stock and resulted in a true stock price at year-end 2016 nearly equal to the ESOP's purchase price for Morton stock five month later.[5]  There was no "strange rise."

Nor are these matters secret.  As noted, this change was described by the Order.  It, along with the correction of the year-end 2016 stock value, was also part of a submission by Morton to the IRS, which approved the corrective actions taken and resulted in publicly-available amended filings showing the value of Morton stock.[6]

---

[5] Just as Plaintiff's counsel calculated the *uncorrected* stock price using simple math and Morton's *original* Form 5500 filing, *see infra* at n.3, the *corrected* stock price can be determined using the same simple math from the *amended* filing. The publicly available amended Form 5500, attached hereto as Ex. E, shows a per share Morton stock value on December 31, 2016 of $72.57 (using the corrected value of $30,630,420 divided by 422,121 shares of Morton stock). *Id.* at Schedule H, page 2. As notes to financial statements appended to Morton's 2018 Form 5500 make clear, *see* Ex. F, as a result of the correction, Morton paid an additional $3,979,000 to former participants who had previously received retirement benefits from the longstanding plan based on the uncorrected lower valuation. *See id.* at 17, Note 10.

[6] Employers that discover errors in the manner in which a retirement plan has been run may apply to correct the errors under the Voluntary Correction Program ("VCP"). IRS, Voluntary Correction Program (VCP) – General Description (last visited July 8, 2020), https://www.irs.gov/retirement-plans/voluntary-correction-program-general-description. Employers "[s]end a written submission to the IRS," and the "IRS reviews and approves [the] proposed correction." *Id.* That is

16

In short, the $58.04 stock value did not "strangely" rise before the transaction. Instead, the $58.04 figure alleged in the Complaint is the *uncorrected* stock price. After Morton's voluntary correction, its year-end 2016 stock price was actually $72.57. *See supra* at n.6. Because there was no "strange" rise in stock price, there is no basis from which the Court could infer that the ESOP overpaid for stock and thus no fact from which to infer a fiduciary breach. The Complaint attempts to make out a claim by using outdated and inaccurate figures.

The second allegation concerns a purported post-transaction drop in stock value and is no less misleading. The Complaint alleges that four months after the transaction, the value of Morton stock "plummeted." *See* Compl. ¶ 52. But the drop in stock price post-closing reflects the necessary and logical consequence of a leveraged transaction, in which the value of the stock before the transaction does not account for the loans used to finance the deal, and the value of the stock after the transaction does.

The Order acknowledged and explained this simple reality of finance and predicted *precisely* this change in stock price. *See* Ex. D at 30-31 ("[A]ny reduction in share price following the transaction would be short-term and avoidable. Following the close of this Transaction, the financial advisors all predict the share price will drop from the $73 majority share price to $28 per share. But that fact does not render the proposed transaction substantively unfair."). The audited financial statements of Morton's ESOP confirms this. *See* Ex. F at 16-17, Note 9

---

what occurred here. Morton filed a VCP application to fix the error explained above, which, upon IRS approval, was reflected in the amended Form 5500 filings.

("The reduced price per share . . . is due to a decrease in the fair market value of the Company's shares following the issuance of debt to finance the transaction.").  It is a simple principle of finance.  *See* Rodrick, 24 *An Introduction To ESOPs* (19th ed. 2020) ("When a company borrows money to finance a leveraged ESOP transaction . . . the debt it takes on goes on its balance sheet, thus reducing its value."), excerpt attached hereto as Ex. G.

Shorn of its unsupported assertions that the changes in stock price are mysterious, the Complaint supplies nothing to support an inference that defendants breached any fiduciary duty.  "An inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged."  *Meiners*, 898 F.3d at 824 (citation omitted); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (When an allegation is "just as consistent with lawful conduct as it is with wrongdoing" then, "[w]ithout more, [the] allegations are too vague.").  Here, the post-transaction drop in stock price was consistent with lawful conduct, *i.e.*, borrowing money to buy stock.  *See Meiners*, 898 F.3d at 824.

 If the ESOP did not overpay for Morton stock, then Argent did not breach its duty of loyalty (Count II) and neither the Individual Defendants nor Argent engaged in a prohibited transaction (Counts I and IV).  *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) ("[W]hen a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate."); *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 687 (7th

Cir. 2014) ("[P]laintiffs and their attorneys may have a responsibility to examine whether any *obvious* affirmative defenses bar the case.") (internal quotation marks omitted).  All three of these counts in the Complaint are expressly tied to the alleged overpayment, *see* Compl. ¶ 74 (Count I, "Argent caused the Plan to acquire Morton stock from the Selling Shareholders above fair market value and with the proceeds of three loans that were used to pay the Selling Shareholders."); Compl ¶ 85 (Count II, "Argent was required to undertake an appropriate and independent investigation of the fair market value of Morton stock . . . and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the Morton stock purchased by the Plan."); Compl. ¶ 99 (Count IV, "As a result of the prohibited transactions . . . [the Individual Defendants] received Plan assets in payments above fair market value for their Morton stock.").[7]  Because the Complaint fails to plead any facts that would support a reasonable inference that the ESOP overpaid, these Counts must be dismissed.

2. <u>The Fact That Argent Was Paid A Fee Does Not Support Liability</u>.

The Complaint also alleges in passing that Argent breached its fiduciary duties because it was paid for its work as an independent trustee.  *See* Compl.

---

[7] While the claim against the Individual Defendants, as nonfiduciaries, also requires proof that they knowingly participated in a prohibited transaction, the existence of a prohibited transaction in the first place is a threshold question.  If there was no prohibited transaction, the inquiry ends.  *See Keach v. U.S. Tr. Co., N.A.*, 244 F. Supp. 2d 968, 976 (C.D. Ill. 2003) (recognizing that "there can be no liability of non-fiduciary parties-in-interest absent the existence of a prohibited transaction under § 406(a) which does not qualify for [an] exemption under § 408(e)").

¶ ¶ 54, 57.  But Argent was entitled to its fee whether *or not* it agreed to close the deal and thus payment cannot serve as a motive for approving the transaction.  *See* Ex. A at ¶ 2 ("Argent makes no promises that it will approve the Proposed Transaction[.]"); *see also* Ex. D at 23.  In any event, ERISA entitles trustees to compensation for their services to an ESOP, and the fact that Argent was paid cannot, by itself, give rise to an inference of liability.  Professional independent trustees are not charity workers, and a trustee is not conflicted simply because it receives payment.  *See, e.g., In re RCN Litig.*, No. 04-5068 (SRC), 2006 WL 1273834, at *8–9 (D.N.J. Mar. 22, 2006) ("The only way for a professional . . . , who is selected and retained by a company to administer a savings and retirement plan that invests in that company's stock, to affirmatively avoid the conflict of interest that the Plaintiffs' are implying, . . . would be to provide their services for free.  ERISA clearly did not intend for such a consequence.").

## II.   Count III Must Be Dismissed Because The Indemnification Provision Is Valid As A Matter Of Law.

Count III asks the Court to declare the indemnification agreement between Argent and Morton invalid.  The Complaint purports to describe at length what the challenged indemnification provisions say, *see* Compl. ¶ ¶ 59-66, but nowhere includes for the Court's consideration the actual language of any indemnification agreement.  What the Complaint refers to as an "Engagement Indemnification Agreement" does not exist.  The terms of Argent's engagement are governed by an *Engagement Letter* between Argent and Morton as well as a *Trust Agreement*

between them.  The alleged "Engagement Indemnification Agreement" is a Frankenstein term of the Complaint's creation.

The Trust Agreement (which expressly incorporates the Engagement Letter) and the Engagement Letter are attached to this Motion and may be relied upon by the Court in deciding it.  *See supra* at n.1.  The Court can evaluate the language of the operative indemnification provision and hold that it is valid because interpretation of a contract is a matter of law that can be decided on a motion to dismiss.  *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 472 (7th Cir. 2007) (affirming 12(b)(6) dismissal of ERISA claim based on contracts whose meaning can be declared "as a matter of law"); *Peoples Gas Light & Coke Co. v. Beazer East, Inc.*, 802 F.3d 876, 881 (7th Cir. 2015) (affirming 12(b)(6) dismissal based on indemnification agreement).  The Complaint cannot escape dismissal by failing to provide the governing agreement or mischaracterizing its terms.

Although both the Trust Agreement and the Engagement Letter contain indemnification provisions, the Trust Agreement expressly states that the terms of the *Engagement Letter* control.  *See* Ex. B at Section 9.1(c) ("If there is any conflict between any provision of [the Trust Agreement's indemnification provision] and the Trustee's engagement letter with the Company, the terms of the engagement letter shall control.").  Thus, the Court should consider the terms of the indemnification as spelled out in the Engagement Letter.

In the Engagement Letter, Morton "agrees to indemnify" Argent for ligation

21

"relating to the Proposed Transaction or Argent's duties as trustee," *except* that it "shall not apply to any claim, damage, expense, liability, or loss that is attributable to [Argent's] breach of fiduciary duty under ERISA, gross negligence, or willful misconduct." *See* Ex. A. at ¶ 6.

Indemnification provisions are enforceable under ERISA in just these circumstances:  Companies may indemnify plan trustees if the indemnification provisions do not cover a judicial determination that a trustee breached its fiduciary duties, and trustees may rely upon such provisions when electing whether to accept an engagement.  *See, e.g., Perez v. PBI Bank, Inc.*, 69 F. Supp. 3d 906, 913 (N.D. Ind. 2014) ("The fact that the language of the Engagement Letter limits indemnification to situations where those accused of misconduct are vindicated is what permits the indemnification clause to be enforceable."); *Pudela v. Swanson*, No. 1:91-cv-03559, 1995 WL 77137, at *5 (N.D. Ill. Feb. 21, 1995) (holding that ESOP trustees may be indemnified by the company sponsoring the plan).  The Department of Labor, which enforces ERISA, likewise has noted that indemnification provisions of this type are valid and enforceable.  *See* 29 C.F.R. § 2509.75-4.  Where an "indemnification provision applies only if [a Party] is found not to have failed to perform its fiduciary duties as ERISA requires," then it is "just such a non-exculpatory indemnification provision that [ERISA] § 410(a) has been held to permit."  *Perez*, 69 F. Supp. 3d at 913 (emphasis omitted).  Indeed, "[h]ow could anyone take seriously the proposition that ERISA forbids the indemnification of fiduciaries *wrongly* accused of misconduct, when ERISA itself allows a court to

award fees to the prevailing side?" *Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 176 (7th Cir. 1992).   The Engagement Letter contains the very limitation the law allows—Argent is indemnified so long as it not found to have breached its fiduciary duties—and the provision is therefore valid and enforceable as a matter of law.

The Complaint appears to allege that the terms of the indemnification provision in the *Trust Agreement* are the problematic ones.[8]   But, as noted above, the terms of the *Engagement Letter* control and describe a facially valid indemnification provision.  That should be enough to dismiss this claim.  But even if the Court were to consider the terms of the indemnification provision in the Trust Agreement, that provision too is valid.  The Trust Agreement indemnifies Argent for litigation related to its services as Trustee but—like the Engagement Letter— excludes indemnification in the event of a fiduciary breach.   It states: "these indemnification provisions *shall not apply* to the extent that any cost, damage, expense, or loss . . . is held by a court . . . to have resulted either from the gross negligence of [Argent], from the willful misconduct of [Argent] *or from the breach of any fiduciary duty imposed under ERISA* by [Argent]."   Ex. B at 9.1(c) (emphases added).

The Complaint alleges no more than that "[t]he indemnification agreements are invalid under ERISA . . . as against public policy because Argent violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses

---

[8]  For example, the Complaint refers to "Section 9.1" of the "Trust Engagement Agreement." *See* Compl. ¶ 63. The Trust Agreement's indemnification provision appears at Section 9.1 of that Agreement.

should not be paid by the company that the Plan owns."  Compl. ¶ 65.  Because ERISA allows for indemnification (so long as there is a carve-out for any fiduciary breach), and because both indemnification provisions comply with that requirement, this claim fails as a matter of law.

In passing and without support, the Complaint also asserts that the indemnification provisions do not cover prohibited transactions under ERISA § 406, 29 U.S.C. § 1106, and the provision does not account for the payment of interest. *See* Compl. ¶ 60.  Both assertions are irrelevant as a matter of law.  As explained above, the allegations in the Complaint turn on a supposed overpayment for Morton stock.  But if the ESOP paid no more than fair market value for the shares of Morton stock, then it did not commit any fiduciary breach—and in that scenario, no prohibited transaction occurred—and the indemnification provisions stand.  *Cf. Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245 (2000) (describing § 406(a) as imposing a "duty" on the fiduciary that causes the plan to engage in the transaction).

Nor does the fact that the indemnification provisions are silent on interest matter to this analysis:  If and when reimbursement of any indemnification is made, any such dispute will inevitably be resolved (and nothing about the agreements' silence on this question renders the otherwise valid provisions invalid). Moreover, for all of the reasons explained above, the Complaint includes no facts to support an allegation that any fiduciary breach occurred and, therefore, the indemnification provisions' silence on interest is, at best, a hypothetical problem.

## CONCLUSION

Because the Complaint fails to allege sufficient facts to state a claim for relief—indeed, it fails to meet the most rudimentary pleading standards—the Court should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

Dated: July 14, 2020

By: /s/ Chelsea A. McCarthy

Chelsea A. McCarthy
HOLLAND & KNIGHT
150 North Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Telephone:  (312) 715-5768
chelsea.mccarthy@hklaw.com

*and*

John S. Elias
Janaki Nair
ELIAS, MEGINNES & SEGHETTI, P.C.
416 Main Street, Suite 1400
Peoria, Illinois 61602
Telephone:  (309) 637-6000
jelias@emrslaw.com
jnair@emrslaw.com

*Attorneys for Individual Defendants*

Respectfully submitted,

By: */s/ Jeffrey S. Russell*

Jeffrey S. Russell
Barbara A. Smith
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:  (314) 259-2000
jsrussell@bclplaw.com
barbara.smith@bclplaw.com

*Attorneys for Argent Trust Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2020 I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


*/s/ Jeffrey S. Russell*

**CERTIFICATION**

Pursuant to L.R. 7.1(B)(4), the undersigned attorney certifies that the foregoing memorandum does not contain more than 7,000 words or 45,000 characters, inclusive of all headings, footnotes, and quotations.

*/s/ Jeffrey S. Russell*