IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

|  |  |  |
|---|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | ) ) ) ) ) ) ) ) | |
| *Plaintiff,* | ) | No. 1:20-cv-01177 |
| v. | ) ) ) | |
| ARGENT TRUST COMPANY, JAN ROUSE, and EDWARD C. MILLER, | ) ) ) ) ) | |
| *Defendants.* | ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

    I.      The Fiduciary Breach Claims Fail. .................................................................. 2

          A.      Plaintiff Is Not Entitled To An Inference Of Wrongdoing When The Public Record Refutes Such An Inference. ................. 2

          B.      Defendants Have Not Argued Issue Preclusion. .......................... 4

          C.      The Alleged Stock Price Drop Does Not Support An Inference Of Liability. ................................................................ 5

    II.     The Prohibited Transaction Claims Fail. ........................................................ 7

          A.      The Complaint Does Not State A Claim Under 29 U.S.C. § 1106(a) or 29 U.S.C. § 1132(a)(3). ............................ 7

          B.      The Complaint Does Not State A Claim Under 29 U.S.C. 1106(b). ................................................................... 9

    III.    The Indemnification Provision Is Valid As A Matter Of Law. ... 10

CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. GreatBanc Tr. Co.*,
  835 F.3d 670 (7th Cir. 2016) ................................................................. 2, 3, 8

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by Lyon v. Buth*,
  No. 18 C 1861, 2020 WL 4284150 (E.D. Wis. July 27, 2020) ...................... 11, 12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 3, 8

*Danza v. Fid. Mgmt. Tr. Co.*,
  533 F. App'x 120 (3d Cir. 2013) .................................................................. 10

*Donovan v. Cunningham*,
  716 F.2d 1455 (5th Cir. 1983) ..................................................................... 7

*Fish v. GreatBanc Tr. Co.*,
  749 F.3d 671 (7th Cir. 2014) ....................................................................... 8

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
  530 U.S. 238 (2000) ......................................................................... 8, 9, 11

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ..................................................................... 10

*Keach v. U.S. Tr. Co., N.A.*,
  244 F. Supp. 2d 968 (C.D. Ill. 2003) ............................................................. 9

*McMaken ex rel. Chemonics Int'l, Inc. Emp. Stock Ownership Plan v.*
  *GreatBanc Tr. Co.*,
  No. 17-CV-04983, 2019 WL 1468157 (N.D. Ill. Apr. 3, 2019) ......................... 13

*Packer Eng'g, Inc. v. Kratville*,
  965 F.2d 174 (7th Cir. 1992) ..................................................................... 12

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
  *Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ........................................................................ 3

*Perez v. PBI Bank, Inc.*,
  69 F. Supp. 3d 906 (N.D. Ind. 2014) .......................................................... 12

*Pudela v. Swanson,*
  No. 1:91-cv-03559, 1995 WL 77137 (N.D. Ill. Feb. 21, 1995) .................................. 12

*Schulist v. Blue Cross of Iowa,*
  717 F.2d 1127 (7th Cir. 1983) ............................................................................... 10

*Scott v. Aon Hewitt Fin. Advisors, LLC,*
  No. 17 C 679, 2018 WL 1384300 (N.D. Ill. Mar. 19, 2018) ........................................ 8

*Teets v. Great-W. Life & Annuity Ins. Co.,*
  921 F.3d 1200 (10th Cir. 2019) .............................................................................. 10

**Statutes**

29 U.S.C. § 1106 ............................................................................................... 7, 8, 9, 11

29 U.S.C. § 1108 ..................................................................................................... 7, 8, 9

29 U.S.C. § 1132(a)(3) ................................................................................................ 7, 8

**Regulations**

29 C.F.R. § 2509.75-4 .................................................................................................. 11

29 C.F.R. § 2510.3-101(h)(3) ....................................................................................... 11

## INTRODUCTION

Plaintiff's opposition opens with the suggestion that the motion to dismiss should be denied because "ERISA plan participants lack visibility into due diligence processes in ESOP stock purchase transactions." Opp'n at 1. Even if that were true in the mine run of cases, it is not so here, where the transaction's fairness was litigated at length in Illinois state court. That related litigation does not *preclude* a claim—and Defendants did not argue issue preclusion—but it is certainly relevant. The details of this transaction are publicly available to Plaintiff, and the Court should not permit Plaintiff's willful blindness to these facts to allow this Complaint to slink past dismissal. Where actual facts are publicly available, ignorance of them is no defense.

At base, the parties disagree about whether the allegations here are actual facts sufficient to state a claim or mere conclusory allegations that the Court can disregard. Read carefully and stripped of speculation, the Complaint fails because it parrots the elements of ERISA claims but pleads no concrete facts to support these allegations (and no inference of wrong-doing can arise from a transaction otherwise examined and held to be fair). With respect to the alleged prohibited transaction, the problem is starker: Plaintiff's position means that a prohibited transaction claim requires *no* actual factual or alleged wrongdoing, because pleading the transaction itself is sufficient to open the doors to discovery. That is not the standard.

1

# ARGUMENT

## I. The Fiduciary Breach Claims Fail.

### A. Plaintiff Is Not Entitled To An Inference Of Wrongdoing When The Public Record Refutes Such An Inference.

Plaintiff claims that the Complaint's allegations suffice because they "present a story that holds together." Opp'n at 8 (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). The opposition expounds at length about what ERISA plaintiffs cannot know before discovery, suggesting that pleading by inference, rather than on the basis of fact, states a claim. *See id.* Where the opposition addresses "facts" in the Complaint, it only demonstrates how conclusory those statements are.

For example, the Complaint alleges that "[t]he financial projections [underlying the deal] were unreasonably optimistic," *see* Compl. ¶ 48, but Plaintiff admits she does not have those projections, *see* Opp'n at 8 n.1, so this allegation is only a guess. Instead, the Complaint alleges all the ways in which a financial projection *could be* wrong, and asks the Court to assume one. Compl. at ¶ 53. Plaintiff also alleges that Argent was required to "undertake an appropriate and independent investigation" into fair market value, and did not. *Id.* at ¶ 85. This is another "because I said so" allegation untethered to factual support.

The Complaint also alleges the ESOP "paid a premium to remove Selling Shareholders," and "paid more than fair market value for Morton due to this payoff." Compl. ¶ 50. But this is a baseless allegation that the transaction price was too high—there are no facts alleged or that can be inferred to support this, and

2

it is a *legal conclusion*, not a fact.

Finally, Plaintiff cites ¶ 54 (Opp'n at 7), but this paragraph does not allege facts to support an inference that the price the ESOP paid for Morton stock was too high. Rather, this paragraph speculates about Argent's alleged intent in causing the alleged overpayment (*viz.*, "the possibility" of future business). These baseless allegations do not allow for any inference of an alleged overpayment, they simply serve to smear Argent (which is both irrelevant and offensive).

Worse still, even if there were "facts" that could theoretically "present a story that holds together," if pled by some other plaintiff in some other case, the publicly available state court decision evaluating *this transaction* leads to precisely the opposite inference from that which the Complaint asks this Court to draw. The story told by this Complaint *does not* hold together because it ignores publicly available facts that refute conclusory allegations.

Even if the court in *Allen* "infer[red] that the process was inadequate" and allowed that plaintiff to rely on "facts indirectly showing unlawful behavior," *see* 835 F.3d at 678, no such deference is warranted here. When publicly available facts *refute* an inference of bad conduct, pleas for contrary inferences and demands for discovery cannot be enough to state a claim and do not overcome *Iqbal*'s reasonable inference standard. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

Argent is not attempting to "take advantage of [an] information discrepancy and avoid discovery." Opp'n at 10. It is arguing that no such discrepancy exists

3

because the facts of this transaction are available (and favorable to Defendants). An ERISA plaintiff seeking a permissible legal inference is one thing—but this Plaintiff asks the Court to turn a blind eye to publicly available facts that undercut the Complaint, and that's quite another.

B. Defendants Have Not Argued Issue Preclusion.

Plaintiff refutes an argument on issue preclusion that no party made. The Complaint is not precluded. Rather, the Complaint's demand that this Court infer wrongdoing is impermissible in light of the publicly available facts about this transaction.

Plaintiff sidesteps the state court litigation and ignores facts that repudiate her claims. She ignores facts supporting the conclusion that the ESOP's creation was procedurally fair (*e.g.*, because it was negotiated at arm's length and included at least five offers and counteroffers). *See* ECF 18-4 ("Ex. D") at 27-28, 33. She ignores facts supporting the conclusion that the sale price was substantively reasonable and for no more than fair market value. *See id.* at 28. Plaintiff ignores that all parties knew the company's stock price would drop after the transaction, and that that change in price was expected and typical. *See id.* at 30.[1] In the face of these facts, the inference of liability Plaintiff asks this Court to draw is unwarranted.

Instead of explaining how the Complaint survives notwithstanding these

---

[1] Page 17 of the opposition abandons the notion that the 2017 stock drop matters, alleging that the alleged 2018 drop in stock price supports an inference of liability. No such inference can be drawn, given that the 2018 drop just mirrors the overall stock market drop that year (leading to an inference of no liability).

facts, Plaintiff argues that the Court should overlook them because the state court decision was issued "six months" before the deal closed. Opp'n at 13. Of course it was—that is how requests for injunctive relief work. Plaintiffs in state court sought to enjoin the transaction on the basis that the proposed deal was unfair. *See* Ex. D at 2. As a result, the court examined the terms of the proposed transaction, determined it was fair, denied the injunction, and allowed the transaction to proceed. *See id.* at 38.

Plaintiff also argues that the Court should ignore the state court decision because the Plan was not a party and Argent was only "a bit player." Opp'n at 15. But *the Plan* was not a party because, at the time, the transaction that created the Plan had not yet occurred. And Argent's role in the transaction was adjudicated at length: its employee, a witness, was cited in the decision and Argent is named more than 40 times (first at page 2). *See* Ex. D. There can be no serious argument that the transaction's fairness and Argent's due diligence were central questions. Although the parties to the state court decision were different, the underlying issues decided are the same issues presented here.

C. The Alleged Stock Price Drop Does Not Support An Inference Of Liability.

As the opening brief explains, the allegations regarding stock price (it "strangely rose" before the deal and then "dropped" afterwards) do not lead to an inference of liability. Nothing in the opposition refutes this.

Instead of addressing the merits of the stock price drop, Plaintiff wrongly accuses Defendants of "withholding" from the Court "the portion of the Form 5500

5

that proves Plaintiff's allegations" about stock price. Opp'n at 15. The purportedly "withheld" document is the 2016 financial statements of the Morton Buildings, Inc. 401(k) and ESOP attached to the amended 2016 Form 5500.[2] These same financial statements were filed with the original 2016 Form 5500 (*see* ECF 18-3 ("Ex. C")). These documents show that Morton did not redo the audit of the 401(k) and ESOP when filing the amended 2016 Form 5500. The allegedly-missing documents (available at Defendants' Exhibit C) present the outdated value of Morton stock. These do not "prove[] Plaintiff's allegation," and Defendants did not "withhold[] [them]." Plaintiff's unfair attack on Defendants' integrity does not advance their claims.

On the merits of the stock price, the *only* fact that Plaintiff asserts to support the argument that the stock price was too high is a comparison of the stock price on the date of the transaction ($75.25) to the stock price five months earlier, in December 2016 (which Plaintiff claims was $58.04, but which has been publicly corrected to $72.57, following IRS approval). Using the corrected stock price—from the amended 2016 form—there is no "strange rise" during that time period. *See* Compl. ¶ 52.[3] No "strange rise" equates to no factual support for the allegedly-too-high sale price.

---

[2] As explained in the opening brief, there is a separate Morton ESOP that predates this ESOP. *See* ECF 18 at 5 n.3.

[3] Plaintiff's late-breaking demand for discovery to demonstrate that the corrected price was "a *post hoc* justification of the Plan's overpayment for Morton," *see* Opp'n at 16, was not pled and ignores that Morton paid millions of dollars to plan participants for the corrected price. *See* ECF 18-6 ("Ex. F") at 17, Note 10.

6

The opposition does not address this, instead asserting that all the stock prices alleged in her Complaint are "suspect." *See* Opp'n at 16. This admission concedes Plaintiff has no basis for any of her stock price allegations. She then conflictingly argues that "the only value that matters is the value of Morton stock on the date of the ESOP transaction." *Id*. at n.3. But, as just explained, the Complaint cites the wrong value.

Plaintiff should have provided this Court with the accurate December 2016 stock value in her Complaint. Because she did not, Defendants corrected the Complaint's manifest oversight (thereby refuting the inference of liability that Plaintiff asked the Court to attach to the incorrect stock price). Defendants' use of publicly available information to establish the Complaint is misleading and does not create "a question of fact" that entitles Plaintiff to discovery. *See* Opp'n at 16.

## II. The Prohibited Transaction Claims Fail.

### A. The Complaint Does Not State A Claim Under 29 U.S.C. § 1106(a) or 29 U.S.C. § 1132(a)(3).

The implication of Plaintiff's argument is that any time an ESOP is created through seller-financed debt or the purchase of company stock from a "party in interest," a prohibited transaction has occurred and a plaintiff can sue and unlock the doors to discovery. This argument ignores the reality that such ESOPs are expressly authorized by statute. 29 U.S.C. § 1108(b)(3), (e); *Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983) (Absolute prohibitions on such transactions would "significantly hamper the implementation of ESOPs, particularly by small companies[.]").

7

This also ignores *Iqbal*'s requirement that a complaint allege more than the "mere possibility" of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Defendants are not attempting to flip the burden of pleading the "adequate consideration" exemption. The point is that Plaintiff has not plausibly alleged facts to support a violation of § 1106(a) in the first place. Even *Allen* recognized that all complaints are subject to the *Iqbal-Twombly* plausibility standard. *Allen*, 835 F.3d at 677. Plaintiff's barebones pleading of a prohibited transaction under § 1106(a)(1) does not meet that threshold. *Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *11 (N.D. Ill. Mar. 19, 2018) (dismissing prohibited transaction claim that was subject to a statutory exemption).

As explained above, unlike in *Allen*, publicly available facts here demonstrate the transaction's substantive fairness, thus precluding any inference of wrongdoing, and Plaintiff alleges no more than the basic elements of a prohibited transaction. *See Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 687 (7th Cir. 2014) ("We doubt it would have been prudent or even responsible for plaintiffs to have filed suit at the time, knowing only (a) that the transaction was prohibited under § 1106 unless § 1108 applied, and (b) that defendants claimed it did apply.").

Plaintiff's claim against the Selling Shareholders fails for an additional reason. These non-fiduciaries are not subject to a claim directly under § 1106; they are only subject to a claim under 29 U.S.C. § 1132(a)(3), and such a claim requires an "unlawful" transaction and the non-fiduciaries' actual or constructive knowledge of it. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251

(2000). A transaction enumerated in 29 U.S.C. § 1106(a) is unlawful "[e]xcept as provided in Section 1108." As this Court has recognized: "[T]here can be no liability of non-fiduciary parties-in-interest absent the existence of a prohibited transaction under § 406(a) *which does not qualify for [an] exemption under § 408(e) . . .*" *Keach v. U.S. Tr. Co., N.A.*, 244 F. Supp. 2d 968, 976 (C.D. Ill. 2003) (emphasis added). Plaintiff admits she has not pled a non-exempt prohibited transaction, but claims she has no obligation to do so as to the Selling Shareholders. Opp'n at 8. But Plaintiff's cases on this point only address the pleading burden as to a claim against *fiduciaries* under § 1106. A claim against the Selling Shareholders requires the existence of an unlawful transaction in the first place, *i.e.* a non-exempt prohibited transaction. *Keach*, 244 F. Supp. 2d at 976. Plaintiff has failed to plead that there was an unlawful transaction, so dismissal is required.

B. The Complaint Does Not State A Claim Under 29 U.S.C. § 1106(b).

Moreover, the Complaint does not state a claim that Argent violated § 1106(b). The Complaint alleges that "Argent (1) acted in the ESOP Transaction on behalf of the counterparties to the Plan, the McKinneys," and that Argent "(2) received consideration for its own personal account from Morton." *See* Opp'n at 3.

No facts support the first contention—not even mentioned in the Complaint—that Argent allegedly acted on behalf of "the McKinneys" in the transaction. The Trust Agreement and Engagement Letter make plain that Argent acted on behalf of the ESOP, not any counterparty. *See* ECF 18-1 ("Ex. A"); *see also id.* at ¶ 1. The state court decision affirms this.

9

With respect to the second allegation, that Argent violated ERISA because of the "consideration" it received—that is, its fee—Argent was not acting as a fiduciary in negotiating its pay. "Section 406(b)'s purpose is . . . not to prevent fiduciaries from being paid for their work. A service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain." *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3d Cir. 2013); *see also Teets v. Great-W. Life & Annuity Ins. Co.*, 921 F.3d 1200, 1213 (10th Cir. 2019) ("A service provider . . . does not owe a fiduciary duty regarding its compensation when compensation is fixed during an arm's-length negotiation."); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (same).

Argent bargained for its compensation at arm's length (and the Complaint does not allege otherwise). No prohibited transaction occurs where a party receives only reasonable compensation, and there is no well-pleaded allegation that Argent's compensation was unreasonable. Moreover, and critically, when Argent negotiated its engagement, it had not been hired as trustee for the ESOP and therefore could not have acted as a fiduciary in seeking payment for its proposed services. *See Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131–32 (7th Cir. 1983). Because Argent did not act as an ESOP fiduciary in negotiating its compensation (and could not have done so, as it had not yet been hired for that purpose) this claim fails.

### III. The Indemnification Provision Is Valid As A Matter Of Law.

Independent trustees are routinely indemnified for the professional services they render and courts regularly uphold indemnification provisions like this one.

10

To answer Plaintiff's "pivotal" question, *see* Opp'n at 19: this indemnification provision carves out the prohibited transaction claim and does not violate ERISA.

The provision specifies that it "shall not apply" to a "breach of fiduciary duty under ERISA." Ex. A at ¶ 6. A claim that a fiduciary caused an ESOP to engage in a prohibited transaction is a claim that the fiduciary breached a duty imposed by ERISA. *See* 29 U.S.C. § 1106(a)(1) (describing what "[a] fiduciary" shall not do); *Harris Tr. & Sav. Bank*, 530 U.S. at 245 (Section 406 "imposes a duty" on any "fiduciary that causes the plan to engage in the transaction").

Plaintiff seeks to circumvent this Circuit's precedents allowing indemnification on these facts. First, Plaintiff argues that "indemnification cannot come from the plan." *See* Opp'n at 19-20. This is misleading. The face of the engagement letter makes plain that Morton, *not* the ESOP, indemnifies Argent. *See* Ex. A at ¶ 6. The very regulation Plaintiff cites to insinuate that this indemnification provision is invalid actually expressly permits it. *See* 29 C.F.R. § 2509.75-4 (An "[e]xample of" a valid provision is one where a plan fiduciary is indemnified by "an employer, any of whose employees are covered by the plan."); *see* 29 C.F.R. § 2510.3-101(h)(3) (distinguishing between company and plan assets).

No court in this Circuit has held that indemnification is impermissible solely on the basis that the company is the one doing the indemnifying. Rather, the operative legal question focuses not on *who* indemnifies a trustee, but on *what* the indemnification provision actually says. An indemnification provision excludes coverage in the event of a fiduciary breach stands. *See Appvion, Inc. Ret. Sav. &*

11

*Emp. Stock Ownership Plan by Lyon v. Buth*, No. 18-C-1861, 2020 WL 4284150, at *22 (E.D. Wis. July 27, 2020) (upholding indemnification provisions as "entirely permissible," where "each agreement was entered into between each Trustee Defendant and [the company], not the Plan" and the provisions carved out indemnification for "a breach of a fiduciary obligation") (internal quotation marks omitted); *see also Perez v. PBI Bank, Inc.*, 69 F. Supp. 3d 906, 913 (N.D. Ind. 2014); *Pudela v. Swanson*, No. 1:91-cv-03559, 1995 WL 77137, at *5 (N.D. Ill. Feb. 21, 1995). These cases spring from the Seventh Circuit's decision affirming indemnification of an ERISA plan fiduciary by the company sponsoring the plan. *See Packer Eng'g, Inc. v. Kratville*, 965 F.2d 174, 175 (7th Cir. 1992) (upholding indemnification because fiduciaries who do not violate their obligations "should be praised, not told to write a check").[4]

Plaintiff asks this Court to break from these cases and adopt "the majority view" (alternatively called non-binding, out-of-circuit case law). Preliminarily, this "majority view" apparently encompasses a smattering of cases from the Ninth Circuit and one from the Western District of Pennsylvania, so its persuasiveness is questionable. Regardless, Plaintiff asks this Court to ignore contrary precedent from the Seventh Circuit that allows indemnification in precisely these circumstances—indemnification of an independent ESOP trustee by a company

---

[4] *Packer Engineering* itself responds to Plaintiff's footnote 8: "The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." 965 F.2d at 176 (citation omitted).

12

sponsoring the ESOP in the face of alleged prohibited transactions fiduciary breaches. *See Lyon*, 2020 WL 4284150, at *22.

The only case from *this* Circuit that Plaintiff cites actually supports Defendants and affirms that indemnification is permissible here. *See McMaken ex rel. Chemonics Int'l, Inc. Emp. Stock Ownership Plan v. GreatBanc Tr. Co.*, No. 17-CV-04983, 2019 WL 1468157, at *5 (N.D. Ill. Apr. 3, 2019) (distinguishing the indemnification provision in that case from those, like this one, that exclude from indemnification any fiduciary breach). The clause in *McMaken* "explicitly . . . authorize[d] [the company] at least partially to relieve [the trustee], for ERISA § 406 violations." *Id.* But the indemnification provision *here* contains no such exception, which makes this case very different from *McMaken*.

Passingly, Plaintiff argues that a prohibited transaction claim "impose[s] *per se* liability" and, therefore, indemnification would require "the Plan . . . to pay for Argent's costs and liability[.]" *See* Opp'n at 20. Courts in this Circuit do not adopt that position. *See, e.g., Lyon*, 2020 WL 4284150, at *22; *see also McMaken*, 2019 WL 1468157, at *5 (The indemnification clause "*unambiguously* encompasse[d] ERISA § 406 violations" because "prohibited transactions . . . are a species of fiduciary duty breaches under ERISA."). An otherwise valid indemnification provision is not suddenly invalid simply because a plaintiff pleads the prohibited transaction species of a fiduciary breach claim.

## CONCLUSION

The Court should dismiss the Complaint.

13

| | |
|---|---|
| Dated: September 8, 2020 | Respectfully submitted, |
| By: /s/ *Chelsea A. McCarthy* | By: /s/ *Jeffrey S. Russell* |
| Chelsea A. McCarthy<br>HOLLAND & KNIGHT<br>150 North Riverside Plaza, Suite 2700<br>Chicago, Illinois 60606<br>Telephone: (312) 715-5768<br>chelsea.mccarthy@hklaw.com | Jeffrey S. Russell<br>Barbara A. Smith<br>BRYAN CAVE LEIGHTON PAISNER LLP<br>One Metropolitan Square<br>211 N. Broadway, Suite 3600<br>St. Louis, Missouri 63102<br>Telephone: (314) 259-2000<br>jsrussell@bclplaw.com<br>barbara.smith@bclplaw.com |
| *and* | *Attorneys for Argent Trust Company* |
| John S. Elias<br>Janaki Nair<br>ELIAS, MEGINNES & SEGHETTI, P.C.<br>416 Main Street, Suite 1400<br>Peoria, Illinois 61602<br>Telephone: (309) 637-6000<br>jelias@emrslaw.com<br>jnair@emrslaw.com | |
| *Attorneys for Individual Defendants* | |

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 8, 2020 I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Jeffrey S. Russell*

## CERTIFICATION

Pursuant to L.R. 7.1(B)(4)(d), the undersigned attorney certifies that the foregoing memorandum does not contain more than **3500** words, inclusive of "[a]ll headings, footnotes, and quotations."

/s/ Jeffrey S. Russell