IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leverage Employee Stock Ownership Plan, and on behalf of all other persons similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No. 20-1177 |
| ARGENT TRUST COMPANY, JAN ROUSE, and EDWARD C. MILLER, | )<br>)<br>) |
| Defendants. | ) |

## ORDER AND OPINION

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 17). Plaintiff filed a response, Defendants filed a reply with leave of the Court, and Plaintiff filed a Motion to File a Sur-reply. The Court has considered Plaintiff's sur-reply in deciding this motion. For the reasons stated below, Defendants' Motion to Dismiss is denied.

## BACKGROUND

Plaintiff is an employee of Morton Buildings Inc. and participated in the company's Employee Stock Option Plan (ESOP) that was created in May 2017.[1] Plaintiff seeks to represent a class of participants in the ESOP. Defendant Argent Trust Company is the trustee of the ESOP and negotiated the purchase of stock on the ESOP's behalf. Defendants Jan Rouse and Edward C. Miller were majority shareholders of Morton's who sold their stock to the ESOP.

---

[1] The facts in the background section are derived from Plaintiff's Complaint.

Plaintiff filed a Complaint on April 30, 2020, alleging that Defendants violated ERISA through the purchase and financing of the ESOP that was problematic for several reasons. Plaintiff explains that the ESOP purchased over 2 million shares of Morton's stock for approximately $147 million. The purchase was partially financed by Morton and partially financed by the selling shareholders. Plaintiff asserts that the price of the stock plummeted after the sale, dropping from $75.25 at the time of the sale on May 8, 2017 to $33.78 as of December 31, 2017 and then again dropping to $29.48 by December 21, 2018. Plaintiff argues that the formation of the ESOP allowed selling shareholders to "unload their interests in Morton above fair market value and saddle the Plan with tens of millions of dollars of debt over a 30-year period." (Doc.1 at 5).

Plaintiff argues that the continued price drop indicates that Argent failed to exercise appropriate due diligence and that Argent might have been incentivized to overvalue the stock because potential sellers might become more interested in using Argent's services if Argent tends to favor the shareholders in its pricing. Accordingly, Plaintiff brings a variety of claims against Argent for breaching its fiduciary duty and allowing the ESOP to engage in a prohibited transaction. Plaintiff also brings claims against Defendants Rouse and Miller as selling shareholders who were allegedly aware of the wrongdoing and benefited from it. Plaintiff brings: Count I against Argent for engaging in a prohibited transaction under ERISA by entering into a sale with a party in interest and paying above market value; Count II against Argent for failing to discharge its fiduciary duties solely in the interest of plan participants and beneficiaries; Count III against Argent seeking an order to invalidate the indemnification agreement; and Count IV against the Defendants Rouse and Miller for having actual or constructive knowledge of wrongdoing and receiving a benefit of conduct that violates ERISA.

**LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds together" to be plausible. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993).

When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Conclusory allegations are "not entitled to be assumed true." *Id.*

**DISCUSSION**

**A. Defendants are not entitled to judicial notice of the facts or conclusions from the state court proceeding.**

Defendants argue that a state court has already considered the fairness of this transaction, and that this Court should credit the state court's conclusion that the deal was fair. Defendants explain that in 2015, minority shareholders in Morton filed a lawsuit in Illinois state court seeking to enjoin the creation of the ESOP, arguing, among other things, that the defendants to that suit breached various fiduciary duties. (Doc. 18 at 11). There, the defendants were Morton Buildings, Inc., Edward C. Miller, and Jan Rouse. The state court dismissed defendant Argent Financial Group early in the proceedings. After discovery and a nine-day bench trial, the Illinois

court entered judgment in favor of the defendants on November 14, 2016. (Doc. 18 at 11). Applying state law, the Illinois court determined that the transaction was fair, and that the stock was appropriately priced. Accordingly, the court ruled that the transaction could move forward. The stock sale eventually occurred in May 2017.

Defendants suggest that this Court should adopt the lower court's reasoning that the share price was fair and that the price was negotiated in an "arm's length" process. (Doc. 18 at 11). Defendants continue that unlike other ERISA plaintiffs, Plaintiff has the benefit of a lengthy litigation, including a nine-day evidentiary trial and a 39-page written decision regarding the transaction. (Doc. 18 at 17). Defendants argue that Plaintiff should not be permitted to ignore the publicly available information and "file a complaint that on its face demands discovery in spite of the readily available information that shows the claims are doomed from the start." (Doc. 18 at 17–18). Defendants also seek to have this Court agree that Defendant Argent has expertise in the area of ESOP transactions and "acted solely on its own and in the best interest of the proposed and/or potential ESOP participants." (Doc. 18 at 19).

"A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either (1) 'generally known within the territorial jurisdiction of the trial court' or (2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing, *inter alia*, Fed R. Evid. 201(b)). The Seventh Circuit has cautioned that in order for a fact to be judicially noticed, "indisputability is a prerequisite." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995). Judicial notice "substitutes the acceptance of a universal truth for the conventional method of introducing

evidence," and therefore, "courts should strictly adhere to [Rule 201 ] . . . before taking judicial notice of pertinent facts." *Gen. Elec. Capital Corp.*, 128 F.3d at 1081 (internal citations omitted).

When courts take judicial notice of the fact of another court's decision, they recognize "the simple fact that [a] decision has been made." *Opoka v. I.N.S.*, 94 F.3d 392, 395 (7th Cir. 1996); *see also United States v. Jones,* 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."); *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Kramer v. Time Warner, Inc*., 937 F.2d 767, 774 (2d Cir.1991)). Courts do "not consider[] the reasons underlying" another court's decision. *Id*. While this Court may be permitted to take judicial notice of the fact that the state court proceeding occurred, the heart of this dispute is disagreement over whether the transaction was fair. It is not appropriate for this Court to take judicial notice of any of the state court's factual findings or legal conclusions. Specifically, the state court's determination that the transaction was fair is not a fact and it is disputed, making judicial notice inappropriate. Moreover, the Seventh Circuit has observed that "[i]f it were permissible for a court to take judicial notice of a fact merely because it had been found to be true in some other action, the doctrine of collateral estoppel would be superfluous." *Gen. Elec.*, 128 F.3d at 1083.

While Defendants assert that they are not seeking to invoke claim preclusion or collateral estoppel, their arguments reflect something more akin to collateral estoppel. The concept underlying claim preclusion and collateral estoppel is that once the merits of a legal claim are

determined in a court of competent jurisdiction, they "are not subject to redetermination in another forum." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982). "Illinois claim-preclusion law[2] has three basic requirements: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of the causes of action; and (3) an identity of parties or their privies." *Dookeran v. Cnty. of Cook*, 719 F.3d 570, 575 (7th Cir. 2013) (quoting *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). Here, there are different parties, who brought the suit under different laws, and did so years after the initial decision. Thus, Defendants do not meet the requirements for claim preclusion.

The reasons for these boundaries around claim preclusion highlight why claim preclusion and judicial notice of facts from the state court opinion are inappropriate here. Claim preclusion is "bounded by the Due Process Clause of the Fourteenth Amendment, which overrides the otherwise preclusive effect of a prior judgment if the claimant did not have a 'full and fair opportunity to litigate [his] claim' in the prior action." *Dookeran*, 719 F.3d 570 at 576 (citing *Kremer v. Chem Constr. Corp.*, 456 U.S. 461, 480 (1982)). "Critical to the application of collateral estoppel is the guarantee that the party sought to be estopped had the opportunity and the incentive to litigate the issue aggressively." *Kunzelman v. Thompson*, 799 F.2d 1172, 1177 (7th Cir.1986); *Jones v. City of Alton*, 757 F.2d 878, 885 (7th Cir.1985) ("effective opportunity" to litigate issue is prerequisite to the operation of collateral estoppel). Part of the full opportunity to litigate includes the right to appeal an adverse decision. *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989) (citing *Disher v. Information Resources, Inc.*, 873 F.2d 136, 139 (7th Cir.1989)).

The state court proceeding involved a different plaintiff with interests, motives, and claims that were not aligned with those of Plaintiff in this case. Plaintiff did not have the

---

[2] Because the earlier suit was filed in Illinois state court, this Court follows Illinois law on whether res judicata bars the current suit. *See Groesch v. City of Springfield*, 635 F.3d 1020, 1029 (7th Cir. 2011).

opportunity to investigate and provide her own version of the facts and present her own witnesses. The state court decision was entered many months before the ESOP transaction and occurred years before the continued plummet of the stock's value, further distancing that case from this one. Plaintiff also did not have the opportunity to appeal the decision herself. While Defendants claim they are not seeking collateral estoppel or claim reclusion, the principles underlying those theories further highlight why it would not be appropriate for this Court to adopt the findings of the state court. Plaintiff cannot be bound by the state court's findings in prior litigation when she had no part in it, her interests were not adequately represented, and the decision occurred years ago.

    **B. Plaintiff has alleged sufficient facts to support her assertion that the ESOP overpaid for Morton stock.**

Defendants argue that Counts I, II, and IV should be dismissed because they each turn on the theory that the ESOP overpaid for the stock. Defendants assert that the facts regarding overpayment are largely legal conclusions couched as facts and that the stock price fluctuations Plaintiff describes in the Complaint are not what they seem.

The Complaint asserts that the stock price strangely rose before the sale and then plummeted after the sale. Specifically, the Complaint alleges that the per share purchase price in May 2017 was $75.25, but that just five months before the sale in December 2016, the share price was only $58.04. Then, in December 2017, the stock value dropped to $33.78 per share. In December 2018, the price had dropped again to just $29.48, representing a total of tens of millions of dollars in lost value to the ESOP.

Defendants counter that the price drop was expected and that there was not a strange rise in price—only a mistake in pricing in December 2016 that Morton's later corrected. Defendants assert that the December 2016 figure is derived from a publicly available Form 5500 filing

related to a long-standing ESOP that predates the ESOP at issue.[3]  Defendants attached a copy of the form to their response.  In November of 2018, Defendants assert that Morton's revised its evaluation of company stock (Doc. 18-5), which reflects that the stock value was $72.57 in December 2016, not $58.04.

Plaintiff does not dispute that in November of 2018, Defendants revised the stock price. However, Plaintiff argues that the price correction occurred a year and a half after the ESOP transaction. (Doc. 22 at 21).  Accordingly, Plaintiff argues it is plausible that the company filed the corrected value "to justify the value paid by the ESOP in May 2017" and that she is entitled to discovery on this point (Doc. 22 at 22). The Court agrees that at this stage, the fact that Morton's filed a correction nearly two years after the purported stock valuation error does not conclusively determine that the price did not strangely rise.

Additionally, even considering the Defendant's argument that everyone expected the stock price to drop due to the loan, Defendants would still not prevail on this point.  Plaintiff argues that even if a stock price drop was expected, that does not explain why after the 2017 drop, the price was yet still lower in December 2018. Accordingly, Plaintiff has plausibly alleged that the stock price movement is suspicious and suggests the ESOP overpaid. Defendants cannot defeat Plaintiff's claims based on their assertion that the stock price was reasonable.

**C. Plaintiff has alleged sufficient facts to support her assertion that Defendants engaged in a prohibited transaction under 29 U.S.C. 1106(a), as asserted in Count I.**

To state an ERISA § 406(a) prohibited transaction against Defendant Argent (Count I), Plaintiff must allege facts plausible to show that Argent (1) was a fiduciary with respect to the ESOP; (2) caused the plan to engage in a transaction; (3) knew or should have known the

---

[3] Plaintiff does not dispute the authenticity of that document and Seventh Circuit law indicates that it is the sort of document that may be relied upon as a matter of public record. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (approving consideration of publicly available prospectuses in an ERISA case).

transaction was a prohibited transaction including: (a) a sale or exchange of Morton stock between the Plan and a party in interest; (b) a lending of money or other extension of credit between the ESOP and a party in interest; or (c) a transfer of ESOP assets to a party in interest. 29 U.S.C. § 1106 (a)(1). A party in interest includes an "employer any of whose employees are covered by the plan. 29 U.S.C. § 1002 (14)(C). Here, the first two elements are not at issue— Argent was plainly the fiduciary and caused the plan to enter into a transaction. Plaintiff provides sufficient support for her assertion that Argent approved a stock transaction between the Plan and parties in interest because the selling shareholders were parties in interest. Plaintiff explains that it the transaction was further problematic because the ESOP borrowed money from both Morton and the selling shareholders.

This section's "prohibitions are subject to both statutory and regulatory exemptions." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000) (citing §§ 408(a), (b), 29 U.S.C. §§ 1108(a), (b)). One exception is the acquisition of employer stock for "adequate consideration." *Allen v. GreenBanc Trust Co.*, 835 F.3d 670, 675 (7th Cir. 2016) (quoting 29 U.S.C. § 1108(e)(1)). Section 408(b)(3) also exempts a loan to an ESOP if the loan is primarily for the benefit of plan participants and beneficiaries and is loaned at an interest rate "not in excess of a reasonable rate." *Id*. (citing 29 U.S.C. § 1108(b)(3)).

In Defendants' initial motion, Defendants largely argue that Plaintiff's claim fails because the Complaint lacks sufficient facts to support a reasonable inference that the ESOP overpaid for the stock. (Doc. 18 at 19). While an adequate price can serve as an exemption to an otherwise prohibited transaction, the Seventh Circuit has held that "an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions." *Allen*, 835 F.3d 670, 675 (7th Cir. 2016) (citing *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 685 (7th Cir. 2014)). "It is the

defendant who bears the burden of proving a section 408 exemption, and the burden of pleading commonly precedes the burden of persuasion." *Id*. (citing *Keach v. U.S. Trust Co.*, 419 F.3d 626, 633 (7th Cir. 2005); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (internal citations omitted)). The Seventh Circuit was explicit that it "now hold[s] squarely that the section 408 exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them." *Id*.; *see also U.S. v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (noting that a complaint must only state a claim on which relief may be granted and need not "plead around defenses").

Defendants also assert that ESOPs are expressly authorized by statute and that it simply cannot be the case that every time an ESOP is created a plaintiff can sue. (Doc. 26-1 at 11). [4] However, the Seventh Circuit has already rejected a similar policy argument. *See Allen*, 835 F.3d at 677. In *Allen*, the defendants argue that there could be a "flood" of prohibited transaction related litigation "if all that must be alleged is the occurrence of a 406 transaction." *Id*. The Seventh Circuit considered that argument "overwrought." *Id*. The court continued that rational plans will only sue when there is a reason to do so, observing that Rule 11 is a constraint against frivolous lawsuits and that district courts have ample tools to screen complaints. *Id*. The Seventh Circuit expressed that it was more concerned with the prospect that plaintiffs would need to plead around all the exemptions to a prohibited transaction when plaintiffs generally lack access to information about the plan's dealings and could prematurely defeat plaintiffs' claim. *Id*.

---

[4] Plaintiff objects to Defendants raising new issues in their reply brief. Plaintiff filed, and the Court considered Plaintiff's sur-reply brief that addressed the merits of this argument. Even assuming that some of Defendants' arguments were not appropriately raised in their initial brief, Plaintiff has had an opportunity to respond to those arguments. Moreover, defendants do not waive their arguments related to failure to state a claim if they do not raise them in a motion to dismiss and in some circumstances, defendants could later raise those arguments in a motion for judgment on the pleadings. *See Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012). Accordingly, in the interest of judicial economy the Court will consider all of Defendants' argument from their reply brief that Plaintiff asserts were inappropriately raised.

Accordingly, the fact that ESOPs are legally permitted in many situations, does not bar Plaintiff's claim for a prohibited transaction when she has reason to believe the plan overpaid.

      **B. Plaintiff has sufficiently pleaded that Defendant Argent engaged in a prohibited transaction under 29 U.S.C. §1106(b), as asserted in Count I.**

In their reply, Defendants also argue that there was no prohibited transaction under 29 U.S.C. § 1106(b) because Argent's agreement was clear that it worked only on behalf of the ESOP and that it bargained for its compensation from Morton at arm's length and received only reasonable compensation. (Doc. 26-1 at 14). To state a § 1106(b)(2) prohibited transaction claim against Argent, Plaintiff must allege sufficient facts to make it plausible that Argent acted in the ESOP transaction on behalf of the selling shareholders. As explained above, Plaintiff sufficiently alleged that the Selling Shareholders received more than fair market value for their shares. The Court agrees with Plaintiff's assertion that "[r]egardless of what Argent's engagement agreement says it *should have* done on behalf of the Plan, Plaintiff alleges that it *in fact* failed to do so." (Doc. 28-1 at 11). At this stage, the Court must accept Plaintiff's well-pleaded complaint as true and doing so requires the Court to find in favor of Plaintiff on this point.

The parties also disagree about whether Plaintiff sufficiently pleads a claim under 29 U.S.C. § 1106 (b)(3), which prohibits a fiduciary from "receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." In their reply brief, Defendants assert that Argent's fees were not unreasonable, and that Argent was not a fiduciary of the plan at the time it negotiated its payment from Morton, so it cannot be liable under this subsection. Regarding the reasonable fees, that would be another affirmative defense, and as explained above, Plaintiff is not required to plead around affirmative defenses. *See e.g., Allen*, 835 F.3d at 676 ("fundamentally, an ERISA plaintiff need not plead the absence of exemptions to prohibited transactions."). Furthermore,

"the majority of courts that have examined this statutory interpretation issue have held that § 1108 applies only to transactions under §1106(a), not § 1106(b). *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 750 (6th Cir. 2014) (*citing Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 93–96 (3d Cir. 2012); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910–11 (9th Cir. 2001); *Chao v. Linder*, 421 F. Supp. 2d 1129, 1135–36 (N.D. Ill. 2006)). The Department of Labor agrees. *See* 29 C.F.R. § 2550.408b-2(a)(3) (ERISA "section 408(b)(2) does not contain an exemption from acts described in section 406(b)(1)")). While the Court does not need to conclusively determine whether this exemption applies for the purpose of the present motion, this section 408 exemption cannot defeat Plaintiff's claim at this stage. That Argent negotiated its pay before it was a plan fiduciary also does not defeat Plaintiff's claim that Argent received payment from a party dealing in the plan. Accordingly, Defendants' cannot prevail on this point.

### D. Plaintiff sufficiently pleads Count II against Argent for Breach of Fiduciary Duty.

In order to state a claim for breach of fiduciary duty under ERISA, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (citing *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007)).

Plaintiff's allegations raise serious questions regarding whether Argent paid a fair price and adequately considered the drop in stock price. *Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006) (ESOP fiduciary must consider obvious risk of liquidity problem caused by taking on great amount of debt); *Steinman v. Hicks*, 352 F.3d 1101, 1106 (7th Cir. 2003) (discussing hypothetical case where ESOP fiduciary would be imprudent by failing to adequately respond to a very high debt-equity ratio). Based on the continued price drops that

have cost the ESOP tens of millions of dollars in lost value, Plaintiff asserts that Argent failed to conduct an adequate inquiry into the value of the company's stock. While plaintiff cannot "describe in detail the process [Argent] used, no such precision [is] essential. It [is] enough to allege facts from which a factfinder could infer the process was inadequate." *Allen*, 835 F.3d at 678. The Seventh Circuit continued "a district court errs in making the assumption that [Plaintiff] was required to describe directly the way in which appellees breached their fiduciary duties; rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior." *Id*. (citation omitted). "This is particularly true in ERISA cases because plaintiffs generally lack the inside information necessary to make out their claim sin detail unless and until discovery commences. *Id*. (citation omitted).

Moreover, ERISA is a "remedial statute to be liberally construed in favor of employee benefit fund participants." *Allen*, 835 F.3d at 673 (*quoting Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir. 1983)). Thus, the Court is satisfied that Plaintiff's assertion that the loan came from the employer and seller, that the valuation had flaws, and that the subsequent price drop reflects a lack of due diligence is enough to nudge her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Defendants' motion is denied on the issue of Argent's prudence in agreeing to the deal.

**E. Plaintiff sufficiently pleads Count III that the indemnification agreement should be void as a matter of law.**

Plaintiff argues that Argent violated ERISA §410 and 404(a)(1)(A)(B) because the indemnification agreement in Argent's Engagement Agreement or Trust Agreement attempt to relieve Argent from liability for violating ERISA's prohibited transaction rules. ERISA § 410(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [part 4 of Title I

of ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a). Although indemnification agreements that function as insurance are allowed, indemnification cannot come from the plan itself. 29 C.F.R. § 2509.75–4. The DOL has explained that "[s]uch an arrangement would have the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations." *Id.*

Defendants argue that the indemnification agreement does not apply to "any claim, damage, expense, liability, or loss that is attributable to [Argent's] breach of fiduciary duty under ERISA, gross negligence, or willful misconduct." (Doc. 18 at 27 *citing* doc. 18-1 at 1). Thus, Defendants argue that the indemnification carves out those claims that may not be indemnified under ERISA. Plaintiff counters that the agreement does not carve out prohibited transaction and Defendants' claim that prohibited transaction claims are a species of fiduciary duty claims ignores that fiduciary duty claims and prohibited transaction claims occupy distinct sections of ERISA. *See* U.S.C. §§ 1104, 1106. The contract provision does not explicitly exempt prohibited transaction from indemnification. Thus, at best, this provision is ambiguous, and the Court cannot resolve the ambiguity at this early stage in litigation.

Defendants argue that in any event, the indemnification agreement functions essentially as insurance, which is permissible. However, many courts consider indemnification by an ESOP sponsor, such as Morton, functionally equivalent to an impermissible indemnification by the plan itself when the sponsor is ESOP owned. *See Johnson v. Couturier,* 572 F.3d 1067, 1080 (9th Cir. 2009) (rejecting argument the defendant's argument that because the indemnification would come from corporate, not plan assets, the indemnification agreement was valid, stating any proceed taken from the company to pay the defendant's defense cost, "will, dollar for dollar,

reduce the funds available for distribution to ESOP participants); *McMaken on behalf of Chemonics Int'l, Inc. Employee Stock Ownership Plan v. GreatBanc Tr. Co.*, No. 17-CV-04983, 2019 WL 1468157, at *1 (N.D. Ill. Apr. 3, 2019) (agreeing with the "majority" that "indemnification of a plan fiduciary by the plan sponsor indirectly imposes a burden of the trustee's breach of fiduciary duty on the employee stock ownership program itself"); *Pfeifer v. Wawa, Inc.*, 214 F. Supp. 3d 366, 373 (E.D. Pa. 2016) (agreeing with the "majority view" that "indemnification by an ESOP sponsor functionally equates to an impermissible indemnification by the ESOP itself"); *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617, 640-41 (W.D. Pa. 1999) (noting that it would be "inconsistent with the intentions of ERISA to allow a trustee who has breached his fiduciary duties to the ESOP to be indemnified by the sponsoring company where the ESOP would indirectly bear the financial burden"). Here, the company is entirely owned by the ESOP. Accordingly, the Court agrees that the indemnification would indirectly place the indemnification burden on the ESOP, which is impermissible under ERISA.

Making all reasonable inferences in favor of Plaintiff, the Court is compelled to find Defendants' motion fails on this issue as well.

**F. Plaintiff has sufficiently pleaded Count IV against the selling shareholders.**

Plaintiff brings a claim against the selling shareholders under 29 U.S.C. § 1132(a)(3) which permits a plan to bring a civil action against anyone who receives a benefit of conduct that violates ERISA if they have actual or constructive knowledge of the violation. As explained above, Plaintiff has sufficiently alleged the elements of a prohibited transaction against Argent and based on Plaintiff's allegations, the selling shareholders benefited from this violation when they received a payment above fair market value for their stocks. Defendants largely focus their argument on the Court taking judicial notice of the state court's finding of facts or agreeing with

its argument that Plaintiff did not successfully plead that the stock price was unfair. The Court has already rejected those arguments for the reasons state above. In their reply, Defendants argue that because this claim requires that Plaintiff demonstrate an unlawful transaction occurred, Plaintiff must defeat potential § 408 exemptions. As the Seventh Circuit has made clear that plaintiffs need not plead around exemptions to state a claim under ERISA, the Court will not impose that obligation here.

Plaintiff sufficiently pleaded that the shareholders benefitted when Argent overpaid for the stock and that an unlawful transaction occurred. As explained above, the Seventh Circuit has clearly articulated that plaintiff do not have to plead around affirmative ERISA exemptions. Accordingly, Defendants' motion fails on this point as well.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [17] is DENIED. The Court also reviewed and considered Plaintiff's proposed sur-reply. Because Defendants' added new arguments to their reply brief, Plaintiff's Motion to File a Sur-Reply [28] is GRANTED and the Clerk is directed to file Plaintiff's Exhibit 1 as her sur-reply to Defendants' Motion to Dismiss. Plaintiff is further ORDERED to file her Motion for Conditional Class Certification on or before December 1, 2020 and Defendants shall file a response on or before December 22, 2020.

ENTERED this 3rd day of November, 2020.

                                                      /s/ Michael M. Mihm
                                                       Michael M. Mihm
                                         United States District Judge