IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leverage Employee Stock Ownership Plan, and On behalf of all other persons similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 20-1177 ) |
| ARGENT TRUST COMPANY, JAN ROUSE, EDWARD C. MILLER, GETZ FAMILY LIMITED PARTNERSHIP, ESTATE OF HENRY A. GETZ, and ESTATE OF VIRGINIA MILLER, | ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER AND OPINION

Pending before the Court is Defendants Estate of Henry A. Getz and Estate of Virginia Miller's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 81) and Defendant Getz Family Limited Partnership's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 75). The Court has reviewed the relevant response, replies, and briefing on the supplemental authority. For the reasons stated below, Defendants' Motions to Dismiss are denied.

## BACKGROUND

This dispute arises from a May 2017 transaction through which Morton Buildings, Incorporated formed an Employee Stock Ownership Plan (ESOP).[1] Plaintiff is an employee of Morton and participated in the company's ESOP. Plaintiff seeks to represent a class of participants in the ESOP, asserting that the ESOP overpaid for the stock it purchased.

---

[1] The facts in the background section are derived from Plaintiff's Amended Complaint.

1

Plaintiff initially filed a Complaint on April 30, 2020, alleging that various Defendants violated ERISA through the purchase and financing of the ESOP that was problematic for several reasons. Plaintiff asserts that the ESOP purchased over 2 million shares of Morton's stock for approximately $147 million. The purchase was partially financed by Morton and partially financed by the selling shareholders. Plaintiff asserts that the price of the stock suspiciously rose for the May 8, 2017 sale and then plummeted after the ESOP transaction. According to the Complaint, on December 31, 2016, Morton stock was valued at $58.04 per share. Just over four months later, at the time of the ESOP transaction on May 8, 2017, Morton stock was value at $75.25 per share. Then, the value plummeted to $33.78 a share as of December 31, 2017, and again dropped to $29.48 by December 21, 2018. Plaintiff argues that the formation of the ESOP allowed selling shareholders to "unload their interests in Morton above fair market value and saddle the Plan with tens of millions of dollars of debt over a 30-year period." (ECF No. 57 at 4). Plaintiff initially sued Argent Trust Company which represented the Plan and its participants as Trustee in the ESOP Transaction and several of the selling shareholders.

The Court already entered an order denying a motion to dismiss as to any of the Defendants from the initial Complaint. (ECF No. 31). Then, on August 19, 2021, Plaintiff filed an amended Complaint adding the Estate of Virginia Miller, the Estate of Henry A. Getz ("Estate Defendants"), and the Getz Family Partnership ("Defendant Partnership") to Count IV for having had actual or constructive knowledge of wrongdoing and receiving a benefit of conduct that violates ERISA. All of these Defendants were selling shareholders who owned at least a ten percent interest in Morton. Defendant Getz Family Limited Partnership filed a Motion to Dismiss on October 19, 2021, for failure to state a claim. Estate Defendants filed a Motion to Dismiss on October 25, 2021

for lack of subject matter jurisdiction and in the alternative, failure to state a claim. The Court addresses both motions below.

## LEGAL STANDARD

A plaintiff faced with a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction bears the burden of establishing that the jurisdictional requirements have been met. *Western Transp. Co. v. Couzens Warehouse & Distributors, Inc.*, 695 F.2d 1033, 1038 (7th Cir. 1982). A court may consider evidence offered in support of a motion to dismiss under Rule 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Company*, 572 F.3d 440, 444 (7th Cir. 2009) (explaining that the "trial court is free to weigh the evidence and satisfy itself as to the existence of" its power to hear a case under 12(b)(1)).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, which when accepted as true, states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff's claim must "give enough details about the subject matter of the case to present a story that holds together" to be plausible. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A court must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). When evaluating a motion to dismiss, courts must accept as true all factual allegations in the complaint. *Ashcroft*, 556 U.S. at 678. However, the court need not accept as true the complaint's legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 555). Conclusory allegations are "not entitled to be assumed true." *Id.*

# DISCUSSION

**a. The probate exception to federal jurisdiction does not bar Plaintiff's claims against the Estate Defendants.**

The Estate Defendants argue that this Court lacks subject matter jurisdiction over the Estates because the state probate court is "exercising jurisdiction over the *res* of both Estates" (ECF No. 82 at 10), and the probate exception to federal jurisdiction applies. The Estate Defendants' position appears to be that if Plaintiff is successful in her suit against them, she would ultimately seek compensation from the estates, violating the probate exception to federal jurisdiction.

The Supreme Court has confirmed that the probate exception is not "compelled by the text of the Constitution or federal statute" but is a "judicially created doctrine[]." *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). This is a "narrow exception" of "distinctly limited scope" that (1) "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and (2) it "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.*; *see also Jones v. Brennan*, 465 F.3d 304, 305 (7th Cir. 2006). The exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Id.* at 312. Here, there is no will at issue and Plaintiff is not asking the Court to administer an estate, so the only remaining question is whether Plaintiff is asking the Court to dispose of property in the custody of a state probate court.

The Court agrees with Plaintiff that the Supreme Court and Seventh Circuit have repeatedly confirmed that this exception is to be construed narrowly. *See Marshall*, 547 U.S. at 312; *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741 (7th Cir. 2016). In *Marshall*, the Supreme Court admonished that courts "have rendered decisions expansively interpreting the [probate and domestic relations] exception" *Marshall*, 547 U.S. at 299. The Supreme Court overturned the

Ninth Circuit's application of the probate exception, finding that the Ninth Circuit inappropriately applied a sweeping expansion of the probate exception. *Id*. The case centered on Vickie Marshall, a widow who brought an adversary proceeding in her Chapter 11 bankruptcy against her grown stepson, E. Pierce Marshall. In that proceeding, she claimed, among other things, that he tortiously interfered with an expected inheritance or gift from her deceased husband. *Marshall*, 547 U.S. 293. The matter ultimately came before a federal district court that found that the probate exception did not apply, but the Ninth Circuit overturned that decision. The Supreme Court disagreed with the Ninth Circuit and held that there was not a sound policy consideration to support extending the probate exception to cover the case before it because state and federal trial courts often address the conduct that Vickie alleged. *Id*. at 312 (citing *Ankenbrandt v. Richards*, 504 U.S. 689 (1992)). The Supreme Court continued that "state probate courts possess no 'special proficiency ... in handling [such] issues.'" *Id.* (citing *Ankenbrandt*, 504 U.S. at 704).

Here, ERISA is a federal statute making it even more appropriate that the case remain in federal court since state probate courts do not have any "special proficiency" in addressing ERISA related cases. State probate courts do not have the opportunity to consider ERISA matters and thus, there is a stronger policy consideration for keeping an ERISA case before a federal court that regularly handles ERISA matters. The Court agrees with Plaintiff's assessment that she is not asking for the Court to directly involve itself in the administration of the estate or to directly dispose of any property that is under the jurisdiction of the state court. Instead, she is seeking a judgment so that she has the opportunity to stand with other creditors in pursuing funds from the estate. To the extent she requests any relief that the Court would be unable to grant against the Estate, the Court finds that Plaintiff requesting relief beyond what may be possible does not divest the Court of jurisdiction.

5

Defendants cite *Jones v. Brennan,* 465 F.3d 304, 306 (7th Cir. 2006) in support of their position that the probate exception applies here. There, the plaintiff brought a case claiming that the defendants conspired to deprive her of property without due process in the probate proceedings involving her father's estate. The Seventh Circuit explained that the defendant's complaints about the maladministration of her father's estate were "tantamount to asking the federal district court to take over the administration of the estate." *Id*. at 307. However, as to the claim accusing the guardians of mismanaging the estate and breach of fiduciary duty, the Seventh Circuit found that claim did not necessarily ask the court to administer the estate, "but rather to impose tort liability on the guardians for breach of fiduciary duty." *Id*. at 308. The Seventh Circuit ultimately sent the case back to the district court to determine if there was at least one colorable federal claim not barred by the probate exception. *Id*.

Unlike the barred claim in *Jones*, Plaintiff's claims are not about the manner in which the state court is administering the estate, but an ERISA violation. The Estate Defendants' proposed rule that the probate exception bars claims when the monetary relief would come from an estate is inconsistent with the narrowness of the probate exception. Accordingly, the Court agrees that the probate exception does not apply here, and that subject matter jurisdiction exists over this case.

b. **The Illinois Probate Code regarding the deadlines for bringing a claim against an estate does not preempt the ERISA statute of limitations.**

In the alternative, the Estate of Henry A. Getz argues it lacks the capacity to be sued under Rule 17(b) of the Federal Rules of Civil Procedure, which states that in the case of an individual, the capacity to be sued is determined by the law of the individual's domicile (ECF No. 82 at 12–13). The Estate continues that the Illinois Probate Code has an outermost deadline of two years after the death of the decedent to bring a claim against the estate, a deadline which has passed in this case. *See* 755 ILCS 5/18-12(b) ("Unless sooner barred under subsection (a) of this Section, all

6

claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent"). ERISA, however, provides a six-year statute of limitations for prohibited transaction claims such as the one brought against the Estate of Henry A. Getz. 29 U.S.C. § 1113. Plaintiff argues ERISA preempts any conflicting state laws.

ERISA provides, in relevant part: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The Supreme Court has "observed repeatedly that this broadly worded provision is clearly expansive." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001). ERISA's preemption provision is "deliberately expansive and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987); *see also Halperin v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021) ("Congress clearly intended ERISA preemption to be broad. Congress chose 'deliberately expansive' language, 'conspicuous for its breadth'"). The ERISA preemption provision goes so far as to "displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985).

Other courts have held that ERISA preempts similar state laws. *See Bd. of Tr. of W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson Inc.*, 830 F.2d 1009, 1016–17 (9th Cir. 1987) (holding ERISA preempts Montana Probate Code requirement to present claims against an estate within four months of publication of notice); *Hemphill v. Estate of Ryskamp*, 619 F. Supp. 2d 954, 978–80 (E.D. Cal. 2008) (claims against executor were not barred by California Probate

Code provision that was preempted by ERISA); *Central States v. Minneapolis Van & Warehouse Co.*, 764 F. Supp. 1289, 1297 (N.D. Ill. 1991) (suggesting state corporation law limitations period would be preempted by ERISA limitations period). The Court agrees with the Ninth Circuit's assessment that since Congress expressly provided a limitations period to this provision it "considered the period of limitations applicable to such actions essential to enforcement of employer obligations." *W. Conference of Teamsters,* 830 F.2d 1009 at 1016.[2]

Defendant relies on *Witco Corp. v. Beekhuis*, 38 F.3d 682 (3d Cir. 1994) in support of its position that the state probate statute of limitations applies. There, the plaintiff was seeking contribution from an estate under the Comprehensive Environmental Compensation and Liability Act ("CERCLA"). The Third Circuit observed that "Congress has not explicitly preempted all state law on environmental subject matter, nor has Congress enacted such a comprehensive scheme of regulation as to provide no room for supplementation by the states." *Id*. at 687 (citing *Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 125–26 (3d Cir. 1991)). The Third Circuit continued that federal preemption of state law is not favored, particularly in the context of probate matters, an area traditionally dominated by individual states. *Id*. The Third Circuit noted that Congress had carved out an innocent landowner defense that allowed a person who inherited contaminated land to assert the innocent landowner defense and escape liability. Accordingly, the Third Circuit found that it could not conclude that Congress impliedly preempted state probate law "to expand a CERCLA claimant's right to seek contribution against property of a deceased potentially responsible party, when Congress expressly narrowed CERCLA liability with regard to the contaminated facility

---

[2] This Court has addressed a related issue in *Trustees of Central Laborers' Pension Fund v. Tisler*, 641 F. Supp. 389 (C.D. Ill. 1986). There, the Court ultimately found that the plaintiff's claim was barred by the Probate Act's statute of limitations, but only because ERISA did not provide a statute of limitations for the specific provision at issue. There, the Court observed that when certain ERISA provisions lack a limitations period, a court should use the most appropriate state statute of limitations. This case is distinguishable because ERISA provides a statute of limitations for the relevant provision.

8

itself (in order not to disturb the normal descent and distribution of real property under state probate law." *Id*. at 689.

Unlike CERCLA, Congress made clear that ERISA broadly preempts state law, as explained above. Application of the shorter state period for filing would infringe upon the exclusive federal concern in uniformity of pension plan regulations and thus, would be inappropriate in this context. Accordingly, Defendant Estate of Henry A. Getz cannot prevail under this argument.

    **c. Plaintiff sufficiently pleaded that Defendants had actual or constructive knowledge of the prohibited transaction.**

Plaintiff alleges that Defendants are responsible for an ERISA violation because even though they did not have a fiduciary duty to Plaintiff as selling shareholders, they had constructive or actual knowledge of the fact that the transaction was prohibited. ERISA prohibits certain transactions between an ERISA plan and a "party in interest." 29 U.S.C. § 1106(a). Although Section 1106 speaks in terms of what a "fiduciary" is prohibited from doing, the Supreme Court has recognized that non-fiduciaries can be subject to a claim under ERISA's catch-all provision in 29 U.S.C. § 1132(a)(3). *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000). Section 1132(a)(3) permits a participant, beneficiary, or fiduciary to bring a civil action to "obtain other appropriate equitable relief" to redress any violation of ERISA or the plan. *See* 29 U.S.C. § 1132(a)(3). To state a claim against a non-fiduciary under § 1132(a)(3), a plaintiff must allege that a "transferee of ill-gotten trust assets" had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000). The Court already determined that Plaintiff sufficiently pleaded that an unlawful transaction occurred due to the purported suspicious rise in the stock price before the ESOP sale and the subsequent stock price crash. *See* (ECF No. 31).

Accordingly, the remaining dispute is whether the Amended Complaint contains sufficient factual allegations to support Plaintiff's assertion that the Estate Defendants and Defendant Partnership had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.

Morton stock was sold to the ESOP for nearly $150 million. Each of the Defendants were at least ten percent shareholders, entitling them to at least $14 million. The Complaint also alleges that this was a family-owned business that had been in the Getz Family for over 113 years. Plaintiff also alleges that she believes discovery will show that the Morton Board of Directors included Defendant shareholders, that some of the shareholders were directors and that other shareholders who did not hold a formal position still had influence over the company due to their status as a significant shareholder and family member. (ECF No. 57 at 9). These shares were not just an anonymous piece of an investment portfolio, but a family business where the selling shareholders must necessarily have been involved in the details of the sale. Plaintiff also outlines how the stock was valued on December 31, 2016 at $58.04 per share before strangely rising to $75.25 per share just a few months later for the ESOP transaction and later plummeting.

At this stage, a plaintiff must do enough to nudge a claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. The Court is persuaded that Plaintiff has at least pleaded that the selling shareholders had constructive knowledge that the transaction was unlawful due to (1) the overvaluation of stock, (2) their direct or indirect involvement of the company as shareholders and family members, and (3) the fact that this benefitted the selling shareholders by overpaying them millions of dollars. Defendants may bring support for their claims of ignorance at the Summary Judgment stage, but currently, Plaintiff has pleaded sufficient facts to survive a motion to dismiss.

## CONCLUSION

For the reasons stated above, Defendants Estate of Virginia Miller and Estate of Henry A. Getz's Motion to Dismissed [81] and Defendant Getz Family Limited Partnership's Motion to Dismiss [75] are DENIED.

The Court will reach out to the parties to set a hearing on Plaintiff's Motion to Certify the Class.

ENTERED this March 22, 2022.

                                              /s/ Michael M. Mihm
                                                Michael M. Mihm
                                        United States District Judge