# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and on behalf of all other persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ARGENT TRUST COMPANY, EDWARD C. MILLER, GETZ FAMILY LIMITED PARTNERSHIP, ESTATE OF HENRY A. GETZ, and ESTATE OF VIRGINIA MILLER, <br><br> Defendants. | Case No. 20-1177 |

## ORDER AND OPINION

Pending before the Court is Plaintiff's Motion for Class Certification. ECF No. 54. For the reasons stated below, Plaintiff's Motion is DENIED.

## PROCEDURAL BACKGROUND

This dispute arises from a May 2017 transaction through which Morton Buildings, Incorporated, formed an Employee Stock Ownership Plan (ESOP). Plaintiff is a former employee of Morton Buildings and participated in the company's ESOP. Plaintiff seeks to represent a class of participants in the ESOP, asserting that the ESOP overpaid for the stock it purchased. She alleges that Defendants Argent Trust Company, Edward Miller, Getz Family Limited Partnership, the Estate of Henry A. Getz, and the Estate of Virginia Miller caused the plan to engage in and themselves engaged in transactions prohibited by the Employee Retirement Income Security Act of 1974 as amended and breached their fiduciary obligations to the plan.

1

The proposed class is defined as:

> All participants in the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the May 8, 2017 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold the stock of Morton Buildings, Inc. ("Morton") to the Plan on May 8, 2017, and their immediate families; the directors and officers of Morton and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

ECF No. 57. The Court denied the Defendants' various motions to dismiss and held a hearing on Plaintiff's Motion for Class Certification on April 14, 2022. This opinion follows.

## FACTUAL BACKGROUND

Morton Buildings designs and builds structures for farm, commercial, and residential use. ECF No. 96-1 at 6. After operating as a family business for many years, the shareholders decided to sell the business, opting to utilize an ESOP transaction. ECF No. 57 at 8. An ESOP is a type of retirement plan that allows participating employees to acquire the company stock and the business becomes employee owned. *See* 29 U.S.C. 1103 (a); 29 C.F.R. § 2550.407d-6.

Before the ESOP transactions, some employees already owned a portion of Morton Buildings through a defined contribution plan known as The Morton Buildings, Inc. 401(k) and ESOP ("KSOP"). ECF No. 96-1 at 11. The employees owned a total of 17.4% of Morton Buildings through the KSOP. *Id*. at 10. Chartwell Financial Advisory, Inc., conducted annual KSOP valuations prior to 2015 and Prairie Capital prepared valuations for 2015 and 2016. *Id*. at 33. Defendants assert that before the ESOP transaction, Chartwell and Prairie treated certain excess cash, the billing in excess of cost, as a liability that reduced the stock price. Defendants explain the excess cash was due to Morton Buildings being paid up front to complete certain work. Specifically, upon entering a customer contract to build a structure, Morton Buildings received

2

30% of the purchase price up front, 60% of the purchase price upon meeting certain thresholds, and the final 10% upon the close of construction. *Id*. at 30. The company carried a large amount of excess cash on its balance sheet due to these upfront payments. *Id*. Before the ESOP transaction, Chartwell and Prairie Capital each concluded that the excess cash was a liability for the purposes of the KSOP valuation because the KSOP only held a minority interest in the company and thus, could not control how the excess cash was used. ECF No. 96-7 at 12. This valuation, however, came into question during the negotiation of the ESOP transaction.

To facilitate the purchase of the stock that the KSOP did not own, Morton Buildings hired Defendant Argent, a professional independent trust company, as trustee to the KSOP and the to-be-formed ESOP to negotiate the terms of the deal on the ESOP's behalf for the benefit of the employee participants. ECF No. 57 at 9–10. Argent hired Prairie Capital as its valuation advisor and the law firm of Morgan Lewis & Bockius as legal counsel. ECF Nos. 57 at 11; 97-1 at 37.

Then, as an advisor to the selling shareholders in the ESOP transaction, Chartwell Financial concluded that the excess cash should be treated as an asset because the ESOP was purchasing 100% of the company's shares and gaining a controlling interest in how the cash was used. ECF No. 96-1 at 33. Argent disagreed with Chartwell's analysis that the excess cash should be treated differently depending on whether the subject was a minority or a controlling interest. ECF No. 96-13 at 13–14. Argent concluded that the cash should be treated as an equity enhancing asset irrespective of whether the company's shares were valued on minority or controlling basis. ECF No. 96-1 at 33.

In short, all the relevant parties agreed that the excess cash should be treated as an asset rather than a liability for the purpose of the ESOP transaction. However, Chartwell Financial and Prairie Capital had previously treated the cash as a liability when assessing the valuation for the

3

KSOP, believing that it should qualify as a liability when assessing the value for a minority shareholder with no control over how the money was used. The only question was whether the past KSOP valuations were correct. Ultimately, it appears the relevant parties came to an understanding that the past valuations were too low.

Prairie raised the valuation of its 2016 year-end valuation from $58.04 a share to a range of $76.53 to $87.51 per share at the time of the May 8, 2017 transaction. ECF Nos 97-1 at 32; 96-17 at 11 – 12; 96-6 at 9. To rectify the prior undervaluations, Morton Buildings made cash payments to employee participants whose KSOP shares had been negatively affected by the company's prior treatment of the excess cash. ECF No. 96-24 at 1–3. The corrective payments were made after the ESOP transaction was completed. *Id.* Argent accounted for this liability to reduce the range of fair market value, noting a $5 million reduction in the company's equity. ECF No. 96-1 at 33. Plaintiff benefitted from these payments because she held shares in the KSOP during the years the pre-ESOP transaction valuations were made. After the necessary corrections were made with the IRS and Department of Labor, she received $4,467.22 after she left Morton Buildings. ECF No. 96-24.

In addition to the cash payments to account for the prior undervaluation of the stock, eligible KSOP members also received price protected status for five years after the ESOP transaction. Defendants explain that the stock price was expected to drop due to the debt that the company would take on to pay for the ESOP. To address this, Argent negotiated a price protect provision for KSOP employee participants that mandated that eligible employees who cashed out their KSOP shares would receive payment for the shares, the value of which was calculated as though the company had not incurred debt to fund the ESOP transaction. Eligible employees included those who terminated employment with Morton Buildings: (1) for any reason after

reaching age 65; (2) because of death; (3) because of disability; and (4) because of reduction in force. Those who left before age 65 to take another job were not eligible for price protected status. At times, the price protected valuation was more than twice the current value of the stock after the ESOP transaction. Plaintiff left the company after the ESOP transaction and did not have price protected status, so her KSOP shares were down in value when she left.

Defendants argue that there is a conflict between KSOP class members who received cash payments and price protected status and other class members who did not participate in the KSOP. Defendants state that this irreconcilable conflict renders class certification inappropriate and Plaintiff an inadequate class representative.

## LEGAL STANDARD

A plaintiff seeking class certification must show that the proposed class meets the requirements under both Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(a)-(b); *Spano v. Boeing*, 633 F.3d 574, 582–83 (7th Cir. 2011).

Rule 23(a) requires that to maintain a lawsuit on behalf of a class there must be (i) numerosity; (ii) commonality in that "there are questions of law or fact common to the class; (iii) typicality in that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (iv) adequacy in that the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. Pr. 23(a). The burden to demonstrate that class certification is appropriate rests with the advocate of the class. *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

The named plaintiff must also establish that the class qualifies for certification of at least one type of class action listed under Rule 23(b). Here Plaintiff only moves under 23(b)(1)(a) which requires a plaintiff show that a class is necessary because "inconsistent or varying adjudications

with respect to individual class members . . . would establish incompatible standards for the party opposing the class." Fed. R. Civ. Pr. 23(b)(1)(a). In contrast to other forms of class actions, this class is "mandatory" with no opt-out rights. *Spano*, 633 F.3d at 587. The Supreme Court has "cautioned strongly" against its overuse and warned that liberally applying the rule "risks depriving people of one of their most important due process rights: the right to their own day in court." *Id*. (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999)). Accordingly, there are "strict" requirements for certifying a class under Rule 23(b) requiring a complete "identity of interest among all class members." *Id*. at 588.

## DISCUSSION

a. **Plaintiff failed to demonstrate that the putative class satisfies the requirements of Rule 23(b)(1) because of conflicts and unique defenses within the proposed class.**

Rule 23(b)(1)(A) requires Plaintiff to show that class treatment is necessary because "inconsistent or varying adjudications with respect to individual class members . . . would establish incompatible standards for the party opposing the class." Fed. R. Civ. Pr. 23(b)(1)(a). A Rule 23(b)(1) class is a "mandatory" class that does not permit putative class members to opt out. *Spano*, 622 F.3d at587. Defendants argue that there is a conflict among class members such that the class does not meet the strict requirements for complete identity of interest among class members.

Defendants argue that there are two distinct groups with conflicting interests—ESOP participants who owned KSOP shares and ESOP participants who did not own any KSOP shares. Defendants argue that the purportedly elevated price that the ESOP paid benefitted KSOP participants both because they received payment to reimburse them for the years the stock was undervalued and because of the five-year price protected status. Defendants argue that the reimbursement and the amount of the price protected status were due to treating the excess cash as an asset as opposed to a liability. They argue that it was this calculation that led to the purportedly

6

strange rise in price that Plaintiff now points to as evidence of overpayment. Defendants argue that if Plaintiff were to prevail on the basis that the stock was overpriced at the time of the ESOP transaction, certain class members also necessarily must have already benefitted from this overvaluation of the stock. Defendants also argue that KSOP participants are subject to the defense of unjust enrichment because they benefited from the price protected valuation of KSOP stock. Plaintiff's claims rely strongly on the purportedly strange rise in stock price that occurred before the ESOP transaction. Plaintiff argues that there were factors at play in the overvaluation, other than how the KSOP valuation treated the company's excess cash as a liability.

Regardless of the actual reason for the rise in price, Argent negotiated a reimbursement for the KSOP participants for the years that they owned the purportedly undervalued the stock, with Plaintiff receiving over $4,000. Moreover, KSOP participants received price protections on their shares of stock. The valuation chart comparing the ESOP share price with and without price protection indicates that the price protected shares were valued at over twice the share price without price protection in the early years of price protection. ECF Nos. 134 at 15; 96-22. This price protected valuation was also significantly higher than the KSOP valuation that took place prior to the ESOP transaction. Accordingly, those who retired, or were otherwise eligible to receive the price protected stock price, ultimately benefitted greatly from the allegedly artificially inflated price and were not harmed by the alleged overpayment. The KSOP shareholders who took advantage of the price protected status appear to have more in common with the selling shareholders that Plaintiff has named as defendants in this lawsuit than they do with other proposed class members.

The Eleventh Circuit observed that to its knowledge, "no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct

alleged to be wrongful by the named representatives of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003). Those class members who retired and received the price protected status derived a net benefit from the purported overpricing of the stock. Those who received back payment for the KSOP stock that Defendants argue was undervalued may not have derived a net gain, but those class members still stand in a different position than class members who could only have been harmed by the overpayment for stock.

Plaintiff argues that Defendants do not point to any proposed class member that benefitted from the price protected status. However, Morton Buildings employed more than 1,700 employees and the price protection covered a five-year period. ECF No. 139 at 10. Plaintiff has also not pointed to any evidence suggesting that there were no employees who took advantage of the price protection. The burden to establish that class certification is appropriate remains with Plaintiff and Plaintiff has not met her burden on this issue.

   **b. The Court appropriately considered merits issues only to the extent relevant to determining whether the prerequisites for class certification are satisfied.**

Plaintiff suggests in her briefs that Defendants are prematurely raising issues that are merits questions and more appropriately considered at summary judgment. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). The Seventh Circuit has emphasized that "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *see also Amgen*, 568 U.S. at 466 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

Here, even accepting Plaintiff's allegations as true regarding the price of the shares, certain class members benefitted from those purportedly overpriced shares. The Court is not evaluating

8

whether Plaintiff can adequately support her claims but assumes her claims regarding the overpriced shares are true to evaluate whether there is a conflict with the class. While Defendants may have provided additional information beyond what was necessary to resolve this motion, the Court has only considered the merits issues to the extent necessary to determine whether class certification is appropriate.

### c. The Shareholder Defendants' claim that Plaintiff did not move for class certification on Count IV is without merit.

Defendants Edward C. Miller, the Estate of Henry A. Getz, and the Estate of Virginia Miller ("Shareholder Defendants") separately argue that Plaintiff did not and could not move for class certification on the Claims in Count IV, the only claim Plaintiff brought against those Defendants. While class certification is otherwise not appropriate due to the class conflict described above, Plaintiff properly moved for class certification against all Defendants.

In Plaintiff's introduction to her motion for class certification, Plaintiff lists the then-named selling shareholders[1] as engaging in a prohibited transaction and causing the plan to engage in a transaction prohibited by ERISA. ECF No. 55 at 8. She also cites to Defendants, plural, as opposed to only mentioning Defendant Argent. In relating whether common questions predominate, Plaintiff cites whether sellers were a party in interest and whether they knew or should have known about the prohibited transaction. *Id.* at 8. Plaintiff's Amended Complaint also suggests that she intended to move for class certification against all Defendants. ECF No. 57 at 22–23. Accordingly, Plaintiff was clear that she intended to move for class certification on all claims. That the Shareholder Defendants felt compelled to file a response to Plaintiff's class certification motion indicates that Plaintiff's motion put them on notice that Plaintiff intended to certify a class against them.

---

[1] After filing her motion for class certification, the Court allowed Plaintiff to file an Amended Complaint naming additional selling shareholders.

9

Moreover, the Shareholder Defendants do not adequately support their claim that Plaintiff is not able to bring a class claim under 29 U.S.C. § 1132(a)(3). Shareholder Defendants cite an unpublished district court case to support their argument that class certification is not appropriate under ERISA section 502(a)(3). *Rogers v. Baxter Intern. Inc.*, 04 C 6476, 2006 WL 794734, at *12 (N.D. Ill. Mar. 22, 2006). In *Rogers*, the court found that because the claim would not have been common to the class, class certification was not appropriate as to that claim. However, the court was not signaling that there was a broader inability to bring cases under that subsection. *Id*.

While the class action against the Shareholder Defendants fails due to the apparent conflict among the class, Plaintiff intended to certify a class action against these defendants and Defendants cannot point to a categorical bar that would prohibit a class action against them.

   d. **Defendants' accusations regarding spoliation do not undermine Plaintiff's ability to represent the class.**

Defendants also argue that Plaintiff failed to preserve conversations that she had with former coworkers about this case. Plaintiff indicated that she did not take any steps to stop the auto-deletion of email conversations and she deleted certain text messages. Defendants argue this occurred after she knew she would be the class representative and this purported spoliation disqualifies her from serving as a class representative.

Defendants have not explained how any of the information contained within those messages would be helpful for this case or why the deletion of those messages was prejudicial. It is also not clear whether they made attempts to collect that information other ways. The primary issue in this lawsuit is whether the stock was appropriately valued and there is no reason to believe that Plaintiff had any unique insight into that issue.

Defendants rely upon a district court case from Ohio to support their assertion that Plaintiff should be barred from serving as the class representative. *See Mooradian v. FCA US, LLC*, 286 F.

Supp. 3d 865, 866 (N.D. Ohio 2017). There, the plaintiff alleged that casting sand used in creating Jeep Wrangler engine parts seeps into those vehicles' radiators causing heating and cooling issues. *Id*. After the defendant sent a written discovery request for the plaintiff to produce his vehicle for a private inspection at an authorized dealership, the plaintiff took his vehicle to an unaffiliated automobile service location without providing defendant notice. *Id*. at 867. The plaintiff asked the repair shop to record their work and save anything that came out of the radiator, but it was impossible to tell whether the videos showed what the plaintiff said that they showed. *Id*. The court observed that "[p]erhaps the most important piece of evidence in this case […] is the fluid in the Wrangler's radiator." *Id*. at 866. Due to the possibility that the videos did not depict the plaintiff's vehicle and that the liquid that the plaintiff purported came from his radiator did not actually come from the plaintiff's vehicle, the court barred the plaintiff from serving as the class representative and barred the plaintiff from introducing any evidence regarding this service visit at trial.

Here, Plaintiff did not alter the most important piece of evidence in this case. There is no reason to believe that her interactions with former colleagues would have any bearing on the allegations here. The deletion was also a largely automatic and not intentional. Accordingly, the Court is not persuaded that there was any spoliation or that Plaintiff deleting certain messages otherwise disqualifies her as a class representative.

e. **The Court need not resolve every 23(a) factor.**

In addition to arguing that Plaintiff could not certify her class under Rule 23(b)(1)(A), Defendants also argue that Plaintiff failed to meet the requirements of adequacy, typicality, and commonality found in Rule 23(a). It appears no party disputes that the class is sufficiently numerous but given the class conflict regarding price protection and Plaintiff receiving certain payments that not all class members received, the elements of commonality, typicality, and

adequacy are called into question as well. However, the Court has already determined that class certification is not appropriate as the class is currently defined and need not address each of the 23(a) factors at this time.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Certify a Class [54] is DENIED without prejudice. Plaintiff should be prepared to discuss proposed next steps at the status conference schedule for June 9, 2022.

ENTERED this 26th day of May, 2022.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
