## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and on behalf of all other persons similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-1177 |
| ARGENT TRUST COMPANY, EDWARD C. MILLER, GETZ FAMILY LIMITED PARTNERSHIP, ESTATE OF HENRY A. GETZ, and ESTATE OF VIRGINIA MILLER, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER AND OPINION

Pending before the Court is Plaintiff Jackie Lysengen's Motion for Reconsideration of the Court's Order Denying Class Certification. (ECF No. 146). Defendants have responded and this matter is ripe for review.

Motions for reconsideration are appropriate for several reasons including "mistake, inadvertence, surprise, or excusable neglect" and for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1) and (6). The Court had previously entered a short order denying Plaintiff's Motion for Class Certification primarily focusing on the fact that there was a conflict within the class and that Plaintiff was not able to satisfy the requirements of Rule 23(b)(1). The Court mistakenly stated that Plaintiff only certified the class under Rule 23(b)(1)(A). Plaintiff uses this misstatement as the primary basis for her motion for reconsideration. The Court acknowledges that Plaintiff also moved under Rule 23(b)(1)(B). This, however, does not change the overall analysis that there was a class conflict and as Defendants point out, "courts typically collapse

1

their analysis of the two subparagraphs of Rule 23(b)(1) and consider them jointly." ECF No. 151 at 7.

The Court initially drafted a relatively short order denying Plaintiff's motion without prejudice because it intended to provide Plaintiff the opportunity to attempt to redefine the class or take the other necessary steps to address the class conflict, if possible. Plaintiff has indicated that she does not plan to attempt redefining the class but wishes to have the Seventh Circuit review this Court's decision. Accordingly, the Court uses this opportunity to VACATE the prior opinion (ECF No. 146) to correct the record and now provide a more thorough explanation for its reasons to deny Plaintiff's motion for class certification. To the extent Plaintiff sought additional clarification, her Motion for Reconsideration is granted in that respect, and denied in all other respects. Below is the updated opinion on Plaintiff's Motion for Class Certification.

## BACKGROUND

Morton Buildings designs and builds structures for farm, commercial, and residential use. ECF No. 96-1 at 6. After operating as a family business for many years, the shareholders decided to sell the business, opting to utilize an Employee Stock Ownership Plan ("ESOP") transaction. ECF No. 57 at 8. An ESOP is a type of retirement plan that allows participating employees to acquire the company stock, and the business becomes employee owned. *See* 29 U.S.C. 1103 (a); 29 C.F.R. § 2550.407d-6.

Before the ESOP transaction, some employees already owned a portion of Morton Buildings through a defined contribution plan known as The Morton Buildings, Inc. 401(k) and ESOP ("KSOP"). ECF No. 96-1 at 11. The employees owned a total of 17.4% of Morton Buildings through the KSOP. *Id*. at 10. Chartwell Financial Advisory, Inc., conducted annual KSOP valuations prior to 2015 and Prairie Capital prepared valuations for 2015 and 2016. *Id.* at

33. Defendants assert that before the ESOP transaction, Chartwell and Prairie treated certain excess cash, the billing in excess of cost, as a liability that reduced the stock price. Defendants explain the excess cash was due to Morton Buildings being paid up front to complete certain work. Specifically, upon entering a customer contract to build a structure, Morton Buildings received 30% of the purchase price up front, 60% of the purchase price upon meeting certain thresholds, and the final 10% upon the close of construction. *Id*. at 30. The company carried a large amount of excess cash on its balance sheet due to these upfront payments. *Id*. Before the ESOP transaction, Chartwell and Prairie Capital each concluded that the excess cash was a liability for the purposes of the KSOP valuation because the KSOP only held a minority interest in the company and thus, could not control how the excess cash was used. ECF No. 96-7 at 12. This valuation, however, came into question during the negotiation of the ESOP transaction.

To facilitate the purchase of the stock that the KSOP did not own, Morton Buildings hired Defendant Argent, a professional independent trust company, as trustee to the KSOP and the to-be-formed ESOP to negotiate the terms of the deal on the ESOP's behalf for the benefit of the employee participants. ECF No. 57 at 9–10. Argent hired Prairie Capital as its valuation advisor and the law firm of Morgan Lewis & Bockius as legal counsel. ECF Nos. 57 at 11; 97-1 at 37.

Then, as an advisor to the selling shareholders in the ESOP transaction, Chartwell Financial concluded that the excess cash should be treated as an asset because the ESOP was purchasing 100% of the company's shares and gaining a controlling interest in how the cash was used. ECF No. 96-1 at 33. Argent disagreed with Chartwell's analysis that the excess cash should be treated differently depending on whether the subject was a minority or a controlling interest. ECF No. 96-13 at 13–14. Argent concluded that the cash should be treated as an equity

enhancing asset irrespective of whether the company's shares were valued on minority or controlling basis. ECF No. 96-1 at 33.

In short, all the relevant parties agreed that the excess cash should be treated as an asset rather than a liability for the purpose of the ESOP transaction. However, Chartwell Financial and Prairie Capital had previously treated the cash as a liability when assessing the valuation for the KSOP, believing that it should qualify as a liability when assessing the value for a minority shareholder with no control over how the money was used. The only question was whether the past KSOP valuations were correct. Ultimately, it appears the relevant parties came to an understanding that the past valuations were too low.

Prairie raised the valuation of its 2016 year-end valuation from $58.04 a share to a range of $76.53 to $87.51 per share at the time of the May 8, 2017 ESOP transaction. ECF Nos 97-1 at 32; 96-17 at 11–12; 96-6 at 9. To rectify the prior undervaluation, Morton Buildings made cash payments to employee participants whose KSOP shares had been negatively affected by the company's prior treatment of the excess cash. ECF No. 96-24 at 1–3. The corrective payments were made after the ESOP transaction was completed. *Id*. Argent accounted for this liability to reduce the range of fair market value, noting a $5 million reduction in the company's equity. ECF No. 96-1 at 33. Plaintiff benefitted from these payments because she held shares in the KSOP during the years the pre-ESOP transaction valuations were made. After the necessary corrections were made with the IRS and Department of Labor, she received $4,467.22 after she left Morton Buildings. ECF No. 96-24.

In addition to the cash payments to account for the prior undervaluation of the stock, eligible KSOP members also received price protected status for five years after the ESOP transaction. Defendants explain that the stock price was expected to drop due to the debt that the

4

company would take on to pay for the ESOP. To address this, Argent negotiated a price protection provision for KSOP employee participants that mandated that eligible employees who cashed out their KSOP shares would receive payment for the shares, the value of which was calculated as though the company had not incurred debt to fund the ESOP transaction. Eligible employees included those who terminated employment with Morton Buildings: (1) for any reason after reaching age 65; (2) because of death; (3) because of disability; and (4) because of reduction in force. Those who left before age 65 to take another job were not eligible for price protected status. At times, the price protected valuation was more than twice the current value of the stock after the ESOP transaction. Plaintiff left the company after the ESOP transaction and did not have price protected status, so her KSOP shares were down in value when she left. In her deposition, Plaintiff cited this drop in price of her KSOP shares as her primary complaint. ECF No. 97-1 at 16–17.

Plaintiff seeks to represent a class of participants in the ESOP, asserting that the ESOP overpaid for the stock it purchased. She alleges that Defendants Argent Trust Company, Edward Miller, Getz Family Limited Partnership, the Estate of Henry A. Getz, and the Estate of Virginia Miller caused the plan to engage in and themselves engaged in transactions prohibited by the Employee Retirement Income Security Act of 1974, as amended, and breached their fiduciary obligations to the plan. The proposed class is defined as:

> All participants in the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the May 8, 2017 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold the stock of Morton Buildings, Inc. ("Morton") to the Plan on May 8, 2017, and their immediate families; the directors and officers of Morton and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

ECF No. 57.

Defendants argue that there is a conflict between KSOP class members who received cash payments and price protected status and other class members who did not participate in the KSOP. Defendants state that this irreconcilable conflict renders class certification inappropriate and Plaintiff an inadequate class representative.

## LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (internal citations and quotations omitted). To ensure that the class is fairly represented and that the class meets the requirements of this exception, a plaintiff seeking class certification must show that the proposed class meets the requirements under both Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(a)-(b); *Spano v. Boeing*, 633 F.3d 574, 582–83 (7th Cir. 2011).

Rule 23(a) requires that to maintain a lawsuit on behalf of a class there must be (i) numerosity; (ii) commonality in that "there are questions of law or fact common to the class; (iii) typicality in that "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (iv) adequacy in that the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The burden to demonstrate that class certification is appropriate rests with the advocate of the class. *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

The named plaintiff must also establish that the class qualifies for certification of at least one type of class action listed under Rule 23(b). Here Plaintiff moves under 23(b)(1), and in contrast to other forms of class actions, this class is "mandatory" with no opt-out rights. *Spano*, 633 F.3d at 587. The Supreme Court has "cautioned strongly" against its overuse and warned that liberally applying the rule "risks depriving people of one of their most important due process rights: the right to their own day in court." *Id*. (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999)). Accordingly, there are "strict" requirements for certifying a class under Rule 23(b) requiring an "identity of interest among all class members." *Id*. at 588.

## DISCUSSION

### 1.   Plaintiff does not meet the requirements for class certification under Rule 23(a)

A plaintiff seeking class certification must show that the proposed class meets the requirements under both Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 23(a)-(b); *Spano v. Boeing*, 633 F.3d 574, 582–83 (7th Cir. 2011). Rule 23(a) requires that to maintain a lawsuit on behalf of a class there must be (i) numerosity; (ii) commonality in that "there are questions of law or fact common to the class;" (iii) typicality in that "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (iv) adequacy in that the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements "effectively 'limit the class to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *Gen. Tel. Co. of the N.W., Inc. v. Equal Empl. Opportunity Commn*., 446 U.S. 318, 330 (1980)). The burden to demonstrate that class certification is appropriate rests with the advocate of the class. *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Accordingly, that burden rests with Plaintiff.

The parties do not dispute that the numerosity requirement is met. However, the Court remains unpersuaded that Plaintiff meets the commonality, typicality, and adequacy requirements, as explained below.

**a. Plaintiff fails to demonstrate that the class satisfies the commonality and typicality requirements.**

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that the "commonality and typicality requirements of 23(a) tend to merge." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)) The Supreme Court further explained that "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

The Supreme Court has cautioned that nearly any "competently crafted class complaint literally raises common 'questions'" *Dukes*, 564 U.S. 338 at 350 (citing Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 131–132 (2009)). Plaintiffs must have "'suffered the same injury'" that depends on a common contention capable of class wide resolution. *Id*. (quoting *Falcon*, 457 U.S. at 156). The Supreme Court further advises that "[d]issimilarities within the proposed class have the potential to impede the generation of common answers." *Id*. (quoting Nagareda, *supra*, at 132). As to the typicality argument, "for effective representation of a class, the named representatives' claims must 'have the same essential characteristics as the class at large.'" *Retired Chi. Police Ass'n*, 7 F.3d at 598 (quoting *De La Fuente v. Stokely–Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir.1983)). In *Retired Police*, the Seventh Circuit observed that "there is no indication that each of these groups was treated

identically" and thus, "its claims cannot be deemed typical of the entire proposed class." *Id*. at 597.

While the purported class relates to the ESOP transaction, certain class members owned the purportedly overvalued stock before the transaction occurred as part of the KSOP. The KSOP participants then received a cash payment to compensate them for the prior undervaluation of their stock. Those same KSOP members were under a price protected status for several years where they could cash out their shares for a valuation that excluded from the calculation the debt incurred from the ESOP transaction. Some of the proposed class members were shareholders before the transaction and benefitted in various ways from the valuation that Plaintiff claims was inflated. That the KSOP participants were purportedly overpaid as well as the selling shareholders means that class members have not suffered the same purported injury. If certain KSOP members both received the cash payment and also received the elevated payout during the price protected status, they would have benefitted from this ESOP transaction and Defendants may have cause to seek to claw back some of those funds in the event Plaintiff is successful. Plaintiff herself received a payment of a few thousand dollars for her KSOP shares. She then left the company while the overall value of the stocks was down due to the debt incurred during the ESOP transaction. During her deposition, she cited her claim that she lost value in her KSOP shares as her chief complaint.

The class members are certainly not identically situated, there are various complicating factors that mean the class has not suffered the same injury, and Plaintiff has not met her burden to prove that this class is capable of a class wide resolution. Plaintiff receiving payment and also cashing out her KSOP stocks at a lower rate also raise the issue of her not having the same

essential characteristics as the class at large. Accordingly, the Court finds that Plaintiff has not

met her burden of proof as to the commonality and typicality elements.

### b. Plaintiff fails to demonstrate that the class satisfies the adequacy requirement.

Rule 23 (a) further requires that "the representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a). The adequacy requirement under Rule

23(a)(4) comprises two parts: "the adequacy of the named plaintiff's counsel, and the adequacy

of representation provided in protecting the different, separate, and distinct interest of the class

members." *Retired Chi. Police Ass'n*, 7 F.3d at 598. "[A] class is not...adequately represented if

class members have antagonistic or conflicting claims." *Id.* (quoting *Rosario v. Livaditis*, 963

F.2d 1013, 1018 (7th Cir. 1992)); *see also Gen. Tel. Co. of the N.W., Inc. v. Equal Empl.

Opportunity Commn.*, 446 U.S. 318, 331 (1980) ("the adequate representation requirement is

typically construed to foreclose the class action where there is a conflict of interest between the

named plaintiff and members of the putative class."). The Seventh Circuit has emphasized the

importance of this requirement because "there is a constitutional dimension to this part of the

inquiry; absentee members will be bound by the final result if they were represented by someone

who had a conflict of interest with them or who was otherwise inadequate." *Spano*, 633 F.3d at

587.

In *Retired Chicago Police*, the Seventh Circuit reviewed the district court's analysis as to

the adequacy of representation, ultimately upholding the lower court's decision to decline to

certify the class. *Retired Chi. Police Ass'n*, 7 F.3d at 598. The proposed class was challenging a

settlement agreement that stemmed from state court litigation, arguing that it violated their rights

in various ways. However, some class members benefitted from the settlement and their benefits

would "evaporate" if the class succeeded. *Id.* There was also an issue that the Executive

Secretary of the Retired Chicago Police Association participated in the approval of the settlement being challenged. Accordingly, the Seventh Circuit upheld the lower court's decision and found it did not believe that the plaintiff "established that the district court abused its discretion when it determined that the adequacy of representation criterion of the class certification requirements had not been satisfied." *Id*.

Similarly, here, some class members benefitted from the purported overvaluation of the stock that they owned. KSOP participants, including Plaintiff, received compensation for their previously undervalued stock. Certain KSOP participants were able to take advantage of a price protected status and received a higher valuation than they would have if they stock had been valued in the same way it had been valued before the ESOP transaction. Finally, Plaintiff is in an unusual position in that she left the company while the KSOP stock value was depressed, but she was ineligible to receive the price protected status. Many purported class members are still the owners of the company shares while Plaintiff left the company without price protected status and no longer owns ESOP stock. Thus, it is not clear that Plaintiff's interests are well-aligned with that of the rest of the class and the Court finds that Plaintiff has not met the adequacy requirement.

### c.  Plaintiff fails to demonstrate that the putative class satisfies the requirements of Rule 23(b)(1) because of conflict of interest and unique defenses within the proposed class.

Rule 23(b)(1) classes may be maintained if

> prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual

11

> adjudications or would substantially impair or impede their ability
> to protect their interests.

Fed. R. Civ. P. 23(b)(1). A Rule 23(b)(1) class is a "mandatory" class that does not permit putative class members to opt out. *Spano*, 622 F.3d at 587. Accordingly, "the problem of actual and potential conflicts is a matter of particular concern" because the rule "does not allow class members to optout of the class action." *Retired Chi. Police Ass'n*, 7 F.3d at 598. The Seventh Circuit has cautioned that "[t]oo liberal an application of the mandatory-class device risks depriving people of one of their most important due process rights: the right to their own day in court." *Spano*, 633 F.3d at 587. To be eligible for class certification under Rule 23(b)(1), there must be identity of interest among the class members. *Id*. A claim is not common among the class members if "the alleged conduct harmed some participants and helped others." *Id*. The Eleventh Circuit observed that to its knowledge, "no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003).

Defendants argue that there are two distinct groups with conflicting interests—ESOP participants who owned KSOP shares and ESOP participants who did not own any KSOP shares. Defendants argue that the purportedly elevated price that the ESOP paid benefitted KSOP participants both because they received payment to reimburse them for the years the stock was undervalued and because of the five-year price protected status. Defendants argue that certain class members benefitted from the purported overvaluation of stock that Plaintiff now challenges. Defendants also state that if Plaintiff is ultimately successful, KSOP participants are subject to the defense of unjust enrichment. Plaintiff's claims rely in part on the purportedly strange rise in stock price that occurred before the ESOP transaction. Now, however, Plaintiff

argues that there were factors at play in the overvaluation other than the prior KSOP valuation treating the company's excess cash as a liability.

Regardless of the actual reason for the rise in price, Argent negotiated a reimbursement for the KSOP participants for the years that they owned the purportedly undervalued stock, with Plaintiff receiving over $4,000. Moreover, KSOP participants received price protections on their shares of stock. The valuation chart comparing the ESOP share price with and without price protection indicates that during some years, the price protected shares were valued at over twice the share price without price protection. ECF Nos. 134 at 15; 96-22. This price protected valuation was also significantly higher than the KSOP valuation that took place prior to the ESOP transaction. Accordingly, those who retired, or were otherwise eligible to receive the price protected stock price, ultimately benefitted from the allegedly artificially inflated price and were not harmed by the alleged overpayment. The KSOP shareholders who took advantage of the price protected status appear to have more in common with the selling shareholders that Plaintiff has named as defendants in this lawsuit than they do with other proposed class members.

Those class members who retired and received the price protected status derived a net benefit from the purported overpricing of the stock. Those who received back payment for the KSOP stock that Defendants argue was undervalued may not have derived a net gain, but those class members still stand in a different position than class members who could only have been harmed by the overpayment for stock. Accordingly, the Court is persuaded that based on the information before it, there is a class conflict that precludes class certification under either subsection of Rule 23(b)(1).

Plaintiff argues that Defendants do not point to any proposed class member that benefitted from the price protected status. However, Morton Buildings employs more than 1,700

employees and the price protection covered a five-year period. ECF No. 139 at 10. Defendants provide evidence that 916 ESOP employee participants also hold shares of company stock in a KSOP account, and that 82 participants terminated their employment in a manner making them ineligible for price protection. ECF No. 96-24. Accordingly, the Court agrees that due to the number of KSOP participants and the fact that there was price protected status for five years, there must have been potential class members taking advantage of the price protected status.

Plaintiff's complaints that Defendants do not point to specific evidence about how many KSOP participants took advantage of the price protected status are unpersuasive. At one point, Plaintiff muses "Is it one? Twenty? Fifty?" ECF No. 150 at 9. Those are questions Plaintiff should have asked during discovery. Plaintiff bears the burden of proving her case and asking for the documents and depositions that she needs in order to do so. Defendants must respond appropriately to discovery but are not required to assist Plaintiff in prosecuting her case against them. Plaintiff does not suggest that Defendants withheld something that was requested, and it appears that a great deal of discovery took place. Plaintiff has also not pointed to any evidence suggesting that there were no employees who took advantage of the price protection. The Court further observes that the defendants are individual shareholders and a trust company, and thus, would not necessarily have information about who retired from Morton Buildings available to them.

The Court also initially denied Plaintiff's Motion for Class Certification without prejudice. At the hearing, the Court announced its intention to deny the Motion for Class Certification and set the case for a telephone status conference in a few weeks in order to give Plaintiff "a chance to digest this, and we'll consider that happens at that time." ECF No. 131 at 49. Plaintiff did not suggest a clear path forward at the initial status conference. *See* Minute

Entry 4/27/2022. At a later status conference, Plaintiff did not request that she be allowed discovery to demonstrate the lack of conflict or suggest another path forward in light of the conflict the Court identified. Instead, Plaintiff announce she intended to ask the Court to reconsider. *See Minute Entry* 6/9/2022. Accordingly, Plaintiff at least had the opportunity rethink her description of the class or ask that she have a final chance to resolve whether there was an actual conflict, and she did not attempt to take advantage of that opportunity.

Finally, the Court remains unpersuaded by the cases Plaintiff cites to claim that the cited conflict is "speculative." *See* ECF No. 150 at 12–13. The conflicts cited by Defendants are not wholly speculative. There was a price protected status that took place for five years and benefitted eligible class members due to the valuation to which Plaintiff now objects. Certain class members, including Plaintiff, received a payout due to the valuation Plaintiff now claims was too high. Finally, the class members now own the stock and appear to still have the stock valued as though the billing in excess of cost are an asset as opposed to a liability. Accordingly, the interests of class are not entirely aligned. Some class members already owned company stock and benefitted from the overvaluation about which Plaintiff now complains. Plaintiff has not presented an avenue to resolve that inherent conflict and the Court is compelled to deny Plaintiff's motion to certify the class.

**d. The Court appropriately considered merits issues only to the extent relevant to determining whether the prerequisites for class certification are satisfied.**

Plaintiff suggests in her briefs that Defendants are prematurely raising issues that are merits questions and more appropriately considered at summary judgment. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). The Seventh Circuit has emphasized that

"the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012); *see also Amgen*, 568 U.S. at 466 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). The Supreme Court, however, has acknowledged that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Dukes*, U.S. at 350 (quoting *Falcon*, 457 U.S. at 160). This is because the "rigorous analysis" frequently "entails some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id*. The Seventh Circuit has further emphasized that if "some of the determinations required by Rule 23 cannot be made without a look at the facts, then the judge must undertake that investigation." *Spano*, 633 F.3d at 583.

Here, even accepting Plaintiff's allegations as true regarding that stock shares were overpriced, certain class members benefitted from those purportedly overpriced shares. The Court is not evaluating whether Plaintiff can adequately support her claims but assumes her claims regarding the overpriced shares are true to evaluate whether there is a conflict with the class. While Defendants may have provided additional information beyond what was necessary to resolve this motion, the Court has only considered the merits issues to the extent necessary to make a decision about class certification. That the Court was required to consider some merits issues in order to conduct the rigorous analysis that the law requires could not be helped.

### e.  The Shareholder Defendants' claim that Plaintiff did not move for class certification on Count IV is without merit.

Defendants Edward C. Miller, the Estate of Henry A. Getz, and the Estate of Virginia Miller ("Shareholder Defendants") separately argue that Plaintiff did not and could not move for class certification on Count IV, the only claim Plaintiff brought against those Defendants. While

class certification is otherwise not appropriate due to the class conflict described above, Plaintiff moved for class certification against all Defendants.

In Plaintiff's introduction to her motion for class certification, Plaintiff lists the then-named selling shareholders[1] as engaging in a prohibited transaction and causing the plan to engage in a transaction prohibited by ERISA. ECF No. 55 at 8. She also cites to Defendants, plural, as opposed to only mentioning Defendant Argent. In explaining whether common questions predominate, Plaintiff cites whether sellers were a party in interest and whether they knew or should have known about the prohibited transaction. *Id*. at 8. Plaintiff's Amended Complaint also suggests that she intended to move for class certification against all Defendants. ECF No. 57 at 22–23. Accordingly, Plaintiff was clear that she intended to move for class certification on all claims. That the Shareholder Defendants felt compelled to file a response to Plaintiff's class certification motion indicates that Plaintiff's motion put them on notice that Plaintiff intended to certify a class against them.

Moreover, the Shareholder Defendants do not adequately support their claim that Plaintiff is not able to bring a class claim under 29 U.S.C. § 1132(a)(3). Shareholder Defendants cite an unpublished district court case to support their argument that class certification is not appropriate under ERISA section 502(a)(3). *Rogers v. Baxter Intern. Inc.*, 04 C 6476, 2006 WL 794734, at *12 (N.D. Ill. Mar. 22, 2006). In *Rogers*, the court found that because the claim would not have been common to the class, class certification was not appropriate as to that claim. However, the court was not signaling that there was a broader inability to bring cases under that subsection. *Id*.

---

[1] After filing her motion for class certification, the Court allowed Plaintiff to file an Amended Complaint naming additional selling shareholders.

While the class action against the Shareholder Defendants fails due to the apparent conflict among the class, Plaintiff intended to certify a class action against these Defendants and Defendants cannot point to a categorical bar that would prohibit a class action against them.

**f.   Defendants' accusations regarding spoliation do not undermine Plaintiff's ability to represent the class.**

Defendants also argue that Plaintiff failed to preserve conversations that she had with former coworkers about this case. Plaintiff indicated that she did not take any steps to stop the auto-deletion of email conversations and she deleted certain text messages. Defendants argue this occurred after she knew she would be the class representative and this purported spoliation disqualifies her from serving as a class representative.

Defendants have not explained how any of the information contained within those messages would be helpful for this case or why the deletion of those messages was prejudicial. It is also not clear whether they made attempts to collect that information other ways. The primary issue in this lawsuit is whether the stock was appropriately valued and there is no reason to believe that Plaintiff had any unique insight into that issue.

Defendants rely upon a district court case from Ohio to support their assertion that Plaintiff should be barred from serving as the class representative. *See Mooradian v. FCA US, LLC*, 286 F. Supp. 3d 865, 866 (N.D. Ohio 2017). There, the plaintiff alleged that casting sand used in creating Jeep Wrangler engine parts seeps into those vehicles' radiators causing heating and cooling issues. *Id*. After the defendant sent a written discovery request for the plaintiff to produce his vehicle for a private inspection at an authorized dealership, the plaintiff took his vehicle to an unaffiliated automobile service location without providing defendant notice. *Id*. at 867. The plaintiff asked the repair shop to record their work and save anything that came out of the radiator, but it was impossible to tell whether the videos showed what the plaintiff said that

18

they showed. *Id*. The court observed that "[p]erhaps the most important piece of evidence in this case […] is the fluid in the Wrangler's radiator." *Id*. at 866. Due to the possibility that the videos did not depict the plaintiff's vehicle and that the liquid that the plaintiff purported came from his radiator did not actually come from the plaintiff's vehicle, the court barred the plaintiff from serving as the class representative and barred the plaintiff from introducing any evidence regarding this service visit at trial.

Here, Plaintiff did not alter the most important piece of evidence in this case. There is no reason to believe that her interactions with former colleagues would have any bearing on the allegations here. The deletion was also a largely automatic and not intentional. Accordingly, the Court is not persuaded that there was any spoliation or that Plaintiff deleting certain messages otherwise disqualifies her as a class representative.

**CONCLUSION**

As explained in the initial paragraph, the Court took the opportunity to further clarify its position and thus, Plaintiff's Motion for Reconsideration [149] is GRANTED to the extent that the Court has clarified its position but is DENIED in all other aspects. The Court further found it appropriate to VACATE its initial opinion [146] denying class certification and replace it with this opinion.

As explained above, Plaintiff failed to demonstrate class certification is appropriate under Rule 23(a) or Rule 23(b)(1). Thus, Plaintiff's Motion to Certify a Class [54] is DENIED.

ENTERED this 20th day of October, 2022.

           __/s/ Michael M. Mihm_____
               Michael M. Mihm
           United States District Judge