IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and on behalf of all other persons similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 20-1177 ) |
| ARGENT TRUST COMPANY, JAN ROUSE, EDWARD C. MILLER, GETZ FAMILY LIMITED PARTNERSHIP, ESTATE OF HENRY A. GETZ, and ESTATE OF VIRGINIA MILLER, | ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER AND OPINION

Pending before the Court is Defendant Argent Trust Company's Motion for Summary Judgment (ECF No. 158) and the Plaintiff's Motion for Partial Summary Judgment (ECF No. 165) (together, the "Motions"). On August 2, 2023, the Court held a hearing on the narrow issue of whether the Plaintiff can pursue her claims in a representative capacity or recovery plan-wide relief, which is at issue in both Motions. At the hearing, the Court held that the Plaintiff could proceed in a representative capacity, with this written opinion to follow. For the reasons stated below, Defendant's Motion is DENIED in part, and Plaintiff's Motion is GRANTED in part, solely with respect to whether the Plaintiff may proceed in a representative capacity and recover plan-wide relief as a matter of law. Questions of material fact and whether the ERISA claims succeed as a matter of law raised in the Motions remain pending.

**PROCEDURAL BACKGROUND**

The Motions before the Court stem from longstanding litigation around an Employee Stock Ownership Plan ("ESOP") transaction. Morton Buildings, Incorporated ("Morton Buildings") was a family-owned business that built structures for farm, commercial, and residential use. ECF Nos. 57 ¶ 24. In May 2017, the family decided to sell Morton Buildings through an ESOP transaction, which sold the ownership of its stock to participating employees. ECF No. 57 ¶ 25.

Plaintiff is a former employee of Morton Buildings and a participant in the ESOP transaction. ECF No. 57 ¶ 14. Plaintiff initially sought to represent a class of participants in the ESOP. Plaintiff alleges that Argent Trust Company ("Argent"), and Edward Miller, the Getz Family Limited Partnership, the Estate of Henry A. Getz, and the Estate of Virginia Miller (the "Shareholder Defendants"), caused the ESOP to engage in transactions prohibited by the Employee Retirement Security Act of 1974 as amended ("ERISA") that stemmed from a breach of Argent's fiduciary obligations to the Plan. ECF Nos. 57, 166. At bottom, Plaintiff asserts that the ESOP overpaid for the stock it purchased.

The Court denied the Defendants' various motions to dismiss. ECF Nos. 31, 124. The Court further denied the Plaintiff's Motion for Class Certification and her subsequent Motion for Reconsideration. ECF No. 146, 155. All parties submitted competing motions for summary judgment that raised numerous issues of material fact and whether the ERISA claims may succeed as a matter of law. The various motions for summary judgment also contested whether the Plaintiff may proceed in a representative capacity following the Court's denial of class certification. On August 2nd, 2023, the Court held a hearing (the "Hearing") on the narrow issue of whether the Plaintiff may proceed in a representative capacity with respect to Argent and the Shareholder

Defendants. This opinion follows solely with respect to whether the Plaintiff may proceed in a representative capacity against Argent.

## FACTUAL BACKGROUND

Prior to the ESOP transaction, certain employees of Morton Buildings owned a portion of the company's stock through a defined contribution plan known as The Morton Buildings, Inc. 401(k) and ESOP (the "KSOP"). ECF No. 96-1 at 11; ECF No. 160-1. In total, the KSOP owned a minority portion of 17.4% of Morton Buildings. ECF No. 96-1 at 10; ECF No. 160-1, Ex.1. At that time, Morton Buildings treated certain excess cash, the billing in excess of cost, as a liability under the KSOP. ECF No. 96 at 12; ECF No. 160-1 ¶ 13. When Morton Buildings decided to implement the ESOP, however, the treatment of excess cash as a liability was called into question, as Morton Buildings would shift from being minority owned by its employees to fully owned, and therefore, the ESOP could arguably control the use of any access cash. ECF No. 96-1 at 33; ECF No. 160-1 ¶ 11.

Morton Buildings hired Defendant Argent, a professional independent trust company, to negotiate the transaction on behalf of the ESOP and its employee participants. ECF No. 57 ¶ 6; ECF No. 159-6. Defendants assert that Argent disagreed with the prior treatment of excess cash as a liability. Defendants assert that the parties agreed to instead treat excess cash as an asset for purposes of the ESOP transaction. ECF No. 160-1 ¶ 11. The Defendants assert that this change in treatment of excess cash from a liability to an asset, however, raised questions on whether the prior valuations of the company were too low. ECF No. 160-1 ¶ 14. To rectify any prior undervaluation, Morton Buildings made cash payments to employee participants whose KSOP shares had been negatively affected by Morton Building's prior treatment of excess cash as a

liability. ECF No. 96-24 at 1–3l ECF No. 160-1 ¶ 14. The corrective payments were made after the ESOP was completed. ECF No. 96-24 ¶ 5.

In addition to the lump cash payments, certain eligible KSOP members were also entitled to price protection status for five years after the ESOP transaction. The price protection status was calculated as if Morton Buildings had not incurred debt to fund the ESOP transaction, and therefore allowed the price-protected participants to sell their shares at a higher price. ECF No. 160-1 Ex. 12D. Notably, this price protection status had certain eligibility requirements, which mandated that employees who left before the age of 65 for different employment were not eligible to sell their shares at the higher price protected value, which exceeded the current fair market value of the stock. Plaintiff was a KSOP participant who received $4,467.22 in corrective payments. ECF No. 96-24. Plaintiff, however, left Morton Buildings shortly after the ESOP transaction and did not benefit from the price protection status. As a result, her KSOP shares were worth significantly less. ECF No. 97-1 at 16–17.

Plaintiff brought this suit to recover the alleged overpayment for Morton Buildings stock as a class action pursuant to Rule 23. Specifically, Plaintiff asserted claims in a representative capacity against Argent as a fiduciary pursuant to ERISA Sections 409 and 502(a)(2), and several Shareholder Defendants for their knowing participation in a prohibited transaction under ERISA Sections 406 and 502(a)(3). ECF No. 57. The Court denied Plaintiff's motion for class certification under Rule 23 and Plaintiff's subsequent motion for reconsideration. ECF No. 155. The Court based its denial of class certification, in part, on a conflict between Plaintiff and other ESOP beneficiaries. Specifically, the Court found that some of the proposed class members were shareholders before the ESOP transaction and benefitted in different ways from the ESOP valuation. *Id.* The proposed class contained members of the ESOP who were solely ESOP

4

participants with no KSOP interests, members of the ESOP who were also KSOP participants and received both the lump-cash payment and price protected status, and members of the ESOP who, like the Plaintiff, were KSOP participants and received the lump-cash payment but did not benefit from the price protection. As a result, the Court found that the proposed class members were not identically situated due to the various complicating factors and did not have clearly aligned interests. Id. The Court, therefore, held that the Plaintiff did not demonstrate that the proposed class met the applicable commonality, typicality, adequacy, and putative class requirements under both Rule 23. Id.

Following the Court's class certification rulings, Argent filed its Motion for Summary Judgment. ECF No. 158. Argent challenged, among other things, the Plaintiff's ability to pursue her claims in a representative capacity or otherwise recover plan-wide relief following the denial of class certification. The Plaintiff likewise filed a Motion for Partial Summary Judgment, seeking, among other things, a judgment that Plaintiff may recover any losses incurred by the Plan, profits earned by the Defendants, or other appropriate equitable relief in a representative capacity under ERISA. ECF Bis, 165, 166. The Court heard oral arguments on whether the Plaintiff may proceed in a representative capacity and seek plan-wide relief. At the Hearing, the Court determined that the Plaintiff may proceed in a representative capacity against Argent under ERISA Section 502(a)(2), and stated that it would finalize its holding in a written opinion to follow. Minute Entry 8/2/23. Accordingly, the Court issues the following opinion and order to detail its findings on whether the Plaintiff may proceed in a representative capacity and seek plan-wide relief against Defendant Argent.[1]

---

[1] The Court also heard oral arguments on whether the Plaintiff may proceed in a representative capacity pursuant to ERISA Section 502(a)(3) against the non-fiduciary Shareholder Defendants. The Court, however, deferred its ruling on that issue and will address it in a separate order and opinion.

**LEGAL STANDARD**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008).

The Federal Rules of Civil Procedure allow for partial summary judgment and require parties to "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "At the summary-judgment stage, the court can properly narrow the individual factual issues for trial by identifying the material disputes of fact that continue to exist." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Thus, a court may grant summary judgment as to one claim as a matter of law, "leaving other claims and other parties to be addressed at a later point in the litigation." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015) (citing 10A Fed. Prac. & Proc. § 2715, at 254).

**DISCUSSION**

**a. ERISA allows Plaintiff to proceed in a representative capacity and seek to recover plan-wide relief under the ESOP.**

The Plaintiff seeks relief pursuant to Section 502(a)(2) of ERISA, which provides, in pertinent part, that "[a] civil action may be brought—(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title . . . ." 29 U.S.C. § 1132(a). Section 409 of ERISA provides, in relevant part, that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . .

29 U.S.C. § 1109(a)(2).

Section 502(a)(2) provides plaintiffs with a mechanism "to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans." *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 251 (2008); *see also Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 618 (7th Cir. 2021) ("Taken together, § 1109(a) creates fiduciary liability, and § 1132(a)(2) allows for its enforcement."). Importantly, the relief sought under Section 502(a)(2) must relate to the plan as a whole, and a plaintiff seeking to invoke Section 502(a)(2) must bring her action in a representative capacity. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–43 (1985) ("A fair contextual reading of the statute ma[de] it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."). Further, "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account . . . ." *LaRue*, 552 U.S. at 256. Thus, the Court must determine whether the plaintiff's claims seek that would benefit the plan as a whole, rather than the plaintiff individually. *See Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1107 (10th Cir. 2023) (noting that the claims brought under § 1132(a)(2) sought forms of relief that would benefit the Plan as a whole).

Here, the Plaintiff asserts that her requested relief is the payment of all the Plan's losses, which is measured by the total amount the Plan overpaid for the Company's stock at the time of

7

the ESOP transaction. ECF No. 181, at 93. The Plaintiff contends that her only interest is to proceed as a representative solely with respect to "making good" losses to the Plan, as contemplated under ERISA Section 409 and 502(a)(2).[2] Defendants, however, argue that because the Court has already determined that irreconcilable conflicts exist between the ESOP participants, including the Plaintiff, with respect to class certification under Rule 23, it cannot let *this* Plaintiff proceed in a representative capacity under ERISA Section 502(a)(2). *See* ECF No. 158, at 63–64. Defendants further assert that Plaintiff's challenges to the ESOP's valuation would implicate significant conflicts between ESOP participants who benefited from the valuation method used.

While the Court recognizes its class certification findings, it is important to note that at this juncture, the Plaintiff is seeking payment for potential losses to the ESOP as a whole that result from the alleged overpayment of stock. If the Court found in favor of the Plaintiff, the requested relief would maximize value of the entire ESOP, and therefore, benefit all ESOP participants within the meaning of Section 502(a)(2). *See* Russell, 473 U.S. at 140 (reasoning that under section 1132(a)(2) any relief "inures to the benefit of the plan as a whole"). The Court declines to issue any judgment that implicates principles of allocation between the ESOP and KSOP participants, or that otherwise rescinds or unwinds the ESOP transaction. *See Perez v. Bruister*, 823 F.3d 250, 265 (5th Cir. 2016) (reasoning that the proper focus of relief for a violation of fiduciary duties under § 1109(a) is on the losses to the plan resulting from breaches of fiduciary duties and overpayment of stock, and rejecting arguments that the district court abused its discretion in denying recission as a form of relief).

---

[2] Plaintiff's briefing and complaint also contemplates certain equitable relief that may have a plan-wide effect. *See, e.g.*, ECF No. 166, at 20. However, at the Hearing, Plaintiff submitted to the Court that she is ultimately seeking only the amount overpaid for the stock. Plaintiff waived any relief requesting the Court to rescind or otherwise unwind the ESOP transaction.

If certain KSOP participants have conflicting interests that follow post-liability from an award issued to the ESOP as whole—either in the form of disputes over the allocation of payments on an individual basis or offset of value in their individual KSOP account—those disputes are between the participants and their respective fiduciaries, and are not the subject of this dispute. Thus, the conflict found in the class action rulings is not implicated here because the Court declines to issue relief that distinguishes between ESOP and KSOP participants and their individual interests or specific injuries.

Defendant Argent's argument that the Plaintiff cannot serve in a representative capacity because certain ESOP participants have divergent interests in valuation strategies is not persuasive. To the extent that Argent is found liable for any breach of duty, issues of valuation on the use of excess cash previously utilized under the KSOP are not implicated here because the Plaintiff is only seeking a return of plan-wide value to the ESOP—whether individuals are later affected by the distribution of ESOP value is determined by the applicable governing documents and fiduciaries, not this Court. *See Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 972 (E.D. Mo. Feb. 1, 2010) ("Although certain of Plaintiffs' allegations might be read as seeking individual relief, the parties are in agreement that all claims are asserted on behalf of the ESOP and that any recovery that might be obtained will be the ESOP's recovery—even if the recovery is ultimately distributed to individuals in accordance with the ESOP's governing documents.").

Additionally, the fact that the Court previously found that the Plaintiff did not meet the requirements under Rule 23 does not mean that the Plaintiff cannot serve as a representative within the meaning of ERISA. *See Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 n.7 (5th Cir. 2021) (noting that the district court declined class certification, yet permitted the plaintiffs to proceed as representatives pursuant to Section 1132(a)(2), "because § 1109 is designed to 'protect the entire

plan") (citing *Pilger v. Sweeney*, 725 F.3d 922, 926 (8th Cir. 2013). ERISA Section 502(a)(2) explicitly authorizes relief where the recovery would benefit the plan as a whole, without any express requirement that the Plaintiff satisfy the mandates of Rule 23. As discussed further below, the Court agrees with the Defendant that certain procedural safeguards should be in place; however, it does not follow that a denial of Rule 23 class certification prohibits relief under Section 502(a)(2), particularly here, where the Plaintiff's relief is tailored only to returning plan-wide losses to the ESOP. Therefore, the Court finds that ERISA Section 502(a)(2) allows the Plaintiff to proceed in a representative capacity and pursue plan-wide relief on the narrow issue of whether the stock purchased under the ESOP was purchased for fair market value.

b. **Plaintiff must employ procedural protections to proceed in a representative capacity.**

In addition to asserting that she may proceed in a representative capacity, Plaintiff also argues that ERISA Section 502(a)(2) does not require the use of procedural protections, such as those provided in Rule 23 or 23.1. *See* ECF No. 166, at 21. Defendant, however, asserts that while ERISA does not expressly incorporate Rules 23 or 23.1, the Plaintiff cannot act as a representative where procedural safeguards are not established to protect absent participants whose interests may not align with plaintiffs. ECF No. 158, at 64.

As a general matter, courts are split on this issue, with several adopting Plaintiff's plain-language analysis and holding that no procedural protections are needed to proceed in a representative capacity. These courts have reasoned that policy concerns for procedural safeguards "are insufficient to overcome the fact that neither ERISA itself, nor the Federal Rules of Civil Procedure, require ERISA participants to bring section 502(a)(2) claims derivatively." *See, e.g., Waldron v. Dugan*, No. 07-286, 2007 WL 4365358, at *6 (N.D. Ill. Dec. 13, 2007).

10

Other courts, including this District, have reached the opposite conclusion, reasoning that "[a]lthough parties bringing claims pursuant to ERISA § 502(a)(2) need not include class allegations, courts have held that plaintiffs bringing claims pursuant to it must take procedural steps to ensure the protection and adequate representation of absent plan participants." *Koerner v. Copenhaver*, No. 12-1091, 2014 WL 5544051, at *3 (C.D. Ill. Nov. 3, 2014) (internal citations omitted); *see Coan v. Kaufman,* 457 F.3d 250, 261–62 (2d Cir. 2006) (reasoning that the representative nature of Section 502(a)(2) implies that plan participants must employ procedural protections); *Fish v. Greatbanc Trust Co.*, 667 F. Supp. 2d 949, 952 (N.D. Ill. Nov. 5, 2009) (holding that while Rule 23 certification is not required, the representative action must be structured in a manner that will bind all plan participants); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701, 2010 WL 547172, at *4 (S.D. Ill. Feb. 10, 2010) (reasoning that the plaintiff may not proceed in a representative capacity if the plaintiff does not take any steps to become a b*ona fide* representative of the parties).[3]

The Court similarly concludes that while ERISA does not mandate strict compliance with Rule 23 or Rule 23.1, parties acting in a representative capacity must implement some form of procedural protections. *See Coan*, 457 F.3d at 261 ("[A]lthough plan participants need not always comply with Rule 23 to act as a representative of other plan participants or beneficiaries, those who do will likely be proceeding in a 'representative capacity' properly for purposes of section

---

[3] In *Thorton v. Evans*, the Seventh Circuit held that plaintiffs who seek to recover damages from non-fiduciary defendants for their role in a conspiracy directed against an ERISA fund must sue either derivatively pursuant to Rule 23.1 or as a class representative pursuant to Rule 23. 692 F.2d 1064, 1080 (7th Cir. 1983). The *Thorton* court observed that unlike Section 502(a)(2), which authorized suits against fiduciaries, ERISA and applicable Supreme Court precedent did not directly provide for suits against non-fiduciaries at that time. *Id.* at 1079 n. 35. The claims, therefore, were brought pursuant to a judicially created cause of action for conspiracy and the court required safeguards under Rule 23 or 23.1 *Id.* at 1079–80. While *Thorton* does not directly hold that actions against fiduciaries under Section 502(a)(2) must be pleaded derivatively or as a class action, *Thorton*'s broader concerns for procedural safeguards are still applicable here, where the plaintiff brings her claims in a representative capacity that "touch the interest of every beneficiary." *Id.* at 1080.

502(a)(2). . . . Ultimately, however, the requirement is only that the plaintiff take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of the plan.'").

In an ERISA action concerning an ESOP, the Court sees no reason why Plaintiff cannot adequately provide notice to all parties in interest in a manner similar to a class action proceeding under Rule 23. A list of all ESOP participants is easily available without extensive discovery. Plaintiff can provide notice that details these proceedings, and includes the case caption, applicable claims, relevant defenses, key rulings, and upcoming dates and deadlines. Thus, as the Court noted at the Hearing, the Plaintiff is required to submit proposed procedures to the Court that provides adequate notice to all ESOP participants.

Additionally, Plaintiff submitted that she has established a website that contains details of these proceedings and is available to all ESOP participants.[4] ECF No. 166, at 22. Plaintiff asserts that the website provides ESOP participants with a summary of this case and an opportunity to comment. Plaintiff, however, has made no efforts to date to direct any ESOP participants to the website. The Court, therefore, will require that all parties should receive notice, not only of these proceedings, but also of the Plaintiff's website. The website should be updated regularly to reflect important docket entries, summaries of the proceedings, and provide ESOP participants with a meaningful opportunity to review and comment the go-forward strategy of this case and any applicable remedies. These procedural safeguards are similar—if not more extensive—than those required if the Court had certified the class under Rule 23(b)(1), which does not provide class members with a right of individual notice or an opportunity to opt-out. *See Spano v. The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) (noting that unlike a class certified under Rule 23(b)(3), class certification under Rule 23(b)(1) does not require notice to all parties and a right to opt out

---

[4] The webpage is located on the website of Plaintiff's counsel, Bailey Glasser, at https://www.baileyglasser.com/case-Morton-Buildings-ESOP-Case.

of the class). The Court therefore believes that notwithstanding its finding that Plaintiff may proceed in a representative capacity pursuant to ERISA Section 502(a)(2), the above procedural protections will safeguard the interests of all beneficiaries.

At the Hearing, the Court made the parties aware that it would require these due process protections and ordered the Plaintiff to submit proposed due process protections by August 15, 2023. The Court will review the proposed due process procedures and address any additional concerns or procedural deficiencies. The Court further notes that if the parties reach a settlement agreement, the Court will consider additional appropriate procedural protections at that time.

## CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Partial Summary Judgment on the narrow issue of proceeding in a representative capacity under ERISA Section 502(a)(2) is GRANTED, and the Defendant Argent's Motion for Summary Judgment on the issue of Plaintiff proceeding in a representative capacity for plan-wide relief is DENIED. The Plaintiff's and Defendant's pending Motions for Summary Judgment on issues of material fact and whether the whether the ERISA claims succeed as a matter of law remain pending before the Court.

ENTERED this August 10, 2023.

        /s/ *Michael M. Mihm*
        Michael M. Mihm
        United States District Judge