IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and on behalf of all other persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ARGENT TRUST COMPANY, JAN ROUSE, EDWARD C. MILLER, GETZ FAMILY LIMITED PARTNERSHIP, ESTATE OF HENRY A. GETZ, and ESTATE OF VIRGINIA MILLER, <br><br> Defendants. | Case No. 20-1177 |

## ORDER AND OPINION

Pending before the Court are the *Defendant Getz Family Limited Partnership's Motion for Summary Judgment* (ECF No. 161), the *Defendant Edward Miller, the Estate of Henry A. Getz, and the Estate of Virginia Miller's Motion for Summary Judgment and the Estate's Renewed Motion to Dismiss for Lack of Subject Matter Jurisdiction* (ECF No. 163), and the *Plaintiff's Motion for Partial Summary Judgment* (ECF No. 165) (together, the "Motions"). For the reasons stated below, the Defendants' Motions are GRANTED and the Plaintiff's Motion for Partial Summary Judgment is DENIED, in part, with respect to her claims under Section 502(a)(3) against the non-fiduciary defendants.

## FACTUAL BACKGROUND

Morton Buildings, Incorporated ("Morton Buildings") designs and builds structures for farm, commercial, and residential use. ECF No. 57 ¶ 24. The business was originally family owned by several individuals, including Henry Getz, Virginia Miller, the Getz Family Limited

Partnership, Dr. Miller, and an employee-owned defined contribution plan known as The Morton Buildings, Inc. 401(k) and ESOP (the "KSOP"). *See* ECF No. 163-5, Sch. A. Prior to the sale, many of the former shareholders had various degrees of involvement in Morton Buildings. Henry Getz was a former president of Morton Buildings. ECF No. 163-8, at 12:4-12:9. Janet Getz, general partner of Getz Family Limited Partnership, served as the interim president and CFO of Morton Buildings, and later, on its Board of Directors. ECF No. 162-2, at 21:20-23, 27:13-20. And Dr. Miller served on the Board of Directors. ECF No. 163-8, at 24:19-22.

On May 8, 2017, Morton Buildings executed an ESOP transaction, which sold the ownership of its stock to participating employees. ECF No. 163-4. An ESOP is a retirement plan that allows participating employees to acquire the company's stock, with the business becoming fully employee owned. *See* 29 U.S.C. § 1103(a); 29 C.F.R. § 2550.407d-6. Pursuant to the terms of a purchase agreement (the "Purchase Agreement"), each shareholder, through their representative, received cash consideration at the closing of the ESOP Transaction in exchange for their shares. ECF No.163-4 § 2.2(a), Sch. 1B.

Plaintiff initially filed a complaint on April 30, 2020, alleging various ERISA violations from the purchase and financing of the ESOP. ECF Nos. 1, 57. The causes of action were centered around a sudden rise and drop of the Morton stock price following the ESOP transaction. Specifically, Plaintiff pointed to a rise in stock price to $73.25 per share, and then a sudden decrease to $33.78 in December 2017 and $29.48 in December 21, 2018. Plaintiff claimed that the formation of the ESOP and sale of Morton Buildings allowed the shareholders to sell their interests above fair market value. ECF No. 57. Defendants argue that the decrease in stock price

was the result of change in treatment of Morton Building's excess cash from a liability to an asset, which resulted from the ESOP transaction and change in ownership structure.

## PROCEDURAL BACKGROUND

Plaintiff initially brought this action against Argent Trust Company for breach of fiduciary duty under ERISA Sections 409 and 502(a)(2).  Plaintiff later added Jan Rouse, Edward C. Miller, the Getz Family Limited Partnership, the Estate of Henry A. Getz, and the Estate of Virginia Miller (the "Shareholder Defendants") as knowing participants to a prohibited transaction under ERISA Sections 406 and 502(a)(3).  ECF No. 57 ¶¶ 1, 3.

Specifically, with respect to the Shareholder Defendants, Plaintiff's seeks equitable relief under ERISA Section 502(a)(3), "including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief."  ECF No. 57 ¶ 107.  Plaintiff first sought equitable relief on behalf of a putative class pursuant to Rule 23.  The Court, however, denied the Plaintiff's *Motion for Class Certification* and Plaintiff's subsequent *Motion for Reconsideration*, in part, based on a conflict between ESOP beneficiaries who previously owned shared in the KSOP and benefitted in different ways from the ESOP transaction.  ECF No. 155.  Plaintiff now proceeds in a representative capacity on behalf of the ESOP without a formally certified class.

In addition to pursuing relief in these proceedings, Plaintiff also filed a claim in the probate proceedings for the Estate of Henry A. Getz in the Circuit Court for the Tenth Judicial District of Illinois (the "Probate Court").  *See* ECF No. 164-28.  The Probate Court denied and disallowed the Plaintiff's claim.  *Id.*  Plaintiff appealed, and the Appellate Court of Illinois for the Third

3

District affirmed, holding that Plaintiff's claims were properly dismissed and disallowed under the two-year statute of limitations. *See Jackie Lysengen v. Jan Rouse (In re Estate of Henry A. Getz)*, 2023 Ill. App. 3d 210602-U, No. 3-21-0602 (Ill. App. Ct. July 6, 2023).

At this juncture, all parties filed motions for summary judgment in these proceedings. *See* ECF Nos. 158, 161, 163, 165, 166. As part of her Motion, the Plaintiff seeks, among other things, a judgment that Plaintiff may recover any losses incurred by the Plan, profits earned by the Defendants, or other appropriate equitable relief in a representative capacity against the shareholder Defendants under ERISA. ECF Nos., 165, 166. On August 2, 2023 (the "Hearing"), the Court heard oral arguments on whether the Plaintiff may proceed in a representative capacity and seek plan-wide relief. At the Hearing, the Court determined that the Plaintiff may proceed in a representative capacity against Argent Trust Company under ERISA Section 502(a)(2), but deferred its ruling on whether the Plaintiff may proceed against the Shareholder Defendants under Section 502(a)(3). *See* Minute Entry 8/2/23. This Opinion and Order addresses first whether Plaintiff may bring claims in a representative capacity under Section 502(a)(3), and second, whether those claims succeed as a matter of law under the applicable motions for summary judgment.

## LEGAL STANDARD

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When ruling on a motion for summary judgment, the Court must construe facts in the light

most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008).

The Federal Rules of Civil Procedure allow for partial summary judgment and require parties to "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "At the summary-judgment stage, the court can properly narrow the individual factual issues for trial by identifying the material disputes of fact that continue to exist." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Thus, a court may grant summary judgment as to one claim as a matter of law, "leaving other claims and other parties to be addressed at a later point in the litigation." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015) (citing 10A Fed. Prac. & Proc. § 2715, at 254).

## DISCUSSION

**a. ERISA Section 502(a)(3) allows Plaintiff to proceed in a representative capacity and seek plan-wide relief against non-fiduciaries.**

Plaintiff seeks relief against the Defendant Shareholders pursuant to Section 502(a)(3) of ERISA. As an initial matter, Defendants Edward Miller, the Estate of Henry A. Getz, and the Estate of Virginia Miller ("Miller and the Estates") argue that ERISA Section 502(a)(3) does not provide for suits against non-fiduciaries on a plan-wide basis. ECF No. 163, at *43. Specifically, they assert that the plain-text of Section 502(a)(3) does not incorporate Section 1109—which provides that a fiduciary may be liable for "losses to the plan"—and that Section 502(a)(3) includes no express authority for plan-wide relief. *Id.* Rather, Miller and the Estates argue that Section 502(a)(3) may only be brought in an individual capacity. *See* ECF No. 170, at *8 (citing *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 482 (7th Cir. 2010); *Coan v. Kaufman*, 457 F.3d 250, 263–64 (2d Cir. 2006)). Plaintiff argues that Miller and the Estates misconstrue the purpose of Section 502(a)(3), which they submit operates as a "catchall" provision that allows for appropriate

5

equitable relief for any violation of ERISA law and may be pursued in any capacity. ECF Nos. 204, at *75.

We will first begin with the text of the statute. *See United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016) ("When addressing questions of statutory interpretation, we begin with the text of the statute.") (internal citations omitted). ERISA Section 502(a)(3) provides that:

> A civil action may be brought—(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

The text of Section 502(a)(3) does not expressly limit its relief to those brought in an individual capacity or for individual losses. Rather, the statute broadly authorizes a participant to enjoin *any* act or practice that violates ERISA, or to obtain any *other appropriate equitable* relief to redress any violation of ERISA. Thus, the only limitation under the plain language of the statute is that such relief must be equitable. *See Marcotte*, 835 F.3d at 656 ("When a statute is unambiguous, our inquiry 'starts and stops' with the text") (citing *United States v. All Funds on Deposit with R.J. O'Brien & Assoc.*, 783 F.3d 607, 622 (7th Cir. 2015)).

In *Varity Corp. v. Howe*, the Supreme Court emphasized the scope of Section 502(a)(3). 516 U.S. 489, 509 (1996). There, the plaintiff argued that Section 502(a)(3) was limited to plan-wide relief and could *not* be brought in an individual capacity. *Id.* ("The remaining question before us is whether or not the remedial provision of ERISA that the beneficiaries invoked, ERISA § 502(a)(3), authorizes this lawsuit for individual relief."). The Court reasoned that Section 502(a)(3) operates as a "catchall provision" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."

*Id.* at 512. The Court therefore concluded that Section 502(a)(3) was broad enough to cover individual relief. *Id.* at 510.

Later, in *Harris Trust*, the Supreme Court addressed whether Section 502(a)(3) extends to non-fiduciaries, who were alleged to have engaged in a prohibited transaction under Section 406(a). *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245, 250–52 (2000). There, the Court explained that an action under Section 502(a)(3) "does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Id.* This is because "Section 502(a)(3) "admits of no limit . . . on the universe of possible defendants . . ." rather, its focus "is on redressing the 'act or practice which violates any provision of [ERISA Title I].'" *Id.* The Court concluded that Section 502(a)(3) allows for equitable relief against non-fiduciaries—under theories of restitution and the common law of trusts—for certain prohibited transactions that result in a third-party transferee receiving ill-gotten gains. *Id.*

Here, similar to *Harris Trust*, the Plaintiff seeks to utilize Section 502(a)(3) to enforce violations of ERISA under Sections 406(a)(1)(A) and 406(a)(1)(D). Section 406(a)(1) outlines certain "prohibited transactions" between the ERISA plan and a party in interest—including a sale or exchange between the plan and a party in interest (Section 406(a)(1)(A)) or a transfer of any plan assets to a party in interest for their benefit (Section 406(a)(1)(D)). 29 U.S.C. § 1106. Plaintiff brings the suit on behalf of the ESOP and is seeking "equitable relief" against the Shareholder Defendants pursuant to Section 502(a)(3).

The Court is not persuaded that Section 502(a)(3) applies only to causes of action brought in an individual capacity. As detailed above, the Supreme Court has characterized Section 502(a)(3) as a "catchall" provision that "admits of no limit" on possible defendants (including non-fiduciaries) and is focused on redressing violations of *any* provision for ERISA, provided that such

7

relief is "equitable." *Varity Corp.*, 516 U.S. at 511; *Harris Trust*, 530 U.S. at 247. Neither the statute's text nor the Supreme Court's holdings in *Varity Corp.* or *Harris Trust* provide any express limitations to individual relief. Here, Plaintiffs are seeking relief in a manner contemplated in *Harris Trust*—a suit against a non-fiduciary pursuant to Sections 406(a) and 502(a)(3) for a prohibited transaction. *See, e.g.*, *Nat'l Sec. Syst., Inc. v. Iola*, 700 F.3d 65, 91 (3d Cir. 2012) ("As the Court in *Harris Trust* explained, § 502(a)(3) provides a right of action against a transferee of ill-gotten trust assets who is a knowing participant in an ERISA violation. It is no consequence that [Defendant] was not a fiduciary . . . .") (citing *Harris Trust*, 530 U.S. at 251).

Further, Miller and the Estate's cited case law do not directly limit Section 503(a)(3) to suits brought in an individual capacity. *See* ECF No. 170, at *8 (citing *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452. 482 (7th Cir. 2010); *Coan v. Kaufman*, 457 F.3d 250, 262–63 (2d Cir. 2006)). Both *Coan* and *Kenseth* reasoned that because the plaintiffs in those cases were seeking relief on an individual basis, the plaintiffs must have brought their claims under Section 502(a)(3) because Section 502(a)(2) applies only to actions brought in a representative capacity. *Kenseth v. Dean Health Plan*, 610 F.3d at 482 (noting that plaintiff "has filed suit to recover for the injuries that [Defendant] has caused to her rather than to the plan as a whole. She therefore must be suing under the statute's catch-all provision, Section 1132(a)(3)); *Coan v. Kaufman*, 457 F.3d at 262 ("Unlike section 502(a)(2), section 502(a)(3) permits ERISA plan participants to bring suit for individual remedies; but relief under section 502(a)(3) must be 'equitable.'"). But these courts did not hold that Section 502(a)(3) applies only to individual relief, and nothing in those cases suggests that because Section 502(a)(3) *may* be utilized an individual capacity it *must* always be used in that capacity. Instead, *Coan* and *Kenseth* began with the assumption that all subparagraphs in

8

Section 502 applied on a plan-wide basis, and then reasoned that Section 502(a)(3) *also* authorizes individual relief as a "catchall" provision.

Thus, the Court finds the Plaintiff may bring her claims under Section 502(a)(3) in a representative capacity. The proper limitation to Section 502(a)(3) is whether the Plaintiff seeks "appropriate equitable relief." *Montanile v. Bd. of Tr. Of Nat'l. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 139 (2016) (determining whether the *plan* may sue under Section 502(a)(3), and examining solely whether the relief was equitable, not whether such relief could be brought on behalf of plan).

### b. Plaintiff does not seek relief that is equitable in nature under ERISA Section 502(a)(3).

Section 502(a)(3) provides that a Plaintiff must seek "appropriate equitable relief" to redress violations of ERISA or enforce ERISA's provisions or the terms of a plan. 29 U.S.C. § 1132(a)(3). The Supreme Court has explained that the term "[e]quitable relief must mean something less than all relief." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 258 n.8 (1993). Equitable relief under Section 502(a)(3) is limited to "those categories of relief that were typically available in equity . . . ." *Id.* at 256; *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 212 ("In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity.").

The inquiry "looks to 'standard treatises on equity, which establish the basic contours of what equitable relief was typically available in premerger equity courts.'" *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 452 (7th Cir. 2016) (citing *Montanile*, 577 U.S. at 142). Whether a claim is legal or equitable depends on "the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (reasoning that "not all relief falling under the rubric of restitution is available in equity") (citing *Reich v. Cont'l Casualty Co.*, 33 F.3d 754,

756 (7th Cir. 1994)). Merely phrasing the relief as "equitable" is not dispositive: "[t]he remedy is properly regarded as equitable only if the plaintiff seeks the return of specifically identified funds that remain in the defendant's possession or . . . traceable items that the defendant purchased with the fund . . . ." *Id.* at 453 (internal citations omitted).

Traditionally, restitution was available in both courts of law and equity. When a plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at *law*," and therefore, sought legal relief in the form of monetary damages. *Great-West Life*, 534 U.S. at 213 (citing 1 D. Dobbs, Law of Remedies § 4.2(1), at 571 (2d ed. 1993)); Restatement of Restitution § 160, Comment *a*, at 641–42 (1936)) (emphasis in original). "In contrast, a plaintiff could seek restitution in *equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* (citing See 1 Dobbs § 4.3(1), at 587–588; Restatement of Restitution § 160, Comment a, at 641–642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978)) (emphasis in original).

In *Great-West*, the Court reasoned that because the funds were not in the transferees' possession, the basis for the claim was not that the transferees held "particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred." *Id.* at 214. The Court concluded, therefore, that the restitution was not equitable, but rather legal, because petitioner sought the imposition of personal liability for the benefits that respondents received. *Id.* The Court continued this distinction in a series of decisions

10

that lead to differing results depending on whether the plaintiff could adequately trace or identify specific property.

For example, in *Sereboff*, the Court held that the plaintiff sought equitable relief under Section 502(a)(3) because the plaintiffs sought an equitable lien over funds that were clearly identifiable in a segregated account and within the control of the beneficiaries. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361–62 (2006). The Court distinguished recoveries of traceable, separate funds from relief that sought a "recovery from the beneficiaries' assets generally." *Id.* In *Montanile*, however, the Court held that a request for an equitable lien against the defendant's general assets was not equitable because the settlement funds were dissipated and did not satisfy the traditional requirements for an equitable lien over traceable and identifiable property. *Montanile*, 577 U.S. at 659 ("In sum, at equity, a plaintiff ordinarily could not enforce any type of equitable lien if the defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all. The plaintiff could not attach the defendant's general assets instead because those assets were not part of the specific thing to which the lien attached."). Thus, under Section 502(a)(3), "[t]he remedy is properly regarded as equitable only if the plaintiff seeks the return of specifically identified funds that remain in the defendant's possession or . . . traceable items that the defendant purchased with the funds (*e.g.*, identifiable property like a car)." *Cent. States, Se.*, 840 F.3d at 453 (summarizing cases) (internal citations omitted).

Here, Count IV of the Complaint asserts claims against the Shareholder Defendants pursuant to Section 502(a)(3). *See* ECF No. 57 ¶ 101. Specifically, Plaintiff seeks "disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief."

11

ECF No. 57 ¶ 107.  Plaintiff also styles the requested relief as equitable in her motion for summary judgment briefing.  *See* ECF No. 179 at *39 (requesting equitable relief from Getz FLP); ECF No. 204, at *74 (requesting equitable relief from Miller and the Estates).  Plaintiff cites generally to the common law of trusts to assert that she may maintain an action for restitution of trust property (if not already disposed of) or disgorgement of proceeds (if already disposed of) from the Shareholder Defendants.  ECF No. 204, at *76.  At bottom, Plaintiff asserts that "[t]he Plan is entitled in equity to recovery of its overpayment to Miller and the Estates . . . ." ECF No. 204 at *78.[1]  While Plaintiff describes the requested relief as equitable, the nature of the relief and underlying claims are for restitution that is *legal* in nature.

As an initial matter, Plaintiff does not ultimately identify any traceable funds, accounts, stock, or proceeds.  *See, e.g.*, *Sereboff*, 547 U.S. at 632–63 (noting that the Plaintiff "sought 'specifically identifiable' funds that were 'within the possession and the control of the [Defendant]'" because the settlement funds were "set aside and preserved [in the Defendant's] investment accounts"); *Montanile*, 577 U.S. at 151 (reasoning that recovery from general assets was not equitable and remanding to determine "whether [Defendant] kept his settlement fund separate from his general assets or dissipated the entire fund on nontraceable assets").  Plaintiff broadly pursues "equitable" relief to recover overpayments that were distributed to the Shareholder Defendants at the conclusion of the ESOP transaction, but Plaintiff makes no attempt to identify the location of the cash or trace the overpayments back to the transferees as applicable case law requires.  Moreover, the cash consideration that Plaintiff seeks to recover was distributed in 2017 directly to the representatives of the Defendant Shareholders and was dissipated following the

---

[1] At the August 2, 2023, hearing, Plaintiff submitted to the Court that she is ultimately seeking repayment for the amount overpaid for the stock and waived any requests for the Court to rescind or otherwise unwind the ESOP transaction.

ESOP transaction. To seek an equitable remedy, however, Plaintiff must identify specific property—such as segregated proceeds, identifiable accounts, or physical property that is readily ascertainable—not untraceable and dissipated funds.

Instead, what Plaintiff ultimately seeks is a declaratory judgment that determines the amount of liability the Shareholder Defendants owe on account of the alleged overpayment of stock. For example, in her briefing to this Court, Plaintiff states that a declaratory judgment would enable the Plaintiff to "stand in line" with other claimants in the probate proceedings and receive a distribution as a general creditor of the probate estate. ECF No. 86 at *3, *4 (stating that "[t]he Court is empowered by § 502(a)(3) to issue a declaration that the decedents engaged in a prohibited transaction with the Plan in violation of ERISA" and that Plaintiff "is simply asking for a *judgment* that will be submitted to the probate court and get in line with any other creditors"); *see also* ECF No. 204 at *101 (restating and incorporating ECF No. 86). Additionally, in her briefing to the Probate Court, Plaintiff sought to recover on her claim as a general creditor "*in an amount to be determined*" by this Court. See ECF No. 164-28. There, the Plaintiff requested relief that was described as "seeking to recover *damages* based on a pending lawsuit in which she alleged that Getz and others violated the Employee Retirement Income Security Act of 1974." *In re Estate of Henry A. Getz*, No. 3-21-0602 ¶ 2 (Ill. App. Ct. July 6, 2023) (emphasis added).

The requested declaratory judgment that fixes liability is akin to a monetary judgment that constitutes legal relief, not equitable relief. *See Cent. States, Se.*, 840 F.3d at 453–54 (reasoning that the trustee had not specifically identified funds in the defendant's possession and that "[h]is request for declaratory relief seeks an order requiring the [defendant's] to reimburse the plan—in other words, he asks for money damages, the epitome of legal relief"). While such relief is restitution, it is ultimately restitution at *law* rather than restitution in *equity*. Therefore, Plaintiff's

13

claims against the Shareholder Defendants do not fall within the scope of "appropriate equitable relief" under Section 502(a)(3), and therefore, fail as a matter of law. Accordingly, the Court need not decide whether Plaintiff demonstrated that the claims succeed under ERISA Section 406(a), including the affirmative defenses of statute of limitations/repose, laches, and lack of intent to those claims, with respect to the Shareholder Defendants.

   c. **The Court need not determine whether the probate exception applies or whether applicable procedural safeguards are required with respect to the Shareholder Defendants.**

First, because the Court has found that Plaintiff's claims fail under Section 502(a)(3) as a matter of law, the Court need not determine whether the probate exception applies. The Court notes, however, that its holding is consistent with its earlier order and opinion at the motion to dismiss stage, where the Court ruled that Plaintiff's requested relief did not violate the probate exception. *See* ECF No. 124. There, the Court reasoned that a declaratory judgment determining an amount of liability against the Shareholder Defendants did not violate the probate exception because the relief did not invoke the Court's *in rem* jurisdiction over *res* under the control of the Probate Court. ECF No. 124 at *5 (noting that the Plaintiff "is seeking a judgment so that she has the opportunity to stand with other credits in pursuing funds from the estate"). Plaintiff's requested relief was instead an *in personam* judgment that was "brought against a person rather than property." *See Am. Elec. Power Serv. Corp. v. Fitch*, No. 22-3005, 2022 WL 3794841 (6th Cir. 2022) (noting that an *in personam* judgment is binding on the judgment-debtor and can be enforced against all the property of the judgment-debtor rather than specifically identified property). For restitution to lie in equity, however, the action must restore the plaintiff to particular funds or property, not impose personal liability (*e.g.*, through an *in personam* judgment that does not violate the probate exception). *See Great-West Life*, 534 U.S. at 213–14. Thus, for the same reason the

Court found that the relief does not run afoul of the probate exception, it also does not satisfy the requirements of Section 502(a)(3) of ERISA.

Additionally, the Court need not determine whether any applicable procedural safeguards are required with respect to the Shareholder Defendants since the claims do not succeed as a matter of law.

## CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Partial Summary Judgment with respect to the Shareholder Defendants is DENIED, and the Shareholder Defendants' Motions for Summary Judgment are GRANTED. The Plaintiff's pending Motions for Partial Summary Judgment on issues of material fact and whether the whether the ERISA claims succeed as a matter of law against Defendant Argent Trust Company remain pending before the Court.

ENTERED this September 6, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge