# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

### PEORIA DIVISION

| | |
|---|---|
| JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, | |
| Plaintiff, | Case No. 1:20-cv-01177 |
| v. | |
| ARGENT TRUST COMPANY, | |
| Defendant. | |

## PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR <u>FINAL APPROVAL OF SETTLEMENT</u>

**Table of Contents**

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .............................................. 2

    A.      Background ................................................................................................. 2

    B.      Discovery ................................................................................................... 3

    C.      Motion Practice ......................................................................................... 4

    D.      The Parties' Settlement Efforts ................................................................. 5

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS .............................. 5

    A.      Benefits to the Settlement Class ............................................................... 5

    B.      Notice and Administration ........................................................................ 6

    C.      Case Contribution Award to the Named Plaintiff and Attorneys' Fees and Costs ............ 8

    D.      Release of Claims ...................................................................................... 8

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND ....................... 8

    A.      The Settlement Class is Adequately Represented ................................... 10

    B.      The Proposed Settlement was Negotiated at Arm's Length .................... 11

    C.      The Proposed Settlement's Relief to the Settlement Class is Adequate Taking Into Account the Complexity, Costs, Risks, and Delay of Trial and Appeal .......................... 13

    D.      The Proposed Settlement's Proposed Method of Distributing Relief to the Settlement Class ............ 17

    E.      The Proposed Settlement's Proposed Award of Attorneys' Fees ..................... 18

    F.      The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other ............ 18

    G.      The Proposed Settlement Also Satisfies the Additional Seventh Circuit Factors ............ 18

V.      CONCLUSION ..................................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp*,
　No. 06-705, 2015 WL 4398475 (S.D. Ill. July 17, 2015)....................................................... 15

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
　616 F.2d 305 (7th Cir. 1980) .................................................................................................. 12

*Christine Asia Co. v. Yun Ma*,
　No. 15-2631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................... 10

*Douglas v. W. Union Co.*,
　328 F.R.D. 204 (N.D. Ill. 2018) ....................................................................................... 15, 19

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
　768 F.2d 884 (7th Cir. 1985) .................................................................................................. 16

*Fish v. GreatBanc Tr. Co.*,
　No. 09-1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) .................................................... 14

*Gautreaux v. Pierce*,
　690 F.2d 616 (7th Cir. 1982) .................................................................................................. 19

*In re General Motors Corp. Engine Interchange Litig.*,
　594 F.2d 1106 (7th Cir. 1979) ................................................................................................ 16

*Isby v. Bayh*,
　75 F.3d 1191 (7th Cir 1996) ................................................................................................... 10

*Kaufman v. Am. Express Travel Related Servs. Co.*,
　877 F.3d 276 (7th Cir. 2017) .................................................................................................... 8

*Linman v. Marten Transport, Ltd.*,
　No. 22-204, 2024 WL 2974831 (W.D. Wis. June 13, 2024).................................................. 10

*Moreno v. Beacon Roofing Supply, Inc.*,
　No. 19-185, 2020 WL 1139672 (S.D. Cal. Mar. 9, 2020)................................................ 10, 11

*Roberts v. Graphic Packaging Int'l, LLC*,
　No. 3:21-750, 2024 WL 3373780 (S.D. Ill. July 11, 2024) ................................................... 10

*Stevens v. SEI Invs. Co.*,
　No. 18-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020)...................................................... 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
　463 F.3d 646 (7th Cir. 2006) .................................................................................................. 13

*Udeen v. Subaru of Am., Inc.*,
    No. 18-17334, 2019 WL 4894568 (D.N.J. Oct. 4, 2019) ............................................ 10, 12

*Walsh v. Bowers*,
    561 F. Supp. 3d 973 (D. Haw. 2021) ............................................................................. 14

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................................ 9, 10, 13, 19

**Statutes**

28 U.S.C. § 1292(B) ............................................................................................................ 15

Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715 .......................................... 6

Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ............................ 1

29 U.S.C. § 1104(a) ............................................................................................................. 3

29 U.S.C. § 1106 ................................................................................................................. 2

29 U.S.C. §§ 1110 ............................................................................................................... 3

29 U.S.C. 1132(a) ............................................................................................................... 14

**Federal Rules of Civil Procedure**

Rule 23 ........................................................................................................................... 1, 2, 9

Rule 23(e) ............................................................................................................................. 8

Rule 23(e)(2) ............................................................................................................... 8, 9, 10

Rule 23(e)(2)(A) ............................................................................................................ 10, 11

Rule 23(e)(2)(B) ............................................................................................................ 11, 12

Rule 23(e)(2)(C)(i) .............................................................................................................. 13

Rule 23(e)(2)(C)(ii) ............................................................................................................. 16

Rule 23(e)(2)(C)(iii) ............................................................................................................ 18

Rule 23(e)(2)(D) .................................................................................................................. 18

Rule 23(e)(3) ........................................................................................................................ 9

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Jackie Lysengen ("Plaintiff"), as a representative of the Settlement Class, requests that the Court grant final approval of the settlement agreement between Plaintiff and Defendants, Argent Trust Company ("Argent"), Jan Rouse ("Rouse"), Edward C. Miller ("Miller"), the Getz Family Limited Partnership ("GFLP"), the Estate of Henry A. Getz ("Getz Estate"), and the Estate of Virginia Miller ("Miller Estate") (collectively, "Defendants" and together with Plaintiff, the "Parties").[1]

## I.    INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, ("ERISA") matter. Morton Buildings, Inc. (the "Company" or "Morton") has deposited $150,000.00 into the Settlement Fund for payment of Administrative Expenses and shall deposit an additional $3,850,000.00, thirty days after the Effective Date of Settlement. No portion of the settlement payment is a tax or penalty under ERISA or the Internal Revenue Code of 1986 as amended. Should the Court grant final approval, every eligible Plan Participant and/or Settlement Class Member will receive their portion of the Net Settlement Fund according to a *pro rata* Plan of Allocation (an average of approximately $2,800 per vested Settlement Class Member before any fees and expenses).

The proposed Settlement ("Settlement") satisfies all of the criteria for final approval and provides an excellent result for the Settlement Class. For these reasons, discussed in more detail below, Plaintiff requests that the Court grant this motion.

The Court granted Plaintiff's motion for preliminary approval and approved class notice on March 26, 2025 ("Preliminary Approval Order"). (Dkt. 254). The Parties have fulfilled all their

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

obligations under the Preliminary Approval Order, and Plaintiff now asks the Court to: (1) grant final approval of the Settlement; (2) find that the Settlement Notice satisfies the requirements of due process and Rule 23; (3) find the Settlement to be fair, reasonable and adequate; (4) dismiss on the merits and with prejudice all claims asserted against Defendants; (5) retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (6) approve the awards of Plaintiff's Counsel attorneys' fees in the amount of $1,262,600 and Costs and expenses in the amount of $537,400.36 as requested in their separately filed motion for attorneys' fees and costs; (7) approve the settlement administration expenses necessary to effectuate the Settlement; and (8) award $20,000 to Plaintiff Jackie Lysengen as a Case Contribution Award.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

This Action was brought on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan ("Plan") and on behalf of a proposed class of participants in the Plan. Plaintiff filed her Complaint on April 30, 2020, and filed her First Amended Complaint ("Amended Complaint") on August 19, 2021. The Amended Complaint alleges that Argent violated ERISA in connection with the purchase of 2,005,662 shares of Morton stock by the Plan on May 8, 2017. The Plan purchased 2,005,662 shares of Morton common stock for $147,786,877 (the "ESOP Transaction").[2]

Plaintiff alleges that Argent violated ERISA § 406, 29 U.S.C. § 1106, because it engaged in and caused the Plan to engage in prohibited transactions under ERISA by, *inter alia*, causing

---

[2] Defendant Jan Rouse was dismissed pursuant to a Stipulation of Dismissal (ECF No. 87) filed November 18, 2021; summary judgment was granted in favor of the remaining Defendants (ECF No. 233), except Argent whose summary judgment motion remains pending, on September 7, 2023.

the Plan to purchase the shares of Morton stock from parties in interest to the Plan, including Miller, GFLP, the Getz Estate, and the Miller Estate (the "Selling Shareholders"); causing the Plan to borrow money for that purchase from Morton and Henry A. Getz, parties in interest to the Plan; causing the Plan to transfer Plan assets to parties in interest as payment in the stock purchase transaction; acting on behalf and for the benefit of Selling Shareholders by approving a purchase price for Morton stock that exceeded its fair market value; and receiving payment and an indemnification agreement from Morton for serving as trustee on behalf of the Plan. Plaintiff also alleges that Argent breached its fiduciary duties in violation of ERISA § 404(a), 29 U.S.C. § 1104(a), because it did not undertake an appropriate and independent investigation of the fair market value of Morton stock in or about May 2017. Plaintiff also alleges that Argent violated ERISA §§ 410, 404(a)(1)(A) and (B), 29 U.S.C. §§ 1110, 1104(a)(1)(A), (B), to the extent the indemnification agreement attempts to relieve it of its responsibility or liability to discharge its duties under ERISA.

Defendants deny these allegations, deny any wrongdoing or liability, and have vigorously defended themselves in this Action. Defendants do not admit wrongdoing of any kind regarding the ESOP Transaction or this Action.

### B. Discovery

The Parties have vigorously prosecuted this Action and have engaged in robust discovery. Plaintiff's Counsel has conducted extensive discovery regarding the facts and claims in this Action, including culling and reviewing relevant documents from the voluminous document productions by Defendants and seven non-parties. *See* Declaration of Gregory Porter in Support of Plaintiff's Unopposed Motion for Final Approval of Settlement and Plaintiff's Motion for Attorneys' Fees, Costs, and Case Contribution Award ("Porter Decl."), attached hereto as Exhibit

1, ¶ 6. The Parties propounded and responded to written discovery. Thousands of documents were produced by Morton, Defendants, and various third parties in the Action. Plaintiff received and reviewed, *inter alia*: presentations prepared by Morton's advisors that were provided to Morton and Defendants other than Argent; discussions among Argent and its advisors related to the ESOP Transaction, including discussions about the terms of the transaction, Argent's valuation, and ongoing negotiations; transaction documents containing the terms of the ESOP Transaction; opinion letters provided by Argent's advisors; valuation reports prepared by Argent's financial advisor; diligence reports prepared by Argent's legal advisor; and minutes from meetings of Argent's ESOP Committee related to the ESOP Transaction. See Porter Decl. ¶ XX.

Counsel for the Parties prepared for, took, and defended seventeen depositions of parties, non-parties, and experts. Porter Decl. ¶ 6. Plaintiff's Counsel has worked with expert consultants, coordinated the preparation of expert reports, analyzed Defendants' expert reports, and prepared for and defended expert depositions. *Id*. The Parties also went through extensive briefing, as discussed in the motions practice section below. *Id*. at ¶ 7.

### C. Motion Practice

The Parties engaged in extensive motion practice that included the following: Defendants' Motion to Dismiss Complaint (ECF No. 17); Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 44); Plaintiff's Motion to Certify Class (ECF No. 54); Defendant Getz Family Limited Partnership's Motion to Dismiss Amended Complaint (ECF No. 75); Defendants Estate of Henry A. Getz and Estate of Virginia Miller's Motion to Dismiss Amended Complaint (ECF No. 81); Defendant Argent's Motion for Summary Judgment (ECF No. 158); Defendant Getz Family Limited Partnership's Motion for Summary Judgment (ECF No. 161); Defendants Edward Miller, Estate of Henry A. Getz, and Estate of Virginia Miller's Motion for Summary Judgment

(ECF No. 163); Plaintiff's Motion for Partial Summary Judgment (ECF No. 165); and Defendant's Motion to Certify Order of August 11, 2023 for Interlocutory Appeal (ECF No. 235). Porter Decl. ¶ 7.

### D. The Parties' Settlement Efforts

Plaintiff and Argent held a mediation with a JAMS mediator on February 20, 2024. Porter Decl. ¶ 8. In advance of the mediation, Plaintiff and Argent submitted statements laying out their positions on the case. *Id*. Plaintiff and Argent were unable to resolve the matter at the mediation on February 20, 2024, and continued discussions with the mediator after February 20, 2024. *Id*. Those talks continued through July 2024, at which time all Parties agreed to the settlement terms discussed herein. *Id*.

### III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below. The proposed Settlement will apply to the Plan, as well as all participants of the Plan and the beneficiaries of such participants as of May 8, 2017, and anytime thereafter, whether or not such participants or beneficiaries were vested; but excluding the Selling Shareholders, the directors and officers of the Company and their immediate families, and legal representatives, successors, and assigns of any such excluded persons. Settlement Agmt. (Dkt. 252-2) ¶ 1.55; Preliminary Approval Order (Dkt. 254) at 4.

### A. Benefits to the Settlement Class

Morton, on behalf of the Released Parties, deposited $150,000.00 into the Settlement Fund Account for purposes of payment of Administrative Expenses. Settlement Agmt. ¶ 7.1.2. Thirty days after the Effective Date of Settlement, Morton shall deposit $3,850,000.00 into the Settlement Fund Account (the two payments collectively, along with any interest accrued, constitute the "Gross Settlement Fund"). *Id*. The funds remaining after deduction from the Gross Settlement

Fund for (i) taxes (or reserves to pay taxes), (ii) Settlement Administration Expenses, (iii) Court-approved attorneys' fees, and (iv) any Case Contribution Award to the Named Plaintiff, shall constitute the "Net Settlement Fund." *Id*. ¶¶ 8.1, 10.2, 10.3. The Net Settlement Fund will be distributed to the Plan participants pursuant to the Plan of Allocation. *Id*. ¶ 8.2.2.

Each Settlement Class Member's share of the Net Settlement Fund shall be equal to the Net Settlement Fund multiplied by the percentage of vested Morton stock held in the Settlement Class Member's Plan account as of December 31, 2024. Plan of Allocation, (Dkt. 252-4). Before subtracting the expenses, fees and costs listed above, each of the 1,427 vested Settlement Class Members will receive $2,800 on average.

## B. Notice and Administration

The Notice plan approved by the Court was implemented by the Parties and Settlement Administrator, Simpluris. On April 10, 2025, Defendants served the notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715 ("CAFA"). On June 2, 2025, Simpluris mailed the Notice to Settlement Class Members and posted the Notice on the website established for case documents. *See* Declaration of Michael Bui ("Bui Decl."), attached hereto as Exhibit 2 at ¶¶ 9-10. The Notice is clear and straightforward, was approved by the Court on March 26, 2025 (Dkt. 254) and provided Settlement Class Members with enough information to inform them about the nature of the Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. On June 2, 2025, Simpluris established a website for case documents, key dates and information, and establishing contact information to respond to inquiries. *Id*. ¶ 10. The website address was printed on all Notices. *Id*. ¶ 11; Dkt. 252-3 at 12-20. Plaintiff's Motion for Attorneys' Fees and Expense Reimbursement, Settlement Administration Expenses, and Case Contribution Award and this Motion will be posted on the settlement website once

6

filed.

        If the Court grants final approval of the Settlement, the Settlement Administrator, Plan Administrator, and Recordkeeper shall also implement the Plan of Allocation. Settlement Agmt. ¶¶ 8.2.2, 8.2.3. The Settlement Administrator shall remit the Net Settlement Fund to the Plan to be held in a money market fund in the Plan established by the Plan Administrator until distributions are made to Settlement Class Members. *Id.* ¶ 8.2.2. The allocable portion of the Net Settlement Fund for each Settlement Class Member shall be distributed to those Settlement Class Members directly by the Recordkeeper in accordance with the Plan of Allocation which is based on terms in the Settlement Agreement. *Id.* ¶ 8.2.3. For those Settlement Class Members who have an active Plan account ("Active Participants"), the allocable portion owed shall be transferred to the 401(k) portion of that Active Participant's account in the KSOP, to be invested subject to the Active Participant's investment direction. *Id.* For those Settlement Class Members who do not have an active Plan account ("Former Participants"), the Plan Administrator and Recordkeeper shall issue an election notice to each Former Participant allowing each Former Participant to elect to receive his or her allocable portion by check or as a deposit into an individual retirement account or other eligible retirement plan (however, the Former Participant shall not be permitted to elect to receive payment via check if the amount owed to that Settlement Class Member is $50 or less). *Id.* The Recordkeeper shall distribute the allocable portion owed to each Former Participant consistent with the Former Participant's election. If no election is made by a Former Participant and the amount owed is $7,000 or less, the Recordkeeper may rollover the amount owed to such Former Participant into an individual retirement account at Inspira Financial Trust, LLC in the name of the Former Participant. If no election is made by a Former Participant and the amount owed is more than $7,000, the Recordkeeper and Plan Administrator shall follow the terms of the Plan Document (and any Plan amendment) for locating such Former Participant and, if need be, shall forfeit any amount owed to such Former Participant, with the amount to be reallocated to Active Participants and distributed to those

Active Participants in accordance with the provisions for Active Participants detailed above. *Id.*

The Settlement Administrator shall be responsible for establishing and maintaining a Qualified Settlement Fund to hold the Gross Settlement Fund. Settlement Agmt. ¶ 7.1.1.

Simpluris' fees and expenses are expected to be approximately $5,000 through the end of the settlement process. Bui Decl. ¶ 14.

### C. Case Contribution Award to the Named Plaintiff and Attorneys' Fees and Costs

Subject to Court approval, Plaintiff's Counsel's fees and costs and a Case Contribution Award to the Named Plaintiff shall be paid from the Gross Settlement Amount. Settlement Agmt. ¶¶ 10.1-10.3. Plaintiff has filed, contemporaneously with this motion, a motion for a $20,000 Case Contribution for the named Plaintiff in recognition of her service to the Settlement Class and for an award of Attorneys' Fees of $1,262,600 and Costs of $537,400. *Id.* ¶¶ 10.1, 10.3.

### D. Release of Claims

In exchange for payment of the Settlement Amount by Morton and satisfaction of the conditions required by the Settlement Agreement, Plaintiff, the Plan participants, the Plan, and the Settlement Class will release Defendants any claims that pertain to the Plan and/or relating to the ESOP Transaction referenced in the Complaint and Amended Complaint. The Released Parties, Released Claims, and the covenant not to sue are set forth in full in the Settlement Agreement. Settlement Agmt. ¶¶ 3.1–3.6. Further, the Settlement is subject to a written determination by the Independent Fiduciary that the Settlement Agreement terms are fair and reasonable to the Proposed Settlement Class, the Plan, and the Plan participants. *Id.* ¶¶ 3.2–3.3.

### IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

Rule 23(e) provides that a class action cannot be settled without court approval. To be approved, a settlement must be fair, reasonable, and adequate. Rule 23(e)(2); *Kaufman v. Am.*

*Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017). The 2018 Amendments to Rule 23 provide direction to courts considering whether to approve such a settlement. Rule 23(e)(2) provides that the court should consider whether:

> (A) the class representatives and counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Seventh Circuit has traditionally considered several factors when evaluating a class settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014) (additional citations omitted). As the court noted, "[t]he most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.* The 2018 Committee Notes to Rule 23

9

recognized that each Circuit had developed its own list of factors, similar to those employed in the Seventh Circuit, to be considered in determining whether a proposed class action was fair and explained that the goal of the amendment is not to displace those factors, but rather to focus the parties on the "core concerns" that motivate the fairness determination. *See* Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (Apr. 26, 2018); *Christine Asia Co. v. Yun Ma*, No. 15-2631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019).

Although some courts within the Seventh Circuit still consider these factors, other courts solely focus on the Rule 23(e)(2) factors and refer to the *Wong* factors as "outdated." *Compare*, *e.g.*, *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-750, 2024 WL 3373780, at *3 (S.D. Ill. July 11, 2024) *with Linman v. Marten Transport, Ltd.*, No. 22-204, 2024 WL 2974831, at *2 n.1 (W.D. Wis. June 13, 2024). In light of this, in addition to the Rule 23(e)(2) factors, Plaintiff will address each of the *Wong* factors to the extent they are applicable, many of which overlap with the Rule 23(e)(2) inquiry.

Finally, this analysis takes place with the understanding that federal courts favor the settlement of class action litigation (*see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir 1996)) and that class settlements are presumed fair following sufficient discovery and genuine arm's length negotiation. *See Moreno v. Beacon Roofing Supply, Inc.*, No. 19-185, 2020 WL 1139672, at *5 (S.D. Cal. Mar. 9, 2020); *Udeen v. Subaru of Am., Inc.*, No. 18-17334, 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019).

## A.    The Settlement Class is Adequately Represented

Rule 23(e)(2)(A) requires adequate representation by Plaintiff and her counsel.

Plaintiff has acted in a representative capacity and has been actively engaged in the litigation. Porter Decl. ¶ 42. Plaintiff is an exemplary representative. She has loyally and vigorously represented

the Class over three years of hard-fought litigation. If Plaintiff had not been willing to act as a class representative, there would be no settlement benefits at all for the Settlement Class. She has spent significant time on behalf of the Class. Plaintiff provided documents to her counsel used to draft the pleadings. *Id*. Plaintiff regularly conferred with counsel on the progress of the case, including settlement. *Id*. Plaintiff prepared for, and sat for, a deposition conducted by Defendants. *Id*. Plaintiff asserts claims on the Plan's behalf and requests no individual relief. Therefore, Plaintiff is an adequate representative of the Plan participants.

Plaintiff's Counsel in this case are well-qualified and experienced. See Porter Decl. ¶¶ 10-18; Dkt. 252-6. Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP cases, they have worked diligently to litigate the claims here. *Id*. ¶¶ 5-7; 18-21. They have engaged in substantial and comprehensive discovery efforts, filed or responded to the numerous motions listed above, attended mediation sessions, retained multiple experts to support their allegations, and successfully moved for partial summary judgment. *Id*. There should be no question that Plaintiff's Counsel brought sufficient skill and resources to litigate this case. Plaintiff's Counsel is of the opinion that the Settlement is fair, reasonable, and adequate for the reasons set forth in this Motion.

In sum, both Plaintiff and Plaintiff's Counsel have effectively and diligently served the Settlement Class. The "adequacy of representation" factor of Rule 23(e)(2)(A) is met.

## B.    The Proposed Settlement was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length with the assistance of a professional, experienced mediator. There is a presumption that a settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *See*, *e.g.*, *Moreno,*

11

2020 WL 1139672, at *5; *Udeen*, 2019 WL 4894568, at *2. That presumption applies here. The Parties completed fact and expert discovery and summary judgment briefing and have therefore had a full opportunity to develop an informed understanding of the strengths and weaknesses of their positions. *See Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.").

And the Settlement here was achieved through extensive, arm's length settlement negotiations with Robert Meyer, an experienced mediator with nearly 40 years of litigation experience with particular expertise in ERISA and other employee benefit disputes. Porter Decl. ¶ 22. They drafted and submitted comprehensive mediation statements to Mr. Meyer that focused all sides on the key issues. *Id*. Counsel for Plaintiff and Argent attended a mediation on February 20, 2024, and continued discussing the case with the mediator in the subsequent months. *Id*. The attendees vigorously engaged in the mediation process. *Id*. After much deliberation, discussion, and compromise, the Parties agreed to resolve the disputes according to the terms laid out in the Settlement Agreement.

In sum, the robust discovery process, thorough testing of claims through voluminous summary judgment briefing, and the involvement of an experienced mediator supports a finding that the Settlement was reached after a thorough investigation and was fairly and honestly negotiated. The "arm's length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of approval.

### C.    The Proposed Settlement's Relief to the Settlement Class is Adequate Taking Into Account the Complexity, Costs, Risks, and Delay of Trial and Appeal.

Rule 23(e)(2)(C)(i) and several of the Seventh Circuit factors[3] address the complexity, cost, risks, and likely duration of the litigation. "The most important factor relevant to the fairness of a class action settlement is . . . the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotation marks omitted).

#### 1.    *The Risk of Loss and Trial*

The litigation would be even more lengthy and expensive if this Action were to proceed further. Plaintiff faced significant risks. Plaintiff and Argent had vastly different views about Argent's actions, its potential liability, and the likely outcome of the litigation. Plaintiff's core allegations regarding the ESOP Transaction rested on facts that were strongly contested by Argent, including whether the ESOP Transaction was in the best interest of the Plan, whether the Plan overpaid for its stock, and whether there were negative facts that were ignored or not sufficiently investigated by Argent during the due diligence and negotiation process.

Argent vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the ESOP Transaction. Argent pointed to evidence that in its view supported the conclusion that it had no liability. If the Action were to proceed through trial, Plaintiff would have to overcome these defenses and arguments. In addition, Argent had filed a summary judgment motion on all claims, and that motion remains pending.

Plaintiff and Argent also strongly disagree on the proper measure of damages, if any. Argent contends that the Plan and its participants were not harmed at all. Plaintiff, on the other

---

[3] These factors include the strength of a plaintiff's case compared to the terms of the proposed settlement and the likely complexity, length, and expense of continued litigation. *See Wong*, 773 F.3d at 863–64.

hand, argued that the Plan incurred significant financial damage from overpaying for its stock in the ESOP Transaction. The Parties exchanged position papers supporting their differing views on damages, and presented their theories extensively during the mediation process. That core dispute had not been resolved at the time the Parties reached their Settlement, and the uncertainty put both Parties at great risk.

These fact-intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day. In addition, motions to strike experts on various grounds could be anticipated. Disposition of similar cases often boils down to a battle of competing experts, and it is not uncommon for courts to side with defendants at trial on issues of ESOP valuation, even where the plan is represented by the United States Department of Labor. *See*, *e.g.*, *Walsh v. Bowers*, 561 F. Supp. 3d 973 (D. Haw. 2021) (ruling for defendants after finding defense expert's trial testimony credible); *see also Fish v. GreatBanc Tr. Co.*, No. 09-1668, 2016 WL 5923448, at *52, 66–68 (N.D. Ill. Sept. 1, 2016) (holding after 34 day bench trial that defendants breached no fiduciary duties, that adequate consideration was paid and plaintiffs suffered no damages, and that GreatBanc conducted a thorough and vigorous review of the transaction at issue and worked diligently to protect the ESOP's interests); *Keach v. U.S. Trust Co.*, N.A., 313 F. Supp. 2d 818 (C.D. Ill. 2004) (holding after bench trial that defendants had no liability related to an ESOP transaction as, among other things, they did not breach their fiduciary duties in connection with the appointment of a trustee and the ESOP paid adequate consideration for the employer's stock).

Further, the Parties' dispute over whether Plaintiff is entitled to pursue relief in a representative capacity on behalf of the Plan remained unresolved. On August 11, 2023, the Court issued an Order allowing Plaintiff to proceed in a representative capacity under ERISA § 502(a)(2),

notwithstanding the Court's denial of class certification. (ECF No. 225). On May 7, 2024, the Court issued an Order granting Argent's Motion to Certify Order of August 11, 2023 for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(B). (ECF No. 244). The Court stayed the matter to allow the question of law to proceed on appeal before the Court would address the pending summary judgment motions and resolve how to provide procedural safeguards to Plan Participants. (Sept. 12, 2023 Minute Entry; Text Entries dated Nov. 14, 2023 and Feb. 7, 2024). The Seventh Circuit had not issued a decision on the critical question of whether Plaintiff can proceed in a representative capacity at the time the Parties agreed to settle the case. Even if affirmed on appeal, the Court would have to resolve the pending summary judgment motions and, if Argent's motion were denied, Plaintiff would face a trial on the merits.

Before the Parties reached trial, they would have had to expend substantial time and effort to prepare the joint pretrial exhibit list, including identification of relevant exhibits and litigating any motions *in limine*. And, regardless of the outcome at trial, there likely would have been appeals that followed, further delaying final resolution of the Action and causing more expense. In sum, Plaintiff and the Plan participants may have waited several years for ultimate resolution and recovery and "would have faced significant obstacles in prevailing." *Douglas v. W. Union Co.*, 328 F.R.D. 204, 215 (N.D. Ill. 2018).

### 2.  *The Complexity of the Class Action was Significant*

Regarding complexity, it is well-recognized that ERISA is a "particularly complex area of law." *Abbott v. Lockheed Martin Corp*, No. 06-705, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015); *Stevens v. SEI Invs. Co.*, No. 18-4205, 2020 WL 996418, at *3 (E.D. Pa. Feb. 28, 2020), (citing *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015) (noting that ERISA is "complex field that involves difficult and novel legal theories and

often leads to lengthy litigation")). This ERISA Action is no different.

The complexity here makes the likelihood of success even more uncertain, and it drives up litigation costs. This litigation would only have become more expensive if it were to have proceeded further. Trial would have required several attorneys from both sides spending most of their time preparing in the weeks leading up to trial. And regardless of the outcome, appeals would likely have followed, further delaying resolution, and causing more expense. This factor weighs strongly in favor of approval.

### 3.  *The Benefit of Settlement Outweighs the Risks*

In light of the inherent uncertainty, and potential for delay, a settlement of $4,000,000— approximately $2,800 per participant before fees and other costs are applied—is a good result for the affected Plan participants. As the Seventh Circuit has noted, "the essence of a settlement is a bilateral exchange," and "[t]he inherent nature of a compromise is to give up certain rights or benefits in return for others." *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979). "Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Here, a certain recovery now for the Plan Participants far outweighs the mere possibility of future relief after years of costly litigation.

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $4,000,000 outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan Participants.

16

### D.     The Proposed Settlement's Proposed Method of Distributing Relief to the Settlement Class

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, Morton provided the names and last known addresses of Settlement Class Members, to the Settlement Administrator. Settlement Agmt. ¶ 2.1.2; Bui Decl. ¶ 7. The Settlement Administrator used that information to issue the Notice to Settlement Class Members. *Id*. ¶ 9 After deductions for Administrative Expenses and any attorneys' fees and expenses, and Case Contribution Award, the Settlement Administrator will send the Net Settlement Fund to the Plan. Settlement Agmt. ¶ 8.2.2. The Recordkeeper will then follow the Plan of Allocation to allocate the funds to the Settlement Class Members, and those funds will be distributed to active and former Plan Participants pursuant to the terms negotiated in the Settlement Agreement. *Id*. ¶ 8.2.3. The Plan of Allocation includes a formula based on the number of vested shares held by each participant as a proportion of total shares held by the Plan—to explain the percentage of the Net Settlement Fund that should be distributed to each individual active Plan Participant or former participant. For Participants with an active Plan account, the allocable portion owed shall be transferred to the 401(k) portion of that Active Participant's account in the KSOP, to be invested subject to the Active Participant's investment direction under the terms of the KSOP. *Id*. Those without an active Plan account will receive either a check or deposit into an individual retirement account or other eligible retirement plan. *Id*. The allocation to both Former Participants and Active Participants will be handled by the Plan Recordkeeper. *Id*.

There will be no claims process and no reversion of any part of the Gross Settlement Amount to Defendants. Payments will be made automatically, making the distribution process 100% effective. This method of distributing relief is highly efficient and weighs in favor of

granting final approval. The Settlement Agreement offers cash compensation in the aggregate amount of $4,000,000.00 with the net amount (after payment of all Administrative Expenses and any attorneys' fees and costs and Case Contribution Award as may be allowed by the Court) guaranteed to be paid to the Settlement Class Members.

### E.    The Proposed Settlement's Proposed Award of Attorneys' Fees

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. Contemporaneously with this motion, Plaintiff filed a motion for approval of an award of attorneys' fees of $1,262,600 and litigation expenses of $537,400.36. That request is consistent with the Settlement Agreement's provisions, and Plaintiff's Motion for Preliminary Approval (Dkt. 250 at 16) that Plaintiff's Counsel's petition for an award of attorneys' fees would not exceed one-third of the Gross Settlement Amount. The attorneys' fees and expenses shall be paid from the Gross Settlement Amount. The requested fee is within the range of approved fee awards in this jurisdiction.

The Class has been notified of the maximum amount of fees that could be requested and have had the opportunity to object to the fee application. Porter Decl. ¶ 43. As of the date of this filing, no objections to the Settlement have been received but Plaintiff will update the Court in advance of the Final Fairness hearing. *Id*.

### F.    The Proposed Settlement Treats Settlement Class Members Equitably Relative to Each Other

Under Rule 23(e)(2)(D), the Court must consider whether the proposal treats Settlement Class Members equitably relative to each other. Under the Plan of Allocation, the funds will be allocated to each Settlement Class Member in proportion to the vested company shares that he or she held in the Plan compared to the total vested company shares held in the Plan by all Settlement Class Members. (Dkt. 252-4). Therefore, individual Settlement Class Members will not receive

18

preferential treatment but instead all will receive a distribution based on their particular "Entitlement Percentage" as detailed in the Plan of Allocation. *Id.*

### G.    The Proposed Settlement Also Satisfies the Additional Seventh Circuit Factors

The Seventh Circuit has also identified additional nonexclusive factors to consider in evaluating proposed settlements. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863–64 (7th Cir. 2014). Two of those factors are the amount of opposition to the settlement and the reaction of members of the class to the settlement. *Id.* To date, no objection has been received, but the deadline to object is August 4, 2025. (Dkt. 254 at 6). If any objections are received before the deadline, Plaintiff's Counsel will address those in a supplemental filing. Porter Decl. ¶ 43.

Courts in this Circuit also look at the opinion of competent counsel. *Wong*, 773 F.3d at 863–64. Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (citation omitted), and counsel for Defendants and Plaintiff are competent and have experience in ERISA litigation, including ESOP litigation. *See Douglas*, 328 F.R.D. at 216 (noting that class counsel's experience in the field strongly supported the settlement). Moreover, as discussed above with respect to the extensive litigation and negotiation process that occurred before Settlement, there is no indication that it is the result of collusion.

In sum, all the additional Seventh Circuit factors further support granting final approval.

## V.    CONCLUSION

For the foregoing reasons, the Settlement should be finally approved. A proposed Final Judgment and Order has been filed with this Motion as Exhibit A to the Porter Declaration.

19

Dated: July 21, 2025

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Patrick O. Muench*
Patrick O. Muench
318 W. Adams St., Ste. 1512
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny
Laura Babiak (*pro hac vice*)
1055 Thomas Jefferson St., NW, Ste. 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com
lbabiak@baileyglasser.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of July 2025, a copy of the foregoing document was served on all counsel of record via ECF.

*/s/ Patrick O. Muench*
Patrick O. Muench